**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**

Gabriella Sullivan; Rainier Arms, LLC; Second Amendment Foundation; and Firearms Policy Coalition, Inc.,

*Plaintiffs*,

v.

Bob Ferguson, in his official capacity as Washington State Attorney General; John R. Batiste, in his official capacity as Chief of the Washington State Patrol; Patti Cole-Tindall, in her official capacity as Interim Sheriff for King County, Washington; John Gese, in his official capacity as Sheriff for Kitsap County, Washington; Rick Scott, in his official capacity as Sheriff for Grays Harbor County, Washington; Dan Satterberg, in his official capacity as County Prosecutor for King County, Washington; Chad M. Enright, in his official capacity as County Prosecutor for Kitsap County, Washington; and Katie Svoboda, in her official capacity as County Prosecutor for Grays Harbor County, Washington,

*Defendants*.

Case No. 3:22-cv-5403

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Gabriella Sullivan, Rainier Arms, LLC, Second Amendment Foundation, and Firearms Policy Coalition, Inc., by and through the undersigned attorneys, file this Complaint against the above-captioned Defendants, in their official capacities as the officials responsible under Washington law for administering and enforcing the State's laws and regulations governing the manufacturing, importation, distribution, sale, and offering for sale of commonly possessed ammunition magazines improperly dubbed "large-capacity." Plaintiffs seek declaratory and injunctive relief: a declaration that Washington's ban on manufacturing, importing, distributing, selling, or offering for sale ammunition magazines capable of holding more than 10 rounds of ammunition violates the Second and Fourteenth Amendments and an injunction compelling Defendants to refrain from enforcing the invalid ban. In support of their Complaint against Defendants, Plaintiffs hereby allege as follows:

## I. Introduction

1. The State of Washington has criminalized one of the most common and important means by which its citizens can exercise their fundamental right of self-defense. By banning manufacturing, importation, distribution, and sale of standard-capacity firearm magazines that can carry more than 10 rounds of ammunition ("standard capacity magazines"), the State has barred law-abiding residents from legally acquiring common ammunition magazines and deprived them of an effective means of self-defense.

2. Absent relief from this Court, Defendants will violate the constitutionally protected rights of Washington's law-abiding citizens and reinforce the erroneous notion that the right to keep and bear arms is nothing more than "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).

3. Worse yet, Defendants will commit these constitutional violations without any realistic prospect of diminishing the misuse of firearms or the incidence of horrific mass-shootings. The State's ban on standard capacity magazines will do nothing to address or ameliorate these



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

public policy concerns. All it will do is leave law-abiding citizens more vulnerable to attack from better-armed and more ruthless assailants.

4. During uncertain times—with the recognition that governments have no legal duty to protect the people they serve—there is no guarantee that law enforcement will respond to an individual's 911 call during this crisis or after it (let alone in time to prevent a crime) and those who choose to exercise their fundamental and individual Second and Fourteenth Amendment protected rights cannot be denied those rights. Uncertain times are precisely when fundamental rights—like the right to keep and bear arms for self-defense—must be protected.

5. To be sure, Plaintiffs acknowledge that the Ninth Circuit has rejected a Second Amendment challenge to California's similar restrictions on standard capacity magazines in *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021) (en banc), but Plaintiffs believe that case was wrongly decided. They therefore institute this litigation to vindicate their Second Amendment protected rights and seek to have *Duncan* overruled by a court competent to do so. Of course, it is possible that the Supreme Court effectively will overrule *Duncan*'s mode of analysis in *New York State Rifle & Pistol Ass'n Inc. v. Bruen*, No. 20-843 (U.S. argued Nov. 3, 2021), and, if so, Plaintiffs reserve the right to argue accordingly.

6. Plaintiffs Gabriella Sullivan, Rainier Arms, LLC, Second Amendment Foundation, and Firearms Policy Coalition, Inc. bring this action to vindicate the rights that Defendants threaten to infringe.

**JURISDICTION AND VENUE**

7. This Court has subject-matter jurisdiction over Plaintiffs' claim under 28 U.S.C. §§ 1331 and 1343.

8. Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (b)(2).



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## PARTIES

10. Plaintiff Gabriella Sullivan is a natural person and a citizen of Kitsap County, Washington. She owns at least one firearm that may be equipped with standard capacity magazines as well as multiple standard capacity magazines. She intends to continue purchasing standard capacity magazines for her existing firearms as well as purchase additional firearms equipped with standard capacity magazines. When Washington's standard capacity magazine ban becomes effective on July 1, 2022, she will be forced to abandon these plans or face prosecution for violating the law.

11. Plaintiff Rainier Arms, LLC ("Rainier Arms") is a federally licensed firearm dealer located in King County, Washington. Rainier Arms specializes in high end rifles, pistols, and shotguns as well as parts, optics, and accessories. Rainier Arms sells standard capacity magazines both as standard equipment for many of the firearms it sells and also as standalone products. When Washington's standard capacity magazine ban becomes effective on July 1, 2022, Rainier Arms will be forced to stop selling standard capacity magazines to civilians and to limit its sale of these items to government purchasers exempted from the state-wide ban. That will substantially constrict Rainier's market and harm its business.

12. Plaintiff Second Amendment Foundation ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutionally protected right to possess firearms and firearm ammunition, and the consequences of gun control. SAF has over 700,000 members and supporters nationwide, including thousands of members in Washington. SAF brings this action on behalf of those members, including the named Plaintiffs herein. SAF's members will be adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

13. Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit organization incorporated under the laws of Delaware with its principal place of business in



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Sacramento, California. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's members reside both within and outside Washington. FPC brings this action on behalf of those members, including the named Plaintiffs herein. FPC's Washington members will be adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

14. Defendant Bob Ferguson is sued in his official capacity as Washington State Attorney General. As Attorney General, Ferguson has the authority to assist in the prosecution of crimes, including violations of the challenged ban, and to institute and prosecute actions on behalf of the state that are "necessary in the execution of the duties of any state officer." WASH. REV. CODE § 43.10.030.

15. Defendant John R. Batiste is sued in his official capacity as the Chief of the Washington State Patrol. As Chief of the State Patrol, Batiste has the power and duty to enforce the law, including the challenged ban, throughout the state. WASH. REV. CODE § 43.43.030.

16. Defendant Patti Cole-Tindall is sued in her official capacity as Interim Sheriff for King County, Washington. As Interim Sheriff, Cole-Tindall is responsible for arresting and imprisoning "all persons guilty of public offenses" in King County, including individuals who violate the challenged ban. WASH. REV. CODE § 36.28.010.

17. Defendant John Gese is sued in his official capacity as Sheriff for Kitsap County, Washington. As Sheriff, Gese is responsible for arresting and imprisoning "all persons guilty of public offenses" in Kitsap County, including individuals who violate the challenged ban. *Id.*

18. Defendant Rick Scott is sued in his official capacity as Sheriff for Grays Harbor County, Washington. As Sheriff, Scott is responsible for arresting and imprisoning "all persons guilty of public offenses" in Grays Harbor County, including individuals who violate the challenged ban. *Id.*



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

19. Defendant Dan Satterberg is sued in his official capacity as County Prosecutor for King County. As County Prosecutor, Satterberg is responsible for "prosecut[ing] all criminal and civil actions" including for violations of the challenged ban, "in which the state or the county may be a party." WASH. REV. CODE § 36.27.020.

20. Defendant Chad M. Enright is sued in his official capacity as County Prosecutor for Kitsap County. As County Prosecutor, Enright is responsible for "prosecut[ing] all criminal and civil actions" including for violations of the challenged ban, "in which the state or the county may be a party." *Id.*

21. Defendant Katie Svoboda is sued in her official capacity as County Prosecutor for Grays Harbor County. As County Prosecutor, Svoboda is responsible for "prosecut[ing] all criminal and civil actions" including for violations of the challenged ban, "in which the state or the county may be a party." *Id.*

## FACTUAL ALLEGATIONS

### I. Washington's Ban on Standard Capacity Magazines.

22. On March 23, 2022, Governor Jay Inslee signed Engrossed Senate Bill 5078 ("the Act"), which made it illegal for any person in Washington to "manufacture, import, distribute, sell, or offer for sale any large capacity magazine," *id.* § 3(1), defined as "an ammunition feeding device with the capacity to accept more than 10 rounds of ammunition, or any conversion kit, part, or combination of parts from which such a device can be assembled," WASH. REV. CODE § 9.41.010(36).

23. The Act exempts (1) "any ammunition feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds of ammunition," (2) "22 caliber tube ammunition feeding device[s]," and (3) any "tubular magazine that is contained in a lever-action firearm," WASH. REV. CODE § 9.4.1.010(36)(a)–(c), but it makes commerce in many of the most common magazines in Washington—and indeed the country—illegal.

24. Despite forbidding law-abiding citizens, from selling, importing, or distributing these so called "large capacity magazine[s]," the law exempts manufacture for or distribution and



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

sale to branches of the armed forces or to Washington state law enforcement agencies. Act § 3(2)(a) & (b).

25. As a result, although it does not directly target purchasing standard-capacity magazines, the Act makes it impossible for a law-abiding resident of Washington to lawfully acquire standard capacity magazines by making it illegal to either sell them in-state or bring them in from another state.

26. Violating the "large capacity magazine" ban is a gross misdemeanor punishable by up to 364 days imprisonment and a fine of up to $5,000. Act § 3(3); WASH. REV. CODE § 9A.20.021(2).

27. The Act becomes effective on July 1, 2022. Act § 6.

**II. Washington Has Criminalized a Common and Important Means of Self-Defense.**

28. Although the Act describes magazines that can accept more than 10 rounds of ammunition as "large capacity magazines," this is a misnomer. Magazines capable of holding more than 10 rounds of ammunition are a normal feature of firearms in the United States and are more accurately described as "standard capacity magazines."

29. As many as *half a billion* of these standard-capacity magazines have been owned by Americans throughout the United States.

30. According to the 2021 National Firearms Survey, 48% of gun owners have owned magazines that hold more than 10 rounds. William English, *2021 National Firearms Survey: Updated Analysis Including Types of Firearms Owned* at 22 (May 13, 2022), *available at* https://bit.ly/3yPfoHw. Given the survey's estimate that 81.4 million Americans own firearms, approximately 39 million Americans have owned at least one magazine that holds more than 10 rounds. And that is a conservative estimate since only current gun owners were polled. Those individuals frequently owned more than one such magazine. In fact, Professor English found that American gun owners have owned as many as 269 million handgun magazines that hold over 10 rounds and an additional 273 million rifle magazines over that threshold for a total of 542 million such magazines. *Id.* at 24.



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

31. The prevalence of these magazines should not come as a surprise. Many of the most popular handguns in the nation are typically manufactured with magazines holding more than 10 rounds of ammunition, and the standard-issue magazines for many popular rifles—including the most popular semiautomatic rifles in the country—have a capacity of more than 10 rounds.

32. Magazines such as these are common throughout the country. Indeed, 40 states do not impose any restrictions on magazine capacity.

33. The ubiquity of standard capacity magazines among law-abiding Americans demonstrates that they are useful for lawful purposes such as self-defense and hunting. In fact, Professor English found that recreational target shooting (64.3%), home defense (62.4%), hunting (47%), and defense outside the home (41.7%) are the most common reasons cited by individuals who own standard capacity magazines that hold more than 10 rounds. *Id.* at 23.

34. Crime, on the other hand, is not a common use for these magazines. There were approximately 350,000 violent crimes committed with firearms in 2020. Rachel E. Morgan and Alexandra Thompson, *Criminal Victimization, 2020*, Table 8, BUREAU OF JUSTICE STATISTICS, October 2021, https://bit.ly/3PGOI1A. Even if each one of those crimes was committed with a gun equipped with a magazine capable of holding more than ten rounds—certainly overstating their use—and even if each crime were committed using a different magazine, that would still mean that just 0.06% of all such magazines (up to 542 million total) would be used in crimes each year. Stated the other way, approximately 99.94% of these magazines are *only* used lawfully each year.

35. Proponents of bans like the Act often seek to justify them based on a concern with mass shooting events specifically. But mass shootings represent an extremely small subset of all violent crime committed with a gun and so just a fraction of the 0.06% of standard capacity magazines holding more than 10 rounds that could possibly have been used in crime are ever used in mass shootings. *See* Rosanna Smart & Terry L. Schell, *Mass Shootings in the United States*, RAND (April 15, 2021), https://bit.ly/3MRkTtu ("Mass shootings are tragic, traumatic, and shocking events. . . . However, they represent a very small fraction of the homicides in the United States."). In fact, from 1976 through 2018, an average of just 26 people were killed per year in



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

public mass shooting incidents (defined as "incidents that occur in the absence of other criminal activity (e.g., robberies, drug deals, and gang 'turf wars') in which a gun was used to kill four or more victims in a public location within a 24-hour period"). Grant Duwe, *Patterns and prevalence of lethal mass violence*, 2019 J. CRIM. & PUB. POL'Y 1, 12 (2019). That is slightly lower than the number of individuals (27) killed each year by lightning strikes and significantly lower than the number injured by lightning strikes (243). *How Dangerous is Lightning?*, NAT'L WEATHER SERV., https://bit.ly/3wN3iNU. Furthermore, there is no convincing empirical evidence that a state magazine ban will have any impact at all on mass shootings. *See* Christopher S. Koper, *Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence, 1994–2003*, 81 n.95 NAT'L INST. OF JUST., U.S. DEP'T OF JUST., https://bit.ly/3NDzBUK (explaining that "it is hard to draw definitive conclusions" about the effectiveness of state assault weapons bans in part because "the impact of [such] laws is likely undermined to some degree by the influx of [assault weapons] from other states").

36. In line with the widespread possession and use of standard capacity magazines and the rarity of their use for crime, there is no longstanding historical tradition of prohibiting the manufacture, importation, or sale of such magazines. Magazine bans were unknown in the United States before the 20th century. Bans like Washington's are recent phenomena—indeed, until the Act was put in place, Washington did not restrict manufacturing, importing or selling standard capacity magazines and no such laws existed anywhere in the United States before the 1990s.

37. This is true even though firearms capable of holding multiple rounds have existed since the late 15th century, and firearms capable of firing more than ten rounds without reloading have existed at least since the late 16th century. *See* David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 ALB. L. REV. 849, 852–53 (2015) ("The first known firearm that was able to fire more than ten rounds without reloading was a sixteen-shooter created around 1580, using 'superposed' loads (each round stacked on top of the other.)").

38. Multiple round firearm technology quickly developed from multi-shot wheel lock rifles to repeating, magazine-fed rifles, with the English military employing magazine-fed



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

repeating firearms as early as 1658. Clayton E. Cramer & Joseph E. Olson, *Pistols, Crime, and Public: Safety in Early America*, 44 WILLAMETTE L. REV. 699, 716 (2008) (citing A. V. B. NORMAN & DON POTTINGER, ENGLISH WEAPONS & WARFARE: 449–1660 206–07 (1979)). The now famous "Puckle Gun," or "Defence Gun," was patented by James Puckle in 1718 in England and operated using "a Sett of Chambers ready Charg'd to be Slip'd on when the first Sett are pull'd off to be recharg'd." U.K. Patent No. 418 (filed May 15, 1718) https://bit.ly/3t5UGzu; CHARLES FOULKES, THE GUN-FOUNDERS OF ENGLAND: WITH A LIST OF ENGLISH AND CONTINENTAL GUN-FOUNDERS FROM THE XIV TO THE XIX CENTURIES 32–33 (1937).

39. Firearms capable of firing multiple rounds without reloading were well known to the founding generation. In 1777, Joseph Belton demonstrated a repeating rifle that could hold 16 rounds of ammunition to members of the Continental Congress. Robert Held, THE BELTON SYSTEMS, 1758 & 1784–86: AMERICA'S FIRST REPEATING FIREARMS 37 (1986). Belton also informed Congress that he could equip his rifle with as many as 20 rounds at a time. *Id.* at 17. And Meriwether Lewis carried a Girandoni air rifle, with a 22-round tubular, spring-loaded magazine on his expedition with William Clark. James B. Garry, WEAPONS OF THE LEWIS AND CLARK EXPEDITION 100–01 (2012).

40. "Repeater" firearms were extremely popular in the 19th century and came in many forms. The New York Evening Post in 1821 lauded Isaiah Jennings for inventing a repeater "important[t] for both public and private use," whose "number of charges may be extended to fifteen or even twenty." *Newly Invented Muskets*, N.Y. EVENING POST, Apr. 10, 1822, in 59 Alexander Tilloch, THE PHILOSOPHICAL MAGAZINE AND JOURNAL COMPREHENDING THE VARIOUS BRANCHES OF SCIENCE, THE LIBERAL AND FINE ARTS, GEOLOGY, AGRICULTURE, MANUFACTURES, AND COMMERCE 467-68 (Richard Taylor ed., 1822).

41. Around the time of the Civil War, multi-round rifles became commonplace. The 16-shot Henry Rifle, invented in 1861, was very popular. Soon after, the first Winchester rifle was produced and it could hold 17 rounds in the magazine with one more in the chamber. *See* Norm Flayderman, FLAYDERMAN'S GUIDE TO ANTIQUE FIREARMS AND THEIR VALUES 268 (6th ed.



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1994). As a result, standard capacity magazines were commonly possessed already in the 1860s, 130 years before attempts to strictly regulate them would come along. David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 ALB. L. REV. 849, 871 (2015).

42. There is no reliable proof that restrictions on new manufacturing or sales of standard capacity magazines will reduce violence involving firearms. Between 1994 and 2004, federal law prohibited possession or transfer of magazines holding more than 10 rounds of ammunition (though it exempted magazines lawfully possessed before the law's enactment). A report prepared for the U.S. Department of Justice assessing the effectiveness of the law concluded: "[W]e cannot clearly credit the ban with any of the nation's recent drop in gun violence," and "there has been no discernible reduction in the lethality and injuriousness of gun violence." Christopher S. Koper et al., *An Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence, 1994-2003*, Rep. to the Nat'l Inst. of Justice, U.S. DEP'T OF JUSTICE at 96 (2004), *available at* https://bit.ly/3MQZmkL. What is more, due to the porousness of state borders there is even less reason to think that a state-level ban would be effective in reducing violence. *See id.* at 81 n.95.

43. There are, however, many sound reasons why the average citizen might want to use magazines that accept more than 10 rounds of ammunition. Most obviously, a law-abiding citizen would not want to run out of ammunition and be forced to reload while under criminal attack, which could involve multiple assailants, an assailant using a magazine containing more than 10 rounds, or an assailant using multiple firearms. In fact, according to the 2021 National Firearms Survey, in over half of self-defense incidents the defender faced two or more attackers—and in over 20% there were three or more. English, *supra* ¶ 29, at 15. Given the stressful and often-unexpected nature of such encounters, forcing the victim to reload puts her at a significant disadvantage relative to her assailant.

44. Standard capacity magazines are also important for average citizens seeking to defend themselves because most shots fired in armed altercations miss their target. Professional police, who are trained and must regularly practice with their firearms, miss their targets more



Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

often than not. In a fourteen-year study of the Dallas Police Department, for example, officers achieved an accuracy rate of just 35%, and half of all Dallas officers missed *every* shot they fired. Christopher M. Donner and Nicole Popovich, Hitting (or missing) the mark: An examination of police shooting accuracy in officer-involved shooting incidents, *Policing: An International Journal* 42, no. 3 (2019), https://bit.ly/3LrpoJC. An average citizen forced to defend herself suddenly is not likely to have a higher accuracy rate than professional police officers would.

45. As an example, Susan Gonzalez, a Jacksonville resident, was severely limited in her ability to defend herself by the size of her handgun's magazine. She was shot in the chest one evening when two armed men broke into her home. She retreated to her bedroom and found her husband's .22 pistol. After firing warning shots, she shot at one of the two men and hit him twice with her seven or eight remaining bullets. Out of ammunition and unable to reload, she was shot once more by the other gunman, who proceeded to put his gun to her head and demand the keys to the couple's truck. *See Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1130–31 (S.D. Cal. 2017).

46. By contrast, a homeowner in Houston successfully fended off five home invaders after firing at least a dozen shots in self-defense. Katherine Marchand, *5 shot and 3 killed after homeowner opens fire on suspects in east Houston*, ABC13 (Jan. 20, 2019), https://abc13.co/2EYq0ag.

47. Law enforcement practice confirms what common sense and these examples indicate: law-abiding citizens frequently need standard capacity magazines to protect themselves from those wishing to do them harm. Police departments typically issue handguns with magazines that hold more than 10 rounds. *See* Massad Ayoob, THE COMPLETE BOOK OF HANDGUNS 50, 87–90 (2013). And they do so for good reason. In 2020, 14% of New York City police officers involved in incidents in which they fired their weapons to defend themselves and others fired more than 10 rounds. New York Police Dep't, *2020 Use of Force Report* at 27, *available at* https://on.nyc.gov/3GlxAKH. Likely for this reason, the Act exempts from its prohibitions manufacture, import, and sale to Washington law enforcement agencies. But the average



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Washington citizen has just as much right as a police officer to defend herself with standard capacity magazines.

48. Unlike law-abiding citizens, violent criminals will not be meaningfully constrained by Washington's magazine ban. Given the hundreds of millions of magazines in circulation in the country (including in Washington, where they remain widely possessed), it will not be difficult for violent criminals to acquire them through illegal sales or importation despite Washington's ban. And unlike law-abiding citizens, violent criminals will have no compunction about violating Washington's magazine ban. Even if violent criminals were effectively prevented from acquiring banned magazines, they could easily compensate by bringing multiple firearms or magazines with them to the scene of the crime. Their ability to do so is made possible by the fact that violent criminals, and not their law-abiding victims, choose the time and place of crimes and can plan accordingly.

**STATEMENT OF FACTS RELATING TO GABRIELLA SULLIVAN**

49. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

50. Plaintiff Gabriella Sullivan is an adult resident of Kitsap County, Washington.

51. Ms. Sullivan is a law-abiding, responsible citizen.

52. Ms. Sullivan is a member of Plaintiffs SAF and FPC.

53. Ms. Sullivan owns a Sig Sauer P365 handgun and a Smith & Wesson M&P Sport .22 rifle. Both firearms may be equipped with standard capacity magazines capable of holding more than 10 rounds of ammunition, and Ms. Sullivan owns standard capacity magazines for both.

54. Ms. Sullivan desires to purchase additional firearms, including an AR-15 style rifle, a Glock 19, and a Walther PPQ, all of which are ordinarily sold with standard capacity magazines holding more than 10 rounds of ammunition.

55. Ms. Sullivan intends to use additional standard capacity magazines and firearms equipped with standard capacity magazines for self-defense and other lawful purposes.

56. It is Ms. Sullivan's present intention and desire to purchase additional standard capacity magazines capable of holding more than 10 rounds of ammunition after the Act's effective



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

date, were it lawful to do so, for use with the firearms she currently owns and to purchase additional firearms equipped with standard capacity magazines of that size. When the Act becomes effective on July 1, 2022, she will not be able to purchase additional magazines or firearms equipped with standard capacity magazines lawfully, because the existence of the Act, and Defendants' enforcement of it, will extinguish the legal market for those items in Washington, and will make it unlawful for Ms. Sullivan to import them herself.

**STATEMENT OF FACTS RELATING TO RAINIER ARMS, LLC**

57. The foregoing paragraphs are hereby incorporated herein as if set forth in full.

58. Plaintiff Rainier Arms is a limited liability corporation located in King County, Washington. Rainier Arms is owned and operated by John Hwang, a member of Plaintiffs SAF and FPC.

59. Rainier Arms is a federally licensed firearm dealer. Every month, it sells hundreds of standard capacity magazines capable of holding more than 10 rounds of ammunition and dozens of firearms equipped with such magazines.

60. It is Rainier Arms' present intention and desire to continue to sell standard capacity magazines and firearms equipped with standard capacity magazines. When the Act becomes effective on July 1, 2022, however, it will be forced to stop selling standard capacity magazines, either individually or as part of other firearms. As a result, beginning on July 1, 2022, Rainier Arms will lose out on profits from sales of standard capacity magazines as a direct result of the Act.

61. In addition to risking prosecution, Rainier Arms could also lose its federal firearms license if it were to violate the Act. As a vendor who is harmed by the magazine ban, Rainier challenges the ban to vindicate the Second Amendment protected rights of its itself and customers. *See Teixeira v. County of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017); *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011).

**STATEMENT OF FACTS RELATING TO DANIEL MARTIN**

62. The foregoing paragraphs are hereby incorporated herein as if set forth in full.



Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

63. Daniel Martin is an adult resident of Grays Harbor County, Washington.

64. Mr. Martin is a law-abiding, responsible citizen.

65. Mr. Martin is a member of Plaintiffs SAF and FPC.

66. Mr. Martin owns firearms that can be equipped with standard capacity magazines and he owns several standard capacity magazines for use in those firearms. He is a frequent participant in shooting competitions, for which standard capacity magazines are commonly used. Although he has not competed in the past two years as a result of the COVID-19 pandemic and rising ammunition prices, he plans to enter several shooting competitions this summer. Even when not competing, Mr. Martin practices with and shoots his firearms regularly and possesses them for the purpose of self-defense.

67. As a result of his regular sport shooting activities, Mr. Martin has worn out or broken standard capacity magazines in the past and has purchased new ones to replace them or parts to fix or extend their capacity when necessary. He also purchases new firearms when he is able to and plans to purchase additional firearms equipped with standard capacity magazines exceeding 10 rounds in the future, including after the Act's effective date, were it not a crime to do so.

68. Mr. Martin intends to use additional standard capacity magazines and firearms equipped with the same for sport shooting, self-defense, and other lawful purposes.

69. When the Act becomes effective on July 1, 2022, he will not be able to purchase additional standard capacity magazines, nor will he be able to purchase firearms equipped with standard capacity magazines lawfully, because the existence of the Act, and Defendants' enforcement of it, will extinguish the legal market for those items in Washington, and will make it unlawful for Mr. Martin to import them himself.

## COUNT ONE

### The Act is Facially Unconstitutional Under the Second and Fourteenth Amendments to the U.S. Constitution

70. The foregoing paragraphs are hereby incorporated herein as if set forth in full.



Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

71. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

72. The constitutional guarantee is incorporated against the states through the Fourteenth Amendment. *McDonald*, 561 U.S. at 791; *id*. at 806 (Thomas, J., concurring in the judgment.).

73. The Supreme Court has held that the right to keep and bear arms is a fundamental right. *Dist. Of Columbia v. Heller*, 554 U.S. 570, 581 (2008).

74. Restrictions on ammunition, including ammunition magazines, restrict the use of "Arms" within the meaning of the Second Amendment. "[W]ithout bullets, the right to bear arms would be meaningless. A regulation eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms for their core purpose." *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014).

75. Outright bans on manufacturing, importing, selling, or offering for sale commonly possessed magazines violate the Second Amendment by prohibiting all Washington residents from acquiring those magazines and firearms equipped with them and therefore denying them the fundamental right to keep and bear arms.

76. An outright ban on manufacturing, importing, selling, or offering for sale constitutionally protected magazines violates the Second Amendment by prohibiting retailers from engaging in commerce necessary for individuals to exercise their fundamental right to keep and bear arms. *Cf. Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 62 (1976).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Defendants, as follows:

a. Declare that Washington's ban on manufacturing, importing, selling, or offering for sale magazines with a capacity over 10 rounds violates the right to keep and bear arms



Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

as guaranteed by the Second and Fourteenth Amendments to the United States Constitution;

b. Enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing the provisions of the Act and all related laws, regulations, policies, practices, and customs that would impede or criminalize the exercise of the right to keep and bear arms;

c. Grant Plaintiffs any and all damages to which they are entitled, including but not limited to actual, compensatory, punitive and/or nominal damages;

d. Pursuant to 42 U.S.C. § 1988 award costs and attorneys' fees and expenses to the extent permitted; and

e. Grant any and all other equitable and/or legal remedies as this Court may see fit.



Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

June 3, 2022.

ARD LAW GROUP PLLC

By: ______________________________

Joel B. Ard, WSBA # 40104
Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
206.701.9243
Joel@Ard.law
Attorneys For Plaintiffs

COOPER & KIRK, PLLC

*/s/ David H. Thompson*
David H. Thompson*
dthompson@cooperkirk.com

*/s/ Peter A. Patterson*
Peter A. Patterson*
ppatterson@cooperkirk.com

*/s/ William V. Bergstrom*
William V. Bergstrom*
wbergstrom@cooperkirk.com

1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)

MOUNTAIN STATES LEGAL FOUNDATION

*/s/ Cody J. Wisniewski*
Cody J. Wisniewski*

2596 S. Lewis Way
Lakewood, CO 80227
Phone: (303) 292-2021

*Pro hac vice applications forthcoming