1

2

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2022

SEAN F. MCAVOY, CLERK

3

4

5              UNITED STATES DISTRICT COURT

6             EASTERN DISTRICT OF WASHINGTON

7  MICHAEL SCOTT BRUMBACK, an         No. 1:22-cv-03093-MKD
   individual, and GIMME GUNS, a sole
8  proprietorship,                     ORDER GRANTING ALLIANCE
                                       FOR GUN RESPONSIBILITY'S
9              Plaintiffs,              MOTION TO INTERVENE AS A
                                       DEFENDANT
10     v.
                                       ECF No. 4
11 ROBERT W. FERGUSON, in his official
   capacity as Washington State Attorney
12 General; JOHN R. BATISTE, in his
   official capacity as Chief of the
13 Washington State Patrol; ROBERT
   UDELL, in his official capacity as the
14 Sheriff for Yakima County, Washington;
   and JOSEPH A. BRUSIC, in his official
15 capacity as County Prosecutor for
   Yakima County,
16
               Defendants,
17
   ALLIANCE FOR GUN
18 RESPONSIBILITY,

19             Defendant-Intervenor.

20

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 1

Before the Court is the Alliance for Gun Responsibility's (the "Alliance") Motion to Intervene as a Defendant ("Motion to Intervene"). ECF No. 4. The Alliance seeks to intervene in this lawsuit to defend the constitutionality of Engrossed Substitute Senate Bill 5078 ("ESSB 5078").[1] ECF No. 4 at 3. Plaintiffs seek declaratory and injunctive relief against state and local law enforcement officers to enjoin enforcement of ESSB 5078. ECF No. 1-4. Plaintiffs argue that ESSB 5078 violates Article I, Section 24 of the Washington Constitution and the Second and Fourteenth Amendments to the United States Constitution. ECF No. 1-4 at 28-32.

---

[1] Plaintiffs' Complaint refers to ESSB 5078 as "Engrossed State Senate Bill . . . 5078[.]" ECF No. 1-4 at 2. The Alliance refers to ESSB 5078 as "Engrossed Senate Bill 5078[.]" ECF No. 4 at 3. The bill, having originated in the Washington State Senate, reported by substitute, then ordered engrossed before forwarding to the Washington State House of Representatives, shall be referred to by the Court as Engrossed Substitute Senate Bill 5078. *See* Bill History, SB 5078, 2021-22, Wash. St. Leg., https://app.leg.wa.gov/billsummary?BillNumber=5078&Year= 2021; *see also* 2022 Wash. Sess. Laws, ch. 104 (Certification of Enrollment for ESSB 5078).

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 2

The Court denies the Alliance's request for intervention as a matter of right because the Alliance has failed to demonstrate that the existing parties would not adequately represent its interest in this litigation. However, for the reasons set forth below, the Court grants the Alliance's request for permissive intervention.

## BACKGROUND

On March 23, 2022, Washington State Governor Jay Inslee signed ESSB 5078 into law. ECF No. 4 at 4. ESSB 5078 amended Wash. Rev. Code chapter 9.41 to include that "[n]o person in this state may manufacture, import, distribute, sell, or offer for sale any large capacity magazine, except as authorized in this section." 2022 Wash. Sess. Laws ch. 104, § 3(1). The law defines a large capacity magazine as follows:

> [A]n ammunition feeding device with the capacity to accept more than 10 rounds of ammunition, or any conversion kit, part, or combination of parts, from which such a device can be assembled if those parts are in possession of or under the control of the same person, but shall not be construed to include any of the following:
>
> (a) An ammunition feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds of ammunition;
>
> (b) A 22 caliber tube ammunition feeding device; or
>
> (c) A tubular magazine that is contained in a lever-action firearm.

*Id.* at § 2(36). ESSB 5078's amendments went into effect on July 1, 2022. *Id.* at 1.

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 3

Plaintiff Gimme Guns is a Washington State sole proprietorship and a federally licensed firearms dealer, engaged in the sale of firearms and firearm accessories in Selah, Washington.  ECF No. 1-4 at 2-3 ¶¶ 2, 10 ¶ 32.  Plaintiff Michael Scott Brumback is a United States citizen, a resident of Yakima County, Washington, and an owner of firearms and firearm accessories.  ECF No. 1-4 at 10 ¶ 33.  Defendants are Washington State and Yakima County law enforcement officers.  ECF No. 1-4 at 11 ¶¶ 34-37.

On July 14, 2022, Plaintiffs filed their Complaint for Injunctive and Declaratory Relief in the Superior Court of Washington for Yakima County, who assigned the case number 22-2-01446-39.  ECF No. 1-4 at 1.  On July 21, 2022, Defendants Robert W. Ferguson, in his official capacity as Washington State Attorney General, and John R. Batiste, in his official capacity as Chief of the Washington State Patrol (the "State Defendants"), filed a Notice of Removal.  ECF No. 1.  On July 27, 2022, Defendants filed an Amended Notice of Removal.  ECF No. 3.  On the same day, the Alliance filed the instant Motion to Intervene.  ECF No. 4.

Plaintiffs oppose the Alliance's motion.  ECF No. 9.  The State Defendants support the Alliance's motion but offer only that "[t]he State's experience is that the sponsor [of legislation's] participation is generally constructive."  ECF No. 12 at 1-2.  Defendants Joseph A. Brusic, in his official capacity as Yakima County

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 4

1  Prosecuting Attorney, and Robert Udell, in his official capacity as Yakima County

2  Sheriff, (the "Yakima County Defendants") take no position on the Alliance's

3  motion. ECF No. 14 at 1.

4  ### ANALYSIS

5  Federal Rule of Civil Procedure 24 provides for two bases of third-party

6  intervention. Rule 24(a) provides for intervention as a matter of right, and Rule

7  24(b) provides for intervention with permission of the court. The Alliance argues

8  for intervention under either standard. ECF No. 4 at 3-4.

9  **A. Intervention by Right**

10  Federal Rule of Civil Procedure 24(a) provides, in relevant part, as follows:

11  On timely motion, the court must permit anyone to intervene who . . .
   claims an interest relating to the property or transaction that is the
12  subject of the action, and is so situated that disposing of the action may
   as a practical matter impair or impede the movant's ability to protect its
13  interest, unless existing parties adequately represent that interest.

14  The United States Court of Appeals for the Ninth Circuit has adopted a four-part

15  test for Rule 24(a) applications, as follows:

16  (1) the applicant's motion must be timely;

17  (2) the applicant must assert an interest relating to the property or
   transaction which is the subject of the action;
18
19  (3) the applicant must be so situated that without intervention the
   disposition of the action may, as a practical matter, impair or impede
   his ability to protect that interest; and
20

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 5

(4) the applicant's interest must be inadequately represented by the other parties.

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (quoting *Smith v. Pangilinan*, 651 F.2d 1320, 1323-24 (9th Cir. 1981)). "The rule is construed broadly in favor of the applicants." *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also Wash. State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) ("Rule 24 traditionally has received a liberal construction in favor of applicants for intervention."), *cert. denied*, *Don't Waste Washington Legal Def. Found. v. Washington*, 461 U.S. 913 (1983).

### 1. Timeliness of the Motion

Plaintiffs do not dispute that the Alliance's motion is timely. Indeed, the Alliance filed the motion thirteen days after Plaintiffs filed their Complaint for Injunctive and Declaratory Relief in state court, six days after the first Notice of Removal, and the same day as the Amended Notice of Removal. *See Babbitt*, 58 F.3d at 1397 (finding a motion to intervene timely because it "was filed at a very early stage, before any hearings or rulings on substantive matters."). Plaintiffs contest the Alliance's motion on the remaining elements. Plaintiffs contest the Alliance's motion on the remaining elements.

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 6

### 2. *The Alliance's Interest in the Subject of the Action*

In the Ninth Circuit, "[a] public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Babbitt*, 58 F.3d at 1397; *see also Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1179-80 (9th Cir. 2011) (observing that environmental public interest groups enjoy intervention of right to enter litigation on the side of the government defendant); *Bates v. Jones*, 127 F.3d 870, 874 (9th Cir. 1997) (denying a public interest group's motion for intervention for failure to demonstrate that it was involved in the enactment of the measure at issue in the litigation).

The Alliance attaches the Declaration of Renée Hopkins in support of its motion. ECF No. 5. Ms. Hopkins, the Alliance's Chief Executive Officer, states that "[t]he Alliance is a nonprofit organization based in Seattle, Washington, that is dedicated to ending gun violence and promoting a culture of gun ownership that balances rights with responsibilities." ECF No. 5 at 2 ¶ 2. Ms. Hopkins provides that the Alliance, in support of the passage of ESSB 5078, assisted in policy research and development, assisted in drafting proposed bill language, recruited experts to provide analysis and legislative testimony, organized public support, and broadly advocated for the bill. ECF No. 5 at 3 ¶ 5.

Plaintiffs accurately explain that the Alliance must show a "protectable interest" and a "relationship between the legally protected interest and the claims at

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 7

issue." ECF No. 9 at 6 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1084 (9th Cir. 2003)). However, Plaintiffs ignore the well-established doctrine that recognizes a public interest group's "significant protectable interest" in the defense of the legality of a measure that it supported. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006). The cases that Plaintiffs cite are inapposite.

In *Arakaki*, the Ninth Circuit considered an application for intervention by native Hawaiians in a lawsuit challenging the allocation of privileges and benefits to Hawaiians and native Hawaiians by various government agencies. 324 F.3d at 1081-82. The intervenors sought to ensure that native Hawaiians would continue to receive certain benefits under the policy in place at the time and, further, to reserve additional privileges and benefits for native Hawaiians, to the exclusion of the broader category, Hawaiians. *Id.*

In *Donnelly*, male employees of the United States Forest Service sought to intervene in a lawsuit brought by a class of female employees who alleged a gender-based hostile work environment. *Donnelly v. Glickman*, 159 F.3d 405, 407-08 (9th Cir. 1998). The male employees asserted claims of gender discrimination and argued that a finding of hostile work environment and remediation of the same, in favor of the female employees, would infringe on their protectable interest in a discrimination-free workplace. *Id.* at 409-11.

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 8

Both the *Arakaki* and *Donnelly* decisions are demonstrative of circumstances more commonly presented by applications for intervention, where a protectable interest is not so readily discernable. In each, the Ninth Circuit explained, at length, the lack of a protectable interest. For the Court's purposes, here, the Ninth Circuit has provided a convenient and concise answer to the inquiry. *See Sagebrush Rebellion*, 713 F.2d at 527. The Alliance has a "significant protectable interest" in the defense of the legality of a measure for which it provided support in enactment. *See Prete*, 438 F.3d at 954 (citing *Sagebrush Rebellion*, 713 F.2d at 528).

### 3. The Alliance's Impairment or Impediment to Protecting its Interest

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quotations omitted). Courts generally have "little difficulty" concluding that the disposition of a case involving a third-party's significant protectable interest would impair or impede the proposed third-party's ability to protect its interest. *See Citizens for Balanced Use*, 647 F.3d at 898 (citing *California ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006)). "[I]ntervention of right does not require an absolute certainty that a party's interests will be impaired . . . ." *Id.* at 900. In a lawsuit challenging the legality of

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 9

1   a measure that a public interest group has supported, "an adverse court decision on

2   such a measure may, as a practical matter, impair the interest held by the public

3   interest group." *Prete*, 438 F.3d at 954.

4       Plaintiffs challenge the legality of ESSB 5078 and ask the Court to "[e]njoin

5   Defendants . . . from enforcing the provisions of ESSB 5078 and all related laws,

6   regulations, policies, practices, and customs that would impede or criminalize the

7   exercise of the right to keep and/or bear arms . . . ." ECF No. 1-4 at 32. Should

8   the Court grant this relief, the Alliance's ability to protect its interest in ESSB

9   5078's survival and enforcement would be impaired, if not defeated entirely.

10      In their response, Plaintiffs offer unsupported legal conclusions and

11  seemingly confuse the elements of the Rule 24(a) analysis. Plaintiffs assert that

12  "[the] Alliance is not harmed if ESSB 5078 is deemed unconstitutional. No right is

13  violated; rather, a right is restored that belongs to all Washingtonians. [The]

14  Alliance cannot claim that they are more likely to suffer harm." ECF No. 9 at 7.

15  The question before the Court is not whether the Alliance is "more likely to suffer

16  harm" or if its "right is violated;" the question is whether the Alliance has an

17  interest that could be impaired by the disposition of this proceeding.

18      Plaintiffs cite to *Citizens for Balanced Use* to argue that an intervenor has a

19  "special interest" only where "its interest is protectable under some law and

20  [where] there is a relationship between the legally protected interest and the claims

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 10

1    at issue" and that the Alliance has failed to show a "special interest."  ECF No. 9 at

2    8 (quoting 647 F.3d at 897).  The argument is irrelevant to the third element of the

3    Rule 24(a) analysis.  With the language that Plaintiffs cite, and in the other cases

4    offered in support, the Ninth Circuit is primarily concerned with the second

5    element of the Rule 24(a) analysis, finding in each that the intervenors lacked a

6    protectable interest, and forewent analysis of the third element.  *Citizens for*

7    *Balanced Use*, 647 F.3d at 897; *see also Nw. Forest Res Council v. Glickman*, 82

8    F.3d 825 837-38 (9th Cir. 1996) ("Because [the intervenor] lacks such an interest

9    in [the plaintiff's] declaratory action, we need not elaborate on [the third] factor.");

10   *Greene v. United States*, 996 F.2d 973, 976-78 (9th Cir. 1993) ("[the intervenors]

11   have no protectable interest").

12       As found above, the Alliance has a significant protectable interest in the

13   enforcement of ESSB 5078.  A decision in favor of Plaintiffs would impair and

14   impede the Alliance's ability to protect that interest.

15       *4.  Representation of the Alliance's Interest by Other Parties*

16       "In evaluating adequacy of representation, [the Ninth Circuit] examine[s]

17   three factors: '(1) whether the interest of a present party is such that it will

18   undoubtedly make all of a proposed intervenor's arguments; (2) whether the

19   present party is capable and willing to make such arguments; and (3) whether a

20   proposed intervenor would offer any necessary elements to the proceeding that

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 11

other parties would neglect.'" *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086); *see also Sagebrush Rebellion, Inc.*, 713 F.2d at 528. "The burden on proposed intervenors in showing inadequate representation is minimal, and would be satisfied if they could demonstrate that representation of their interests 'may be' inadequate." *Arakaki*, 324 F.3d at 1086 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

However, "[w]here the party and the proposed intervenor share the same ultimate objective, a presumption of adequacy of representation applies." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (quotations and citations omitted). This presumption arises where an intervenor seeks to intervene on the side of the government in a lawsuit challenging the legality of a statute. *Lockyer*, 450 F.3d at 444 ("Arguably, [the presumption] is nowhere more applicable than in a case where the Department of Justice deploys its formidable resources to defend the constitutionality of a congressional enactment."); *Arakaki*, 324 F.3d at 1086 ("There is . . . an assumption of adequacy when the government is acting on behalf of a constituency that it represents."). Absent a "very compelling showing to the contrary, it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Lockyer*, 450 F.3d at 443 (quotations and citations omitted).

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 12

The Alliance argues that the Court should not presume Defendants will adequately represent its interests in this lawsuit. The Alliance invokes the United States Supreme Court's decision in *Berger v. N.C. State Conf. of NAACP* for the proposition that "the Supreme Court recently held that 'this presumption applies only when interests overlap fully.'" ECF No. 4 at 12 (quoting 142 S. Ct. 2191, 2204 (2022)). As Plaintiffs explain, the *Berger* opinion does nothing to disturb the extensive preexisting Ninth Circuit authority on this issue. ECF No. 9 at 12. Indeed, Justice Gorsuch explicitly observed that, "to resolve this case we need not decide whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." *Berger*, 142 S. Ct. at 2204.

Intervenors contend that the presumption of adequacy of representation should not apply on two grounds. First, the Alliance attempts to divorce its own goal in this litigation from that of Defendants by explaining that its "focused interest in promoting—and defending—sensible yet comprehensive firearm regulation diverges with state and local officials' broader duties to promote the public interest more generally." ECF No. 4 at 13. The Alliance's significant protectable interest in this case is limited. The Court is singularly concerned with the Alliance's interest in defending the legality of ESSB 5078, a statute that it aided in enactment. Further "comprehensive firearm regulation" is not the subject

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 13

of this lawsuit and irrelevant to the instant analysis.  In that limited interest, the

Alliance is closely allied with the Defendants.

Second, the Alliance points to numerous allegations that "Plaintiffs level . . .

against Defendant Ferguson specifically."  ECF No. 4 at 13.  The Alliance argues

that "[Defendant] Ferguson's defense will include responding [to] and rebutting

such accusations, while the Alliance's defense would focus solely on the

constitutionality of ESSB 5078."  ECF No. 4 at 14.  The Court has reviewed

Plaintiffs' Complaint and, indeed, there are included extensive allegations against

Defendant Ferguson specifically.  *See, e.g.*, ECF No. 1-4 at 16-26.  Further,

Plaintiffs include in their prayer for relief a request that the court "[g]rant any and

all other equitable and/or legal remedies as this Court may see fit, to include an

inquiry, whether legal or ethical in nature, into [Defendant Ferguson's] use of our

office of attorney general to advance his personal agendas to impair the right to

bear arms of all Washingtonians."  ECF No. 1-4 at 32-33.

The central question of this litigation remains the constitutionality of ESSB

5078.  As Plaintiffs explain in the Complaint, "[t]he primary question underlying

this action is whether an illegal impairment or infringement has occurred to

Plaintiff(s)' right to bear arms under the WA and/or US Constitutions such that the

law in question must be declared invalid and/or unconstitutional and the

Defendants charged with enforcing said law are rightfully enjoined."  ECF No. 1-4

1   at 4 ¶ 6.  It is fair to anticipate that in this litigation, Defendant Ferguson may

2   respond to allegations lodged against him.  However, the resulting departure would

3   not be so significant as to separate the Alliance's interest from that of the

4   Defendants.  Further, there are the three remaining Defendants that the Alliance

5   fails to consider.

6          Notably, the Alliance admits that it "may share with present Defendants the

7   'ultimate objective' of defending the constitutionality of ESSB 5078 . . . ."  ECF

8   No. 4 at 13.  The Court is to presume adequacy of representation where the party

9   and the proposed intervenor "share the same ultimate objective . . . ."  *Freedom*

10  *from Religion Found.*, 644 F.3d at 841.  Having presumed that the existing parties

11  will adequately represent the Alliance's interest, the Court next considers whether

12  the Alliance has made a "very compelling showing to the contrary. . . ."  *Arakaki*,

13  324 F.3d at 1086.

14         The Court begins with the first two of the three factors for evaluation of the

15  adequacy of representation:  "(1) whether the interest of a present party is such that

16  it will undoubtedly make all of a proposed intervenor's arguments; [and] (2)

17  whether the present party is capable and willing to make such arguments . . . ."

18  *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086).

19  The Alliance, rather vaguely, argues that Defendants are "unlikely to capture the

20  Alliance's unique perspective as Washington State's leading gun violence

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 15

1  prevention organization or articulate its particular positions on the Second

2  Amendment's proper scope."  ECF No. 4 at 14.

3       Where the Ninth Circuit has found that an existing government defendant

4  would likely fail to represent the interest of an intervenor seeking to defend the

5  legality of a statute, exigent circumstances had cast doubt upon the government's

6  likelihood to do so.  *See Babbitt*, 58 F.3d at 1398 (finding inadequacy of

7  representation where the government defendant had failed for years to take action

8  on an item that the intervenors filed a prior suit to compel); *Sagebrush Rebellion*,

9  713 F.2d at 528-29 (finding inadequacy of representation where leadership of the

10  government defendant had fallen to a political appointee who previously led the

11  organization representing the plaintiff in the lawsuit).

12       For example, in *Citizens for Balanced Use*, the measure at issue in litigation

13  was an interim order of the Forest Service.  647 F.3d at 895.  That interim order

14  was implemented only after the Forest Service was compelled to do so by a district

15  court order in earlier litigation.  *Id.* at 899.  Therefore, in one case, the Forest

16  Service was to defend the legality of the interim order, and in the earlier-filed case,

17  the Forest Service was pursuing an appeal of the district court decision that

18  mandated that same interim order.  *Id.*  The Ninth Circuit recognized that "the

19  Forest Service issued the Interim Order at issue here only reluctantly in response to

20  successful litigation" and considered the appeal of the district court mandate to

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 16

"add[] substantial weight to Applicants' position that the Forest Service may be unable or unwilling to pursue vigorously all available arguments in support of the Applicants' interest." *Id.* at 900. This constituted a specific, demonstrable reason to doubt that the Forest Service would make the proposed intervenor's arguments. *Id.* The Alliance, here, offers only speculation.

The final factor is "whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* at 898. The Alliance places this case in the context of recent Supreme Court precedent on the Second Amendment. ECF No. 4 at 15. The Supreme Court, in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), established a test for adjudicating Second Amendment claims. Alongside that decision, the Supreme Court vacated a recent Ninth Circuit opinion on the constitutionality of a California State ban on possession of large-capacity magazines. *Duncan v. Bonta*, 19 F.4th 1087 (9th Cir. 2021), *vacated and remanded*, 142 S. Ct. 2895 (2022). Plaintiffs observe that this case is likely to proceed in accordance with and in the shadow of *Duncan*, given the similarities of issues presented. ECF No. 9 at 10-11.

The Alliance argues that "it is unlikely all present Defendants will interpret and apply the new and untested standard in precisely the same way as the Alliance." ECF No. 4 at 15. The Alliance highlights its specialization and

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 17

1   expertise in Second Amendment litigation. ECF No. 4 at 16. Again, the Alliance

2   merely speculates as to the inadequacy of the present representation.

3       It is on this issue that public interest groups often fail to make their showing

4   in the Rule 24(a) analysis. *See, e.g.*, *Gonzalez v. Arizona*, 485 F.3d 1041, 1052

5   (9th Cir. 2007); *Prete*, 428 F.3d at 957-58; *League of United Latin Am. Citizens v.*

6   *Wilson*, 131 F.3d 1297, 1305-07 (9th Cir. 1997); *California v. HHS*, No. 17-05783,

7   2017 WL 6731640, at *8-9 (N.D. Cal. Dec. 29, 2017). The Alliance's interests are

8   adequately represented by the existing Defendants and, therefore, the Alliance is

9   not entitled to intervene as a matter of right under Rule 24(a).

10   **B. Intervention by Permission**

11       Rule 24(b)(1) provides that, "[o]n timely motion, the court may permit

12   anyone to intervene who . . . has a claim or defense that shares with the main

13   action a common question of law or fact." Rule 24(b)(3) provides that, "[i]n

14   exercising its discretion, the court must consider whether the intervention will

15   unduly delay or prejudice the adjudication of the original parties' rights."

16   "[P]ermissive intervention 'requires (1) an independent ground for jurisdiction; (2)

17   a timely motion; and (3) a common question of law and fact between the movant's

18   claim or defense and the main action.'" *Freedom from Religion Found.*, 644 F.3d

19   at 843 (citations omitted). When the prerequisites for permissive intervention are

20   met, a district court is "entitled to consider other factors in making its discretionary

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 18

decision on the issue of permissive intervention." *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (listing factors) (citations omitted). A district court's discretion to permit intervention is broad. *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

### 1. Timeliness of the Motion

As discussed above, the Alliance's motion is timely. As this litigation is in an early stage, the Court finds that intervention would not unduly delay or prejudice the adjudication of the original parties' rights.

### 2. Independent Ground for Jurisdiction

The requirement that intervenors provide an independent ground for jurisdiction is rooted in the "concern that intervention might be used to enlarge inappropriately the jurisdiction of the district courts." *Freedom from Religion Found.*, 644 F.3d at 843. "Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away." *Id.* at 844.

In their Amended Notice of Removal, the State Defendants argue that this Court has original jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1441(a). ECF No. 3 at 2. No motion to remand was filed within the 30-day period prescribed by 28 U.S.C. § 1447(c). Plaintiffs do not dispute that this Court has jurisdiction over their claims.

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 19

1    Plaintiffs make a fleeting argument, without citation to authority, that "[the]

2 Alliance has yet to show a demonstrable harm therefore it lacks standing in this

3 case, and it cannot use intervention to bypass this constitutional requirement."

4 ECF No. 9 at 13. Plaintiffs misconstrue the constitutional jurisprudence on this

5 issue. "In general, an applicant for intervention need not establish Article III

6 standing to intervene." *Perry v. Schwarzenegger*, 630 F.3d 898, 906 (9th Cir.

7 2011). Perhaps more relevant is the fact that the Alliance seeks to intervene as a

8 defendant in this action. Article III's standing requirement attaches to "any person

9 invoking the power of a federal court . . . ." *Hollingsworth v. Perry*, 570 U.S. 693,

10 704 (2013). A defendant is not the injured party in a lawsuit and its presence does

11 not invoke the power of the federal court.

12    The Alliance's ground for jurisdiction is rooted in the federal question that

13 gives rise to the Court's original jurisdiction in this case. There is no insertion of a

14 new state-law claim; the Alliance seeks to defend laws challenged as

15 unconstitutional. *See Jackson v. Abercrombie*, 282 F.R.D. 507, 520 (D. Haw.

16 2012) ("The laws at issue in this suit are challenged under federal law. [The

17 intervenor] seeks to intervene to defend the laws, not assert any new claims. Thus

18 the independent jurisdictional requirement is inapplicable."). The Alliance

19 satisfies this element.

20

### 3. Common Question of Law and Fact

A common question of law and fact between an intervenor's claim or
defense and the main action arises when the intervenor's claim or defense
"relate[s] to the subject matter of the action . . . before the district court," *Greene*,
996 F.2d at 978, or, stated another way, when such claims or defenses "are clearly
a critical part of the instant case." *Citizens Allied for Integrity & Accountability,
Inc. v. Miller*, No. 21-00367, 2022 WL 1442966, at *21 (D. Idaho May 5, 2022).
The defenses that the Alliance seeks to bring clearly relate to the subject matter of
the action, namely, the constitutionality of ESSB 5078.

### 4. Other Factors

The Ninth Circuit has provided additional relevant factors for consideration
of an application for permissive intervention:

> [T]he nature and extent of the intervenors' interest, their standing to
> raise relevant legal issues, the legal position they seek to advance, and
> its probable relation to the merits of the case. The court may also
> consider whether changes have occurred in the litigation so that
> intervention that was once denied should be reexamined, whether the
> intervenors' interests are adequately represented by other parties,
> whether intervention will prolong or unduly delay the litigation, and
> whether parties seeking intervention will significantly contribute to full
> development of the underlying factual issues in the suit and to the just
> and equitable adjudication of the legal questions presented.

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 21

1   *Callahan*, 42 F.4th at 1022 (citing *Spangler*, 552 F.2d at 1329). The Court has

2   already discussed at length the nature of the Alliance's interest and whether its

3   interest is adequately represented by the other parties in this litigation.

4        The Court finds persuasive the following analysis set forth in *Doe v. Harris*,

5   No. 12-5713, 2013 WL 140053, at *6-7 (N.D. Cal. Jan. 10, 2013), which presented

6   circumstances similar to the instant case:

7        Even though [the intervenors] have not made a compelling showing that
         the Attorney General inadequately represents their interests, the Court
8        anticipates that the presence of [the intervenors] in this suit will
         contribute to the just and equitable resolution of the issues before it.
9        [The intervenors] seek only to ensure that their perspective on the
         matters at the heart of this litigation are given due consideration; they
10       do not request to bring any counterclaims or cross-claims. As the
         California Supreme Court has observed, the participation of official
11       proponents in a suit challenging a ballot initiative may help ensure that
         the interests of the voters who approved the initiative are fully
12       represented and that "all viable legal arguments in favor of the
         initiative's validity are brought to the court's attention."

13

14  *Id.* (quoting *Perry v. Brown*, 265 P.3d 1002, 1024 (Cal. 2011)). Although

15  this case does not involve a ballot initiative, it is recent and untested

16  legislation that gives rise to Plaintiffs' claims. Further, this case takes place

17  in the wake of important Supreme Court precedent and may present

18  questions of first impression under the new *Bruen* standard. 142 S. Ct. 2111

19  (2022). The expertise that the Alliance offers in the particular subject matter

20

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 22

of this case is likely to be useful and its presence will ensure that the perspective of those who supported ESSB 5078 is present.

The Alliance has demonstrated a valid interest in the outcome of this litigation, offers valuable and specialized experience, and will contribute the equitable adjudication of the legal questions presented. The Alliance's early entry into this litigation will not prolong or unduly delay resolution of this case. The Alliance is granted permission to intervene under Rule 24(b).

Accordingly, **IT IS HEREBY ORDERED:**

1. The Alliance for Gun Responsibility's Motion to Intervene as a Defendant, **ECF No. 4**, is **GRANTED**.

2. The Alliance for Gun Responsibility shall be allowed to proceed as Defendant-Intervenor in this matter.

3. The case caption shall be amended as set-forth in the caption of this Order.

4. Defendant-Intervenor shall file their Answer to Plaintiff's Complaint on or before **October 11, 2022.**

**IT IS SO ORDERED.** The District Court Executive is directed to file this

order, amend the case captions as directed above, and provide copies to the parties.

DATED September 27, 2022.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION
TO INTERVENE AS A DEFENDANT - 24