1

2       UNITED STATES DISTRICT COURT

3     WESTERN DISTRICT OF WASHINGTON AT TACOMA

4     _____

5                              )
   GABRIELLA SULLIVAN, et al.,   ) 3:22-cv-5403-DGE
6                              )
                    Plaintiffs,  ) Tacoma, Washington
7                              )
   v.                            ) September 23, 2022
8                              )
   BOB FURGUSON, et al.,         ) Motion Hearing
9                              )
                    Defendants.  ) 2:00 p.m.
10    _____

11            VERBATIM REPORT OF PROCEEDINGS
12      BEFORE THE HONORABLE DAVID G. ESTUDILLO
               UNITED STATES DISTRICT JUDGE
13    _____

14

15

16

17

18

19

20

21

22

23

24       P r o c e e d i n g s   s t e n o g r a p h i c a l l y   r e p o r t e d   a n d   t r a n s c r i b e d
            W i t h   c o m p u t e r - a i d e d   t e c h n o l o g y
25

1

2                          APPEARANCES

3


4    For the Plaintiffs:      JOEL B. ARD
                              Ard Law Group
5                             P.O. Box 11633
                              Bainbridge Island, Washington
6
                              WILLIAM BERGSTROM
7                             PETER A. PATTERSON
                              Cooper & Kirk
8                             1523 New Hampshire Avenue NW
                              Washington, DC
9

10   For the Defendants       ANDREW R.W. HUGHES
     Ferguson and             Attorney General's Office
11   Batiste:                 800 Fifth Avenue
                              Suite 2000
12                            Seattle, Washington  98104-3188

13   For the Defendants       ANN MARIE SUMMERS
     Satterberg and           DAVID J.W. HACKETT
14   Cole-Tindall:            King County Prosecutor's Office
                              1191 Second Avenue
15                            Suite 1700
                              Seattle, Washington
16
     For the Defendants       CHRISTINE M. PALMER
17   Gese and Enright:        Kitsap County Prosecutor's Office
                              614 Division Street
18                            MS-35A
                              Port Orchard, Washington
19
     For the Defendants       CALLIE A. CASTILLO
20   Scott and Tillotson:     Lane Powell
                              1420 Fifth Avenue
21                            Suite 4200
                              Seattle, Washington
22
     For the Proposed         ZACHARY J. PEKELIS
23   Intervener Defendant     Pacifica Law Group LLP
     Alliance for Gun         1191 Second Avenue
24   Responsibility:          Suite 2000
                              Seattle, Washington
25

```
 1                                    AFTERNOON SESSION
 2                                    SEPTEMBER 23, 2022
 3          THE CLERK:  We are ready to go on the record when you
 4   are.
 5          THE COURT:  Good afternoon.  Let's go ahead and go on
 6   the record.
 7          THE CLERK:  This is Sullivan, et al. versus Ferguson,
 8   et al., CV-22-5403-DGE.
 9      Counsel for plaintiff, please make an appearance.
10          MR. PATTERSON:  Pete Patterson from Cooper & Kirk for
11   plaintiff.  My colleague Will Bergstrom is here today.  He
12   will be doing the speaking for us.
13          MR. BERGSTROM:  Good afternoon.
14          THE COURT:  I think I heard Mr. Ard is here as well?
15          MR. ARD:  Yes, Joel Ard.  I will go back on mute and
16   let Mr. Bergstrom do the speaking.
17          THE COURT:  Thank you.
18          THE CLERK:  For defendants.
19          MR. HUGHES:  Assistant Attorney General Andrew Hughes
20   here on behalf of Defendants Ferguson and Chief Batiste.
21          MS. SUMMERS:  I am Ann Summers here with my colleague
22   David Hackett on behalf of Defendants Prosecutor
23   Dan Satterberg and Sheriff Cole-Tindall.
24          MS. PALMER:  Christy Palmer, prosecuting attorney for
25   Kitsap County.  I am here for Defendants John Gese and
```

1    Chad Enright.

2          MS. CASTILLO:  Callie Castillo on behalf of

3    Defendants Norma Tillotson and Rick Scott of Grays Harbor.

4          MR. PEKELIS:  Zach Pekelis for Proposed Intervener

5    Defendant Alliance for Gun Responsibility.

6          THE COURT:  I apologize, I am taking a bit of time

7    and writing down names.  For my purposes, I have the State

8    being represented by Mr. Hughes, King County by Ms. Summers,

9    Kitsap County by Ms. Palmer, and then Grays Harbor by

10   Ms. Castillo; is that correct?  Yes, okay.  Perfect.  And

11   then today speaking on behalf of plaintiff will be

12   Mr. Bergstrom?

13         MR. BERGSTROM:  Yes.

14         THE COURT:  And then on behalf of proposed

15   intervener, is Mr. --

16         MR. PEKELIS:  Zach Pekelis on behalf of the Alliance

17   for Gun Responsibility.

18         THE COURT:  I am going to put "Alliance," just

19   because it is easier.

20      Good afternoon.  My name is David Estudillo.  I am the

21   District Judge assigned to this case.  I appreciate you being

22   here to discuss the case and the status.

23      I do understand there are three motions currently pending.

24   One is the motion for intervener Alliance.  The other two

25   being the motion to dismiss from Kitsap County and one from

1   King County.  Those are on my list of things to get to.

2       Unfortunately, as you hopefully may appreciate, and maybe

3   you don't, but you might appreciate that I only came on less

4   than a year ago.  When you get transferred on or come on

5   board, you are given a docket with a number of motions that

6   are already pending.  As you are trying to get out of the

7   motions that are pending, motions are filed in new cases

8   being assigned to you.  It takes a little time.

9       I have been digging myself out of my work that I was

10  already assigned as soon as I got here.  Obviously, that

11  means I have to give and take at certain spots.  That's why

12  it has been a little bit slower on this case to get to the

13  three pending motions.  They are on my radar.  I do hope to

14  dedicate time to focus on them on a sooner-than-later basis.

15  I will say it is difficult to give you an official timeline

16  when I will get a response or orders out on those matters.

17  Rest assured, they are on the radar and they will be

18  addressed on a sooner-than-later basis.

19      With that said, there are a couple things we need to

20  discuss.  First is the issue of discovery.  I know the

21  parties have a dispute as to whether or not to engage in

22  discovery.  Currently, there is no motion before me for a

23  formal motion to stay discovery.  Just so that we are all

24  clear, there is nothing currently staying discovery.  I do

25  want to hear from the parties more about their motion on the

1  need for discovery and/or the reason not to engage in

2  discovery.  I am not sure who wants to go first.

3       I think plaintiff, of course, indicates no discovery is

4  needed, and I am not sure who officially did the complete

5  response from the defense side.  The State defendants

6  indicate that some discovery is required.

7       From the plaintiff's side, any comments you want to make?

8  I have read your position.  Anything you think the Court

9  should focus on on that issue at this point?

10       MR. BERGSTROM:  No.  I'll be very brief.  I would

11  highlight the *Bruen* test is new.  It is fairly clear what

12  matters and what doesn't here.  The sort of facts that matter

13  to the merits of this case are not the facts found in

14  discovery.  Things that are known facts about the laws and

15  about the historical tradition, that is something we think we

16  don't need discovery on.

17       The other two issues the State raises are damages and

18  plaintiffs' standing.  We don't think -- again, the

19  plaintiffs' standing, we don't think facts that go to

20  standing in this case are really in dispute here.  We don't

21  think discovery is necessary on those either.

22       Rainier Arms is a dealer.  They have stopped selling these

23  magazines because of the ban.  Our two individual plaintiffs

24  cannot purchase them and are not purchasing them because of

25  the ban.  We don't think discovery would be fruitful on

1     those.

2        Regarding damages, I would say quickly, we said in our

3     submission that we were planning on amending the Complaint.

4     We have discussed it some more.  I think we could stipulate

5     away damages.  Either way, we are not seeking damages in this

6     case.  We think discovery on that point is also unnecessary.

7              THE COURT:  Thank you.  Let me ask you a brief

8     question about the legislative facts or historical context.

9     What do you envision presenting to the Court in your motion

10    in support for plaintiff's position on why this history, the

11    legislative facts support a finding of the current

12    regulations in violation of the Second Amendment?  What would

13    you be presenting?  Some case law?  Specific statutes?  Are

14    you going to give me a summary of what you believe the

15    history incorporates, and who is going to present that

16    summary of the history?

17             MR. BERGSTROM:  Good question.  First, I would say

18    under *Bruen* the burden is actually on the defendants to

19    present that history, to prove their law is constitutional

20    under that history.

21       We would intend to rely on publicly available sources:

22    historical statutes, Law Review articles, things of that

23    nature to present that history.

24             THE COURT:  Let me hear from the defense side, the

25    State defendants.

1     MR. HUGHES:  This is, in our view, a pretty

2   extraordinary request.  If you look at *Bruen*, it is primarily

3   a 133-page discussion of history.  It is not just statutes

4   and firearm laws.  There is also the historical context in

5   which those laws arise.  For example, there is a long

6   discussion in the opinion, which is just one example, of

7   surety laws.  The court goes back and forth on whether or not

8   there was enough evidence in the record of whether the surety

9   laws actually burdened plaintiff's Second -- someone's Second

10  Amendment right to carry weapons.  The court referenced one

11  particular Law Review article that "canvassed" -- was the

12  word they used -- 19th Century newspapers.  That's the sort

13  of historical work that under the *Bruen* test and the history

14  test we need to do. We need to do it through expert

15  historians who are specially trained, have the ability to

16  look at archives, find archival material that Mr. Bergstrom

17  references, statutes and the like, put that in historical

18  context.

19      I note that plaintiffs' Complaint relied primarily on an

20  article from a lawyer who argues that there is all sorts of

21  these examples of large-capacity weapons that have been in

22  common use since time in memorial.  Our historians have to

23  look at those. What they are going to show, not to look at

24  the merits, but whether or not those weapons are actually

25  being used, whether there actually is a tradition of use of

1    large-capacity magazines against which there was no

2    regulation, and whether under *Bruen* it may be inappropriate

3    to regulate now is a historical question that is going to

4    require some significant expertise and significant time to

5    develop a record.

6        On the point of standing, plaintiff says there is

7    presently no dispute on whether these plaintiffs have

8    standing.  Of course, we haven't taken discovery on that.

9    That's the reason why there is no dispute.  Arguing that the

10   lack of a present dispute means there should be no discovery

11   is sort of circular.

12       Unless Your Honor has any questions, I'll leave it at

13   that.

14           THE COURT:  I don't.

15       Did any of the other defendants or intervener have any

16   comments on this issue?

17           MS. SUMMERS:  This is Ann Summers with King County.

18   I would add the *Jones vs Bonta* case, which is involving the

19   California law regarding large-capacity magazines, the Ninth

20   Circuit, a few weeks ago, remanded that to district court.  I

21   think that is a strong signal as far as the Ninth Circuit is

22   concerned that fact finding is required on the district court

23   level.  If fact finding is required, I think discovery is

24   appropriate.  It is not a question of things the Court can

25   take judicial notice of.

1          THE COURT:  All right.  Thank you.  Anyone else?

2     Mr. Pekelis.

3          MR. PEKELIS:  Zach Pekelis on behalf of the proposed

4     intervener.  I agree fully with what Mr. Hughes and

5     Ms. Summers said.  I point out just to kind of tether to the

6     *Bruen* decision that it is not just that the Court is to look

7     at the historical context, but what does the Court do with

8     the historical context.

9          What the *Bruen* court instructed in several cases is

10    whether "modern and historical regulations impose a

11    comparable burden on the right of armed self-defense."

12    Whether that burden is comparably justified are central

13    considerations when engaging in an analogical inquiry.  It is

14    not that you look at the history.  You look at the modern law

15    and examine whether the benefits and burdens of the modern

16    law that is challenged are comparable to the historical

17    analogue benefits and burdens.  That's the classic type of

18    question on which discovery would be most helpful and indeed

19    necessary.

20         THE COURT:  All right.  Thank you.

21         First, as I indicated just briefly at the beginning, there

22    is no real motion in front of me to stay discovery.  There is

23    currently nothing that stops discovery.

24         Having reviewed the issue, I will give you my general

25    thoughts and then you could always decide if you really want

1   to file the motion.  I am going to give you what I think is

2   going to happen if you file the motion.

3       First, this is an issue many courts are dealing with

4   because most judges -- there might be some that are outliers

5   that are truly historians in their prior life or experiences,

6   but most judges are not historians.  We are trained to

7   research case law, do an analysis, provide our analytical

8   thinking as to what the issue may be, et cetera.  We are not

9   true historians, we are just not.  Quite frankly, chambers

10  staff that assists the judges, we don't hire historians

11  either.  They are usually individuals that are researchers

12  when it comes to case law and have good analytical skills and

13  writing skills.

14      It really puts courts just in a very difficult position to

15  analyze what the history is because that's not our

16  background, quite frankly.

17      This *Bruen* decision definitely is new.  In my mind, it is

18  really putting an emphasis on historical context.  I am going

19  to note one of the things it said right at the beginning as

20  we talked about *Heller* and what was being done in *Heller* and,

21  of course, they use that kind of analysis I think throughout

22  the rest of the decision.  In reference to *Heller*, they are

23  noting that in assessing the post-ratification history --

24  they are referring to the Second Amendment -- we look to four

25  different types of sources.

First, we reviewed how the founding era legal scholars interpreted the Second Amendment in published writing. Second, we looked to the 19th Century cases that interpret the Second Amendment and found they universally support an individual's right to keep and bear arms.  Third, we examined the discussion of the Second Amendment in Congress and in public discourse after the support as people debated whether and how to secure the constitutional rights for newly freed slaves, and we considered how post-Civil War commentators understood the rights.  It was truly, from what I could tell, historical research done by historians.  In essence, what they were looking towards.

I will also point out -- let's see here -- what Mr. Pekelis noted, and in addition to the quote that Mr. Pekelis stated, after that the Supreme Court stated:  "To be clear, analogical reasoning under the Second Amendment is neither a regulatory straightjacket nor a regulatory blank check.  On the one hand, courts should not 'uphold every modern law that remotely resembles a historical analogue' because doing so 'risks endorsing outliers that our ancestors would never have accepted.'  On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin.  So even if the modern-day regulation is not a dead ringer for historical precursors, it still may be

1  analogous enough to pass constitutional muster."

2      Given that, I think there does need to be some type of

3  discovery in finding out what historians on those issues that

4  I just kind of referenced, what historians would opine on

5  some of those things, what they find in their research.  So

6  it is very difficult for me to say, hey, there should be no

7  discovery on any of this.

8      Mr. Bergstrom, you and your colleague are welcome, if you

9  wish, to file a formal motion on this.  Maybe I am completely

10  wrong.  Maybe you point to some other reasoning in the

11  decision that somehow says no, you can just make decisions

12  without any further discovery.

13      Based on what I am reading right now, I don't think I

14  would agree with that. Again, you might be able to convince

15  me otherwise based on what you find, what you point to in the

16  language of the decision.  Right now, seems like it is

17  probably not likely, to be honest, that I would agree with

18  you.

19      Things can change, and I might change my mind if you point

20  to something that is very convincing.  Right now, it doesn't

21  seem to be there.

22      I think discovery does need to be had, some form of

23  discovery, to help the Court out with the historical contexts

24  of some of these issues. That is my general thoughts with

25  regard to discovery.

1     Likewise, same thing with the standing issue.  Too early

2  for me to say.  On the one hand, plaintiffs say, you know,

3  there is a real dispute here.  The representative plaintiffs

4  are no longer able to sell these magazines.  Likewise, the

5  other plaintiffs are not allowed to buy them, et cetera.

6  Arguably, there is standing.  Again, I haven't reviewed this

7  completely.  There might be some discovery that says

8  otherwise.  It is kind of hard to give you my thoughts as to

9  what I would do without further seeing a motion on that

10  issue.

11     The bottom line is, there is no stay at this point.

12  Because there is no stay, right now discovery is open.  I

13  will leave it to the parties if they want to file a formal

14  motion, as I indicated, for the Court to consider it a bit

15  further.  It is going forward at this point absent an order

16  from the Court that enters a stay.  That is presently not an

17  order the Court has entered.

18     Okay.  That is my thoughts on some of those issues.  The

19  other purpose for these status hearings, in addition to

20  talking about some of these issues and identifying the trial

21  dates, I want to make sure we have proper expectations.  One

22  of the things I do in most of my case -- this is a unique

23  case and more complicated than some of the ones we deal with.

24  I want to go on with my normal comments which is, first,

25  focus on professionalism and civility.  I have no doubt that

everybody is professional and everybody is civil.  And when people interact by telephone, video, or in person, usually individuals get along quite well and are very civil with each other.

I just ask you be mindful that when you write, you check before you hit the "send" button in an email or before you pop the letter in the mail, just make sure how you express yourself in some of those communications is appropriate. Because as you all know, if you feel that you are offended by somebody else's writing or vice versa, that just leads to a bad relationship and leads to a bad litigation experience. Although there are strong feelings on these issues, we should be able to be civil and talk about the issues in a civil manner and make decisions in a civil manner.  Just be mindful before you send something, double check it.  Just double check it so you are certain not to be using language that might be offensive to the other side.

Make sure you follow the civil rules.  Make sure you know the civil rules as well as the local court rules.  Sometimes individuals are not paying attention to those.  I want to make sure you focus and know the rules.

We do plan on issuing a case schedule at this point.  We will identify a trial date here shortly.  I am going to expect the parties follow the case schedule and meet the deadlines.  That means if the deadline says an expert

1  disclosure date of X, that is the date when the disclosure

2  should occur, absent some type of extreme issue that comes up

3  that maybe the parties were not aware of, somebody is ill,

4  some particular personal issue with a family member so they

5  just weren't able to get to the issue.  Other than that, the

6  parties should be aware deadlines will be enforced.

7      Make sure you submit discovery in a timely fashion.  If

8  you are not satisfied with the responses, make sure you take

9  steps to actually enforce the discovery that is being -- has

10  not been responded to or not appropriately responded to in

11  your mind.  Don't wait a couple of months before deciding,

12  oh, I think I am going to try to enforce my discovery request

13  because that just causes delay for everyone all around.

14      Expert disclosures, make sure you appropriately disclose

15  opinions.  I don't expect it in this case.  Sometimes we get

16  expert disclosures where there is a whole lot of verbiage

17  with not much really said.  Make sure you appropriately

18  disclose expert opinions and, of course, the basis for their

19  opinions.  I am not expecting that to be an issue in this

20  case, given the context of the issues we are dealing with,

21  but be aware of that.

22      When you disclose your expert opinions, any rebuttal

23  opinions, if you haven't disclosed an initial expert, make

24  sure you identify their available dates for depositions at

25  the outset.  Don't wait for the other side to request a date

for the deposition.  If you wait, inevitably people's schedules get busy and all of a sudden I am getting a joint motion that says, "We need more time to complete the deposition of the plaintiffs' expert and we jointly submit a request to extend the deadline for discovery," at which point you will get an order that says, "Denied."  Basically, "See the case schedule."  That will be the response.

I say that and, you know, obviously again there is always emergency situations that we will take under consideration. The reality is if you are going to ask for an extension, you need to support it.  When I say "support it," really support it.  Give me something that says, "We had a personal issue to deal with and therefore we couldn't comply."  Or, "I had another case scheduled three weeks ago and we went to trial." That's not sufficient, quite frankly, because everybody has those type of issues.  It is just not sufficient.

I do believe I have authority in the Ninth Circuit to enforce case schedules.  This is from *Wong vs Regence of University of California,* 410 F.3d, 1052 at 1060, a Ninth Circuit 2005 case:  "In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases.  Those efforts will be successful only if the deadlines are taken seriously by the parties.  The best way to encourage that is to enforce the

1    deadlines.  Parties must understand they will pay a price for
2    failure to comply strictly with scheduling and other orders.
3    Failure to do so may properly support severe sanctions and
4    exclusions of evidence."
5         Until the Ninth Circuit dings me on a case on why I don't
6    extend the deadline and tells me why I did it wrong, my
7    thought process at this point is I am going to run with this
8    language and enforce the deadlines.  Be aware that you should
9    expect the deadlines not to be extended.
10        Discovery disputes.  I don't want the parties filing an
11   actual motion for a discovery dispute until after we had a
12   status hearing on what the dispute might be.  More often than
13   not, I find in a status conference we can either at least
14   narrow the issues down so I am not getting 30 pages worth of
15   documents on non-issues and that really there was only one
16   issue we had to deal with, or we hopefully can resolve the
17   issue during the status hearing.
18        Usually what I do is I tell you, well, this is what I
19   think I will do if you were to file a motion, and then the
20   parties can figure out whether they want to spend time to
21   file a motion knowing what the Court may likely do.
22        In preparation, though, for the status hearing on a
23   discovery issue, you will need to submit a joint summary of
24   what the dispute is; just one document from all parties.
25   What I want is literally a bullet point summary.  Issue

1    No. 1, whatever the issue of dispute may be, followed by

2    plaintiffs' position, followed by defendant State's position,

3    followed by all the other parties that are still in the case

4    at that point's position.

5        It needs to be summarized, bullet points.  If you believe

6    there is a case on point, give me the case name and cite.

7    You don't need to elaborate.  I will go and read the case in

8    preparation for the hearing and determine in my opinion if it

9    applies or not.  It literally is a bullet point summary of

10   what the dispute is, what the basis for each party's position

11   is.  It should be no more than three pages.

12       If you file something that is ten pages, we are going to

13   say no, get it down to a very simple three-page summary of

14   what it is we are talking about.  If we need to take more

15   time during the status hearing to explain it better, we will

16   take the time to explain it better.  I want the summary

17   because it is just easier to have the summary and talk about

18   the issues.

19       That, of course, requires that you actually confer on what

20   the dispute is.  Of course, you'll have to meet by telephone,

21   video or in person and work together to actually summarize

22   each party's position into that joint summary.  After you

23   file the joint summary with the Court, you can then contact

24   the courtroom deputy to schedule the status hearing.  We are

25   pretty prompt.  We are pretty prompt on getting a date for

1    discussing the discovery disputes.  Also depends on your

2    calendars, but we are fairly prompt because we want to get

3    the disputes out of the way as soon as possible and/or have

4    you file a formal motion if you can't resolve it during a

5    status hearing.

6        Which leads to the point of, if we can't resolve the

7    dispute during the status hearing, I will ask for a formal

8    motion at that point in time and we will decide if we need to

9    issue a formal order, of course, at that point on the

10   discovery issue.

11       Any questions about that procedure or any other comments I

12   have made thus far?

13       Based on what the parties have identified, what we are

14   looking at as far as an available trial date based on

15   everybody's schedule is November 6, 2023.  We would have, in

16   essence, expert witness disclosures due by April 1st, 2023,

17   any rebuttal witness disclosures by April 30th, 2023,

18   dispositive motion deadline would be July 10, 2023, discovery

19   deadline June 9th, 2023.  Those would be the major dates.

20       There is more information in our scheduling order.  Those

21   are the major dates we would be identifying.

22       Basic question, I guess maybe this is more for the defense

23   side because they are the ones that say they are planning on

24   using an expert and possibly the plaintiff may as well

25   afterward.  For now, it looks like the defense has indicated

1   this. April 1, 2023, is that enough time for you to get your

2   defense experts ready to go and with actual opinions?  If it

3   is not, you need to tell me now so we can build in enough

4   time.  I don't want a motion coming back saying "my expert

5   needs more time."  That's just going to be denied, unless you

6   tell me now.  Is that appropriate or not?

7           MR. HUGHES:  Understood.  As you know, discovery is

8   like a handbag, we will fill as much as you give us. We have

9   been hearing six to nine months.  That would be a little less

10  than seven months out.  I think if we could push that to

11  April 30th as the discovery deadline.

12          THE COURT:  The disclosure deadline?

13          MR. HUGHES:  I misspoke.  If we could push the

14  disclosure deadline to April 30th, I could tell you with real

15  confidence there wouldn't be any issues on our side.

16          THE COURT:  Mr. Bergstrom, comments from you?  I know

17  you indicated initially you didn't think from the plaintiffs'

18  side there was a need for experts.  Do you think you would

19  likely, given everything you have heard today, try to go out

20  and look for an expert?

21          MR. BERGSTROM:  It is possible.  I can't say with any

22  certainty right now until we see what sort of expert is put

23  forward whether we think we need anything to respond.  We

24  think usually these can be responded to just with legal

25  argument.  We would assess that when we saw their reports.

1          THE COURT:  I think what I am going to do is I am

2     going to build in a little bit more time.  That is going to

3     move the trial date.  I am moving the trial date because I

4     want to make sure I have enough time to review the

5     dispositive motions, quite frankly.  These are going to be

6     complicated.  These are not going to be the normal motions.

7     I am going to need time in order to review them and hopefully

8     issue a ruling.  Then depending on what the ruling is, I want

9     to make sure I build in enough time for pretrial stuff.  I

10    don't want the parties working on pretrial stuff until after

11    I had time to issue dispositive rulings to narrow the issue

12    down, depending on what the result is, and we will figure it

13    out at that point.

14       I am going to ask Gretchen, my courtroom deputy, if we are

15    looking at a disclose -- initial expert disclosure date of

16    April 30th, May 1, whatever it is, what would be an available

17    trial date after that?

18          THE CLERK:  I am here.  You said initial expert

19    disclosure date of?

20          THE COURT:  April 30th.  I am bumping everything 30

21    days.  After November 6, 30 days after that, if we have

22    availability.  If not, we go to the next year.

23          THE CLERK:  You have December 4th and December 11th

24    of 2023 available.

25          THE COURT:  Let's go with December 4th.

1          THE CLERK:  Okay.

2          THE COURT:  That would bump everything approximately

3    30 days.  Not quite April 30th.  Maybe like April 28 when you

4    calculate, whatever the date it spits out.

5       Will that work, Mr. Hughes?  You have to tell me now.  I

6    am telling you, you come back and say, "My expert needs more

7    time," you are going to get a "no."

8          MR. HUGHES:  We can make that work, Your Honor.

9    Thank you so much.

10          THE COURT:  We will issue a corresponding order that

11    identifies the trial date of December 4th.  All the dates

12    will correspond to that afterward.

13       I think that is all I have to discuss.  Is -- oh, I know.

14    I forgot.  There is another case that has possibly some

15    similar arguments being made.  What's the status?  Is this

16    something the parties foresee might need to be consolidated

17    one way or the other somehow, because obviously I don't think

18    we want two different rulings from the different courts in

19    our own state, but maybe I am wrong.  Any thought of -- are

20    the same plaintiff attorneys involved in that one or

21    different plaintiff attorneys?

22          MR. BERGSTROM:  Different plaintiff attorneys,

23    Your Honor.  At this point, we don't think consolidation is

24    necessary. The State may have a better idea of where that is

25    at procedurally.  I will let him speak to that. The

1  plaintiffs' position is we don't need to consolidate at this

2  point.

3            MR. HUGHES:  I will accept the invitation,

4  Your Honor.  That case was filed shortly after this one.  It

5  is in a similar posture.  No discovery has been taken yet.

6  We have not yet -- we have answered the Complaint.  We

7  haven't had the scheduling conference.  Plaintiff has

8  informed us he intends to file a motion for preliminary

9  injunction and intends that to be heard in November of 2022.

10  That is the status as far as I can tell you.  I have no

11  position on consolidation at this point.  I also --

12            THE COURT:  It raises my flag.  Okay.  Just keep them

13  in mind.  We are going to keep it in mind as well.  If the

14  parties think they are similar enough, maybe they should be

15  at some point.  I don't know the answer.  I am throwing it

16  out there because it was listed.  All right.  Just want to

17  throw that out there.

18     Any issues that any of the parties feel need to be

19  identified or at least something else that maybe I didn't

20  discuss or touch upon that we should point out at this point

21  for everybody to be aware of?

22            MR. BERGSTROM:  Nothing from plaintiff.

23            MR. HUGHES:  Nothing from State defendants,

24  Your Honor.

25            THE COURT:  All right.  Thank you.  As I indicated

1  with regard to the current motions on behalf of King County,

2  Kitsap and Intervener Alliance, they are on my priority list.

3  I do hope to get to them on a sooner-than-later basis, but I

4  can't give you a date right now unfortunately.

5      All right.  Thank you.  Have a good rest of your

6  afternoon.  I appreciate you all being here and hopefully you

7  can enjoy the rest of your weekend.

8          MR. BERGSTROM:  Thank you.

9          THE COURT:  Thank you.

10              (The proceedings adjourned.)

11

12

13              C E R T I F I C A T E

14

15

16      I certify that the foregoing is a correct transcript from

17  the record of proceedings in the above-entitled matter.

18

19

20

21  */s/ Angela Nicolavo*

22  ANGELA NICOLAVO
    COURT REPORTER

23

24

25