UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GABRIELLA SULLIVAN et al.,<br><br>　　　　　　　Plaintiffs,<br>　　v.<br><br>BOB FERGUSON et al.,<br><br>　　　　　　　Defendants. | CASE NO. 3:22-cv-05403-DGE<br><br>ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT |

**I	INTRODUCTION**

This matter comes before the Court on Movant Alliance for Gun Responsibility's ("Alliance") Motion to Intervene as a Defendant (Dkt. No. 45). The Court has considered the pleadings and hereby DENIES Alliance's motion to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2) but GRANTS Alliance's motion to intervene pursuant to Federal Rule of Civil Procedure 24(b), as detailed herein.

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 1

## II   BACKGROUND

On March 23, 2022, Governor Jay Inslee signed Engrossed Senate Bill 5078 (hereafter "ESSB 5078" or "the Act"), which amended state law to ban the manufacture, import, distribution, and sale (or offering for sale) of "large capacity magazines." Wash. Rev. Code § 9.41.370(1). Large capacity magazines are defined as "ammunition feeding device[s] with the capacity to accept more than 10 rounds of ammunition," with certain enumerated exceptions. Wash. Rev. Code § 9.41.010(16). Plaintiffs are two individuals (Gabriela Sullivan and Daniel Martin), a federally licensed firearm dealer in King County (Rainer Arms, LLC), and two nonprofit organizations dedicated to Second Amendment advocacy (Second Amendment Foundation ("SAF") and Firearms Policy Coalition, Inc. ("FPC")). On June 3, 2022, Plaintiffs filed their first complaint in this action, challenging the constitutionality of the Act under the Second and Fourteenth Amendments. (Dkt. No. 1). On July 1, 2022, Plaintiffs filed their first amended complaint. (Dkt. No. 42.) Plaintiff's complaint is lodged against eight state and local officials in their official capacities, including the Washington State Attorney General Bob Ferguson. (Dkt. No. 42 at 1.) The operative complaint seeks declaratory relief that the Act's ban on the manufacture, distribution, sale, or importation of large capacity magazines violates the Second and Fourteenth Amendments to the United States Constitution, injunctive relief against the named defendants and their agents to prevent them from enforcing the Act, monetary damages, and other equitable or legal remedies.

On July 6, 2022, John Gese ("Gese"), Sheriff for Kitsap County, and Chad M. Enright ("Enright"), County Prosecutor for Kitsap County, filed a motion to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. (Dkt. No. 44.) On August 10, 2022, Patti Cole-Tindall, Interim Sheriff for King

County, and Dan Satterberg, County Prosecutor for King County, filed a motion to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(C). (Dkt. No. 62.) These motions remain pending before this Court.

Alliance filed its motion to intervene and accompanying declaration on July 14, 2022. (Dkt. Nos. 45, 46.) Plaintiffs filed their response in opposition to Alliance's motion to intervene on July 25, 2022. (Dkt. No. 54.) That same day, Defendants John R. Batiste, Chief of the Washington State Patrol, and Bob Ferguson, Washington State Attorney General, filed their response supporting Alliance's motion. (Dkt. No. 55.) Defendants Gese and Enright also filed a response to Alliance's motion, stating that they did not object to permitting Alliance to intervene. (Dkt. No. 56.) Alliance filed its reply to Plaintiff's response in opposition to its motion to intervene on July 29, 2022.

### III    DISCUSSION

Alliance argues that it should be permitted to intervene by right in this case pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, it argues that it should be granted permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). This Court finds Alliance has not met its burden to establish intervention by right, but, using its considerable discretion, grants Alliance's motion for permissive intervention.

**A. Intervention of Right**

    a. <u>Legal Standard</u>

Federal Rule of Civil Procedure 24 is "construed broadly in favor of the applicants." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995). Under Federal Rule of Civil Procedure 24(a)(2), a party seeking to intervene as of right must show:

> (1) the intervention application is timely; (2) the applicant has a 'significant protectable interest relating to the property or transaction that is the subject of the

action'; (3) 'the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest'; and (4) 'the existing parties may not adequately represent the applicant's interest.'

*Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)). There is a presumption "of adequacy when the government is acting on behalf of a constituency that it represents. . . . Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), as amended (May 13, 2003).

    b. Timeliness

Alliance's motion to intervene is timely. To determine whether an intervenor's motion to intervene is timely, "we consider the stage of the proceeding, prejudice to other parties, and the reason for and length of the delay." *Babbitt*, 58 F.3d at 1397. First, Alliance's motion was filed at a very preliminary stage of the proceedings. Alliance filed its motion to intervene within six weeks of the filing of Plaintiffs' initial complaint and under two weeks after Plaintiffs filed their amended complaint. (*See* Dkt. No. 45.) The Court has yet to hold any substantive hearings or make any dispositive rulings. Plaintiffs do not contest that Alliance's motion is timely (*see* Dkt. No. 54) and multiple defendants support, or do not oppose, such an intervention (*see* Dkt. Nos. 55, 56). The Ninth Circuit has held that motions to intervene as late as four months after the filing of an initial complaint were timely. *See, e.g.*, *Babbitt*, 58 F.3d at 1397. Weighing these factors, the Court finds Alliance's motion is timely.

    c. Interest and Impairment of Interest

Alliance also has an interest relating to the subject of the proceeding. "A public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported." *Id.* at 1397 (9th Cir. 1995); *see also Sagebrush Rebellion, Inc. v.*

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 4

*Watt*, 713 F.2d 525, 527 (9th Cir. 1983) ("we [previously] held that a public interest group was entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported."); *Prete*, 438 F.3d at 954 ("[A] public interest group that has supported a measure (such as an initiative) has a 'significant protectable interest' in defending the legality of the measure.").

Alliance submitted a declaration from Renée Hopkins, CEO of Alliance, in support of its motion to intervene. (Dkt. No. 46.) The declaration provides that "Alliance is a nonprofit organization based in Seattle, Washington, that is dedicated to ending gun violence and promoting a culture of gun ownership that balances rights with responsibilities." (*Id.* at 1.) It also asserts Alliance "spent more than six years working to enact the restrictions on large-capacity magazines ('LCM') that ultimately were contained in Engrossed Senate Bill 5078" and that the organization "was the primary organizer of public support for passage of ESSB 5078." (*Id.* at 2–3.)

Plaintiff does not directly challenge whether Alliance has a significant interest related to the subject of this case. We are persuaded based on the assertions put forward in Alliance's Declaration and this Circuit's precedent that Alliance has a significant protectable interest in defending the Act.

Resolving this action absent Alliance will also impede its ability to protect its interest in the Act. Plaintiffs seek declaratory and injunctive relief from this Court to declare the Act unconstitutional and to enjoin state and local officials from enforcing it. Resolution of this action will thus directly impact Alliance's interest in the Act. *See, e.g.*, *Prete*, 438 F.3d at 954 (noting that an "adverse court decision" against a measure that a public interest group has supported may "impede or impair" their interest in that measure).

d. <u>Adequate representation</u>

Alliance, however, fails to meet its burden to establish that the existing parties to this suit do not adequately represent Alliance's interests.

To determine whether a party's interests are adequately represented, we must examine

> (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.

*Arakaki*, 324 F.3d at 1086.  In this Circuit, intervenors must also overcome a presumption of adequacy where the intervenors and existing parties "share the same ultimate objective." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).  This assumption also applies where "'the government is acting on behalf of a constituency that it represents.'" *Id.* (quoting *Arakaki*, 324 F.3d at 1086).  Intervenors must make a "compelling showing" to overcome this presumption of adequacy.  *Citizens for Balanced Use*, 647 F.3d at 898.

As a preliminary matter, Alliance asserts the Ninth Circuit's presumption of adequacy of representation does not apply.  (Dkt. No. 45 at 10.)  Alliance first argues that the Supreme Court's recent ruling in *Berger v. N.C. State Conf. of NAACP*, 142 S. Ct. 2191, 2204 (2022) overruled this Circuit's presumption of adequacy where the government is acting on behalf of its constituents or where the parties share the same ultimate objective.  (*See* Dkt. Nos. 45 at 10; 59 at 4.)  Plaintiffs argue, however, and we agree, that the Supreme Court confined its ruling in *Berger* to the specific context of the case (e.g., where a duly authorized state official seeks to intervene on behalf of the state).  (Dkt. No. 54 at 3–4.)  The Supreme Court specifically noted that "to resolve this case we need not decide whether a presumption of adequate representation

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 6

might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." *Berger*, 142 S. Ct. at 2204.

Alliance also argues that the presumption of adequacy of representation should not apply because its interests do not fully overlap with those of the Defendants. (Dkt. No. 45 at 10.) However, Alliance fails to distinguish its interests from the Defendants outside of conclusory statements. Alliance asserts that its interests "promoting—and defending—sensible yet comprehensive firearm regulation diverges with state and local officials' broader duties to promote the public interest more generally." (*Id.*) It cites to *Citizens for Balanced Use* and *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992 (10th Cir. 2009) to support this argument, however these cases are distinguishable from the case at hand. In *Citizens for Balanced Use*, the organization claimed that the U.S. Forest Service would not adequately represent its interest in protecting an interim order restricting the use of motorized vehicles in sections of a national forest. 647 F.3d at 899. However, the Forest Service in that case was defending the interim order due to a prior district court order, and it was actively seeking to overturn the district court order. *See id.* The Tenth Circuit in *WildEarth Guardians* similarly indicated that potential shifts in government policy may indicate that the proposed intervenors did not fully share the same ultimate objectives as the government. 573 F.3d at 997. No such indications exist here. The Washington State Attorney General has, as Plaintiffs have noted, indicated a longstanding support for the Act and promised to vigorously defend it. (Dkt. No. 54 at 4.) Alliance also concedes that it shares "with present Defendants the 'ultimate objective' of defending the constitutionality of ESSB 5078." (Dkt. No. 45 at 10). As such, the presumption of adequate representation should apply. *See Citizens for Balanced Use*, 647 F.3d at 898; *see also Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) ("'Where the

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 7

party and the proposed intervenor share the same 'ultimate objective,' a presumption of adequacy of representation applies."').

Having determined that the presumption of adequate representation applies, the Court turns to the *Arakaki* factors to determine whether the Alliance has made a compelling showing that its interests would not be adequately represented. Regarding the first two prongs, "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; and (2) whether the present party is capable and willing to make such arguments," Alliance fails to make a compelling argument. Alliance rightfully notes that the first prong assesses whether a present party will make *all* of a proposed intervenor's arguments (Dkt. No. 59 at 5), but fails to establish why any of the current named defendants will not be able to do so other than a vague argument that the Supreme Court's new standard governing the Second Amendment "raises significant and complex interpretive questions" and that it cannot be assured the Defendants will generate the same historical arguments and records. (*Id.* at 5–6.) Alliance also points to two pending motions to dismiss in this case as evidence of a divergence, since the Alliance asserts that it wants to defend the Act on the merits. (Dkt. No. 45 at 11). But Alliance does not provide a compelling reason to believe that the other Defendants will not defend the Act on the merits or are not capable of doing so. *Cf. Citizens for Balanced Use*, 647 F.3d at 900–01 ("Given the Forest Service's prior litigation position adverse to Applicants, the Forest Service's appeal of the district court ruling that enjoined the Travel Management Plan, and the fact that the Forest Service issued the Interim Order challenged here in response to that very same adverse ruling, we cannot conclude that the Forest Service will undoubtedly make all of Applicants' arguments.").

Alliance also fails to establish that it will add "necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. Alliance asserts that it "has developed significant firearms expertise and experience litigating Second Amendment cases in federal and state courts." (Dkt. No. 45 at 12.) But while the Alliance provides affirmative support for its own experience in Second Amendment litigation, it does not offer any concrete reasons why the current named Defendants lack this experience or would neglect some of the experience or viewpoints that the Alliance would otherwise bring to this case. *See Prete*, 438 F.3d at 958 ("Although intervenor-defendants may have some specialized knowledge into the signature gathering process, they provided no evidence to support their speculation that the Secretary of State lacks comparable expertise.") And indeed, several of the named Defendants have experience litigating Second Amendment issues. *See, e.g.*, *Mitchell v. Atkins*, 483 F. Supp. 3d 985 (W.D. Wash. 2020); *Stevens Cnty. v. Stevens Cnty. Sheriff's Dep't*, 499 P.3d 917 (Wash. 2021); *Kitsap Cnty. v. Kitsap Rifle & Revolver Club*, 405 P.3d 1026 (Wash. 2017).

After considering the various factors, the Court finds Alliance has not made a compelling showing as to why its interests would not be adequately represented by the other parties pursuant to *Arakaki*. As such, Alliance cannot intervene pursuant to Federal Rule of Civil Procedure 24(a)(2).

**B. Permissive Intervention**

Though Alliance has not met its burden to establish intervention by right, this Court is convinced that Alliance should be permitted to intervene permissively as it satisfies the requirements of Federal Rule of Civil Procedure 24(b).

"Permissive intervention 'requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and

the main action.'" *Freedom from Religion Found*, 644 F.3d at 843 (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992)). Once the initial conditions for intervention are met, the Court has broad discretion to consider whether intervention is appropriate. *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). The Ninth Circuit enumerated several factors that courts may consider when determining whether to permit intervention, including:

> the nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case. The court may also consider whether changes have occurred in the litigation so that intervention that was once denied should be reexamined, whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Id.*

Plaintiffs do not appear to challenge whether Alliance has met the threshold requirements for permissive intervention, however the Court will still assess each of these factors in turn.

a. Jurisdiction and Timeliness

"[T]he independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Freedom from Religion Found.*, 644 F.3d 836 at 844. Here, Plaintiffs have invoked jurisdiction pursuant to 28 U.S.C. § 1331 (Dkt. No. 42 at 4) and Alliance does not seek to raise any new state law claims (Dkt. No. 45 at 14). As previously discussed, Alliance's motion to intervene is also timely. Courts undertake the same analysis as intervention by right when determining whether a party's motion for permissive intervention is timely. *See, e.g., Orange Cnty. v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986) ("Our conclusion that the district court did not abuse its

1  discretion in denying Irvine's motion to intervene as a matter of right due to its untimeliness
2  applies equally here.").

3        b.  Common Question of Law and Fact

4      Alliance also shares a common question of law and fact between their purported defense
5  and those in the case at hand.  This Court has previously permitted Alliance to intervene in cases
6  where a party challenges the constitutionality of a state gun control law that they have helped
7  draft.  (Dkt. No. 45 at 13); see also, *Nw. Sch. of Safety v. Ferguson*, No. C14-6026 BHS, 2015
8  WL 1311522, at *2 (W.D. Wash. Mar. 23, 2015) (finding that Alliance shared common
9  questions of law and fact with the main action when they sought to intervene to defend the
10 constitutionality of I-594).  Alliance seeks to defend the constitutionality of the Act and as such
11 their defense shares common questions of law and fact with the main action.  This is sufficient to
12 meet the third threshold requirement and the Court sees no reason to divert from our prior rulings
13 here.

14       c.  Discretionary Factors

15     Discretionary factors also weigh in favor of permitting Alliance to intervene in this case.
16 First, Alliance has a significant interest in this case given its extensive work to pass the Act and
17 to tackle gun violence.  (*See* Dkt. No. 46 at 2–3.)
18     Second, Alliance's expertise in firearms and Second Amendment litigation is likely to
19 contribute to full development of the underlying factual issues and provide a useful perspective
20 that otherwise is not represented in the suit.  *See California Dump Truck Owners Ass'n v.*
21 *Nichols*, 275 F.R.D. 303, 309 (E.D. Cal. 2011) (permitting a non-profit organization to
22 permissively intervene in a suit that challenged a regulation that the organization worked to pass
23 because "it will bring a unique perspective and expertise to this action").  Plaintiffs argue that
24

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 11

Alliance will not "contribute to the full development of the underlying factual issues in this suit." (Dkt. No. 54 at 8.)  However, Alliance has substantial expertise and experience with assessing the efficacy of firearms regulations.  (*See generally* Dkt. No. 46.)  As Alliance notes, the Supreme Court has determined that "whether modern and historical regulations impose a ***comparable burden*** on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2133 (2022) (internal quotation marks omitted) (emphasis added).  Alliance's experience in drafting the Act and other work to support gun control regulations may thus help the Court to assess the burden imposed by modern firearm regulations and other factual issues underlying this suit.

Third, we find that, contrary to Plaintiffs' assertions, the inclusion of Alliance in these proceedings will not unduly delay or complicate the proceedings.  (*See* Dkt. No. 54 at 8.)  Plaintiffs have chosen to file suit against eight defendants and the Court is not convinced the inclusion of an additional defendant will create significant additional burden or expense.  As noted above, the Alliance has filed a timely motion to intervene at an early stage in this litigation, which Plaintiff does not dispute.  "'[S]treamlining' the litigation . . . should not be accomplished at the risk of marginalizing those . . . who have some of the strongest interests in the outcome." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 404 (9th Cir. 2002).

Finally, Plaintiffs also object to allowing Alliance to intervene since they are adequately represented by other defendants.  (*See* Dkt. No. 54 at 8.)  While we have determined that Alliance did not meet its burden to overcome the presumption of adequacy of representation, adequacy of representation is just one factor a court may consider when using its discretion to permit intervention.  *See Spangler*, 552 F.2d at 1329.  Courts routinely allow parties to intervene

ORDER GRANTING ALLIANCE FOR GUN RESPONSIBILITY'S MOTION TO INTERVENE AS A DEFENDANT - 12

even where they find their interests may be adequately represented by other parties. *See, e.g., Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011); *Nooksack Indian Tribe v. Zinke*, 321 F.R.D. 377, 383 (W.D. Wash. 2017) (allowing permissive intervention where intervenors were already adequately represented); *Pickup v. Brown*, No. 2:12-CV-02497-KJM, 2012 WL 6024387, at *4 (E.D. Cal. Dec. 4, 2012).

After consideration of the relevant factors, this Court GRANTS the Alliance permission to intervene pursuant to Federal Rule 24(b).

## IV   CONCLUSION

Accordingly, and having considered Alliance for Gun Responsibility's motion (Dkt. No. 45), the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Alliance's motion to intervene is GRANTED.

1. Alliance for Gun Responsibility is permitted to proceed as a Defendant-Intervenor in this case.
2. The Clerk is directed to amend the case caption and to add Alliance for Gun Responsibility's proposed answer to the docket.

Dated this 18th day of October, 2022.

David G. Estudillo
United States District Judge