The Honorable David G. Estudillo

In The United States District Court
For The Western District Of Washington

Gabriella Sullivan; Rainier Arms, LLC; Second Amendment Foundation; and Firearms Policy Coalition, Inc.,

*Plaintiffs*,

v.

Bob Ferguson, in his official capacity as Washington State Attorney General; John R. Batiste, in his official capacity as Chief of the Washington State Patrol; Patti Cole-Tindall, in her official capacity as Interim Sheriff for King County, Washington; John Gese, in his official capacity as Sheriff for Kitsap County, Washington; Rick Scott, in his official capacity as Sheriff for Grays Harbor County, Washington; Dan Satterberg, in his official capacity as County Prosecutor for King County, Washington; Chad M. Enright, in his official capacity as County Prosecutor for Kitsap County, Washington; and Katie Svoboda, in her official capacity as County Prosecutor for Grays Harbor County, Washington,

*Defendants*.

No. 3:22-cv-05403-DGE

Plaintiffs' Response to Order To Show Cause

Pursuant to this Court's Order to Show Cause why the Court should not "appoint its own expert witness to assist the Court in evaluating historical sources in this matter to avoid 'cherry-pick[ing]' the historical record," Order at 2, Doc. 82 (Jan. 9, 2023), Plaintiffs submit this memorandum in opposition to the appointment of such a witness.

Plaintiffs' Response to Order to Show Cause - 1
*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

# I. Argument

Rule 706 of the Federal Rules of Evidence authorizes a court, "[o]n a party's motion or on its own," to "order the parties to show cause why expert witnesses" in addition to each "party['s] . . . own experts" "should not be appointed" by the Court. Fed. R. Evid. 706(a), (e). There is no reason nor justification for the Court to appoint experts pursuant to Rule 706 in this case. As the United States—the party charged with defending federal firearms restrictions—recently explained, "even where a comprehensive application of the Supreme Court's text-and-history standard is necessary" to resolve a challenge to a law or regulation implicating the Second Amendment, the "correct[]" course is for the court to "resolve[]" the case "based on materials compiled by the parties." Submission Addressing the Need for a Court-Appointed Historian at 8, *United States v. Bullock*, No. 3:18-cr-00165, Doc. 71 (S.D. Miss. Dec. 12, 2022) ("USG *Bullock* Br.").

The United States is correct for a number of reasons. First, *N.Y. State Rifle & Pistol Ass'n v. Bruen,* 142 S. Ct. 2111 (2022) could not have been clearer: the government defendants in a Second Amendment case bear the burden and the Court should not go out of its way to do the government's job for it. The Supreme Court explained that "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2127. "Only" if the government can "identify a well-established and representative historical analogue" to the regulation it seeks to defend, "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2130, 2133 (quotation and emphasis omitted). If the government fails to present sufficient historical support for a law, *Bruen* instructs that the government loses. It made this point repeatedly:

- "[T]he government *must demonstrate* that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126.

- "[T]he government *must affirmatively prove* that its firearms regulation is part of the historical tradition." *Id.* at 2127.

Plaintiffs' Response to Order to Show Cause - 2
*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

- "*The government must then justify* its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

- "[A]nalogical reasoning requires . . . that *the government identify* a well-established and representative historical analogue." *Id.* at 2133.

- "[*T*]*he burden falls on respondents* [the government] to show that New York's proper-cause requirement is consistent with this Nation's historical tradition of firearm regulation. Only if respondents carry that burden can they show that the pre-existing right codified in the Second Amendment . . . does not protect petitioners' proposed course of conduct." *Id.* at 2135.

- "[T]he historical record compiled by respondents does not demonstrate a tradition of broadly prohibiting the public carry  . . .. [R]*espondents have failed to meet their burden* to identify an American tradition justifying New York's proper-cause requirement." *Id.* at 2138.

- "[A]gain, *the burden rests with the government* to establish the relevant tradition of regulation." *Id.* at 2149 n.25.

- "Of course, we are not obliged to sift the historical materials for evidence to sustain New York's statute. *That is respondents' burden.*" *Id.* at 2150.

- "[W]e conclude that *respondents have not met their burden* to identify an American tradition justifying the State's proper-cause requirement." *Id.* at 2156.

(Emphases added.)

While that leaves the Court dependent on the ability of the parties to adequately present the historical record for its review, this is by design. *Bruen* explicitly directed that the historical analysis should be governed by the same "principle of party presentation" as any other legal question. *Id.* at 2130 n.6. As the Court explained, "[t]he job of judges is not to resolve historical questions in the abstract; it is to resolve *legal* questions presented in particular cases or controversies." *Id.* "That 'legal inquiry is a refined subset' of a broader 'historical inquiry,' and it relies on 'various evidentiary principles and default rules' to resolve uncertainties." *Id.* (quoting William Baude & Stephen E. Sachs, *Originalism and the Law of the Past*, 37 L. & HIST. REV. 809, 810–811 (2019)). Understanding that the historical issue is a *legal* question is crucial. As the Seventh Circuit explained before *Bruen* was decided, determining whether a law violates the Second Amendment "does not present factual questions for determination in a trial. . . . Only

PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE - 3

SULLIVAN V. FERGUSON, NO. 3:22-cv-05403-DGE

ARD LAW GROUP PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

adjudicative facts are determined in trials, and only legislative facts" or facts about the world of general applicability, "are relevant to the constitutionality of the [challenged] gun law." *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012); *see* Fed. R. Evid. 201(a).

The distinction between adjudicative and legislative facts is critical. Issues of legislative fact need not be submitted to a jury and in assessing legislative facts "the judge is unrestricted in his investigation and conclusion." Fed. R. Evid. 201, Advisory Committee Note (citation and quotation marks omitted); *see also Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 227 (1908) (Holmes, J.) ("A judge sitting with a jury is not competent to decide issues of fact; but matters of fact that are merely premises to a rule of law he may decide."). Judicial decisions are generally informed on matters of legislative fact by briefing and other written sources like scholarly journals and books. While cross-examination may be useful for judging adjudicative facts, it is generally not used for determining legislative facts. *See Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990) (distinguishing between adjudicative facts that "often are best developed through testimony and cross-examination," and legislative facts that "more often are facts reported in books and other documents not prepared specially for litigation or refined in its fires.") (Posner, J.). That explains why, even though *Heller* and *Bruen* both came to the Supreme Court with no factual development having occurred in the district court *and* in both cases the government parties urged the Court to remand for factual development, the Court simply reviewed the historical materials *as presented by the parties* to determine the scope of the Second Amendment right and decide whether the challenged laws were consistent with it or not. *See Bruen*, 142 S. Ct. at 2135 n.8.

Furthermore, appellate courts do not give deference to findings of legislative fact. *See, e.g.*, *United States v. Singleterry*, 29 F.3d 733, 740 (1st Cir. 1994) ("The clear error standard does not apply . . . when the fact-finding at issue concerns 'legislative' . . . facts."). As a result, judicial economy weighs particularly heavily against appointing an expert here. As the United States argued in *Bullock*, "[t]he prospect of judges in all 94 federal judicial districts retaining a historian would be an expensive proposition." USG *Bullock* Br. at 9. The expense is unjustifiable given that

Plaintiffs' Response to Order to Show Cause - 4
Sullivan v. Ferguson, No. 3:22-cv-05403-DGE

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

any decisions this Court makes (based on a Rule 706 expert's opinion or not) about the historical record and its meaning for Plaintiffs' challenge would be *legal conclusions* that will not be accorded any deference on appellate review.

In keeping with these realities, other district courts that have heard cases under the *Bruen* framework have noted that experts offer little value in resolving a Second Amendment challenge. "The historical record itself, and not expert arguments or opinions, informs the analysis." *Christian v. Nigrelli*, --- F. Supp. 3d ----, 2022 WL 17100631, at *2 n.6 (W.D.N.Y. Nov. 22, 2022). The task *Bruen* has assigned to courts in evaluating Second Amendment cases is not an unusual one. Given that "[c]onstitutional rights are enshrined with the scope they were understood to have *when the people adopted them*," *Bruen*, 142 S. Ct. at 2136 (emphasis in original) (quotations omitted), courts *often* have to look at historical evidence to inform their meaning. To give just two recent examples, in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Supreme Court explained that, in interpreting the Fourth Amendment, it has focused on "Founding-era understandings [of the right] when applying the Fourth Amendment to innovations in surveillance tools." *Id.* at 2214. As such, in defining the term "search," the Court looked to Founding-era sources including dictionaries, "the papers of prominent Founders, early congressional documents and debates, collections of early American English texts, [and] early American newspapers." *Id.* at 2209, 2238. In answering a decidedly *legal* question, the Court returned repeatedly to the understandings and practices of the founding generation. *See, e.g.*, *id.* at 2247. Similarly, in *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117 (2011), in determining whether a Nevada law requiring public officials to recuse themselves in certain circumstances comported with the First Amendment, the Court found Founding-era congressional enactments regarding recusal rules provided "overwhelming evidence of [their] constitutional acceptability" and deemed this history "dispositive" of the legal question before it. *Id.* at 122, 125.

Of course, we acknowledge the Court's concerns about "cherry-picking the historical record," Order at 2, but those concerns may be more likely to be realized in the presence of experts, not less. One significant concern in a case like this is that experts will be accorded an inappropriate

Plaintiffs' Response to Order to Show Cause - 5

Sullivan v. Ferguson, No. 3:22-cv-05403-DGE

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

weight, and their gloss on historical regulations, and not the regulations themselves, will come to define the scope of the Second Amendment. Another concern is that outliers will be presented as having outsized importance, when a more thorough picture would demonstrate that they were not part of the sort of well-grounded and enduring regulations that *Bruen* has said can support modern legislation. *See* 142 S. Ct. at 2153 ("We acknowledge that the Texas cases support New York's proper-cause requirement . . . But the Texas statute, and the rationales set forth in [the Texas cases], are outliers."). One alternative to a Rule 706 expert, which some courts have begun to embrace in the wake of *Bruen*, is that this Court could order the defendants to compile a survey of every law which they claim provide support for Washington's law challenged here, and provide Plaintiffs with an opportunity to respond to each. *See* Minute Entry, *Duncan v. Becerra*, No. 3:17-cv-01017, Doc. 134 (S.D. Cal. Dec. 12, 2022). A court-ordered survey of historical record for the Court's review would make "cherry-picking" from the record impossible while preserving the principle of party presentation and maintaining the burdens outlined in *Bruen*.

## II. Conclusion

For the foregoing reasons, the Court should not appoint an expert witness pursuant to Fed. R. Evid. 706.

///

///

///

Plaintiffs' Response to Order to Show Cause - 6

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

I certify that this memorandum contains 1,785 words, in compliance with the Local Civil Rules.

February 6, 2023.

| Ard Law Group PLLC | Cooper & Kirk, PLLC |
|---|---|
| By: *[signature]* <br><br> Joel B. Ard, WSBA # 40104 <br> Ard Law Group PLLC <br> P.O. Box 11633 <br> Bainbridge Island, WA 98110 <br> 206.701.9243 <br> Joel@Ard.law <br> Attorneys For Plaintiffs | */s/ David H. Thompson* <br> David H. Thompson <br> dthompson@cooperkirk.com <br><br> */s/ Peter A. Patterson* <br> Peter A. Patterson <br> ppatterson@cooperkirk.com <br><br> */s/ William V. Bergstrom* <br> William V. Bergstrom <br> wbergstrom@cooperkirk.com <br><br> 1523 New Hampshire Avenue, N.W. <br> Washington, D.C. 20036 <br> (202) 220-9600 <br> (202) 220-9601 (fax) <br><br> Mountain States Legal Foundation <br><br> */s/ Cody J. Wisniewski* <br> Cody J. Wisniewski <br><br> 2596 S. Lewis Way <br> Lakewood, CO 80227 <br> Phone: (303) 292-2021 |

Response to Order to Show Cause

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC
P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243