1

2

3

4

5

6

The Honorable David G. Estudillo

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9  GABRIELLA SULLIVAN, et al.,

10              Plaintiffs,

11      v.

12  BOB FERGUSON, in his official capacity as
    Washington State Attorney General, et al.,

13              Defendants,

14  ALLIANCE FOR GUN RESPONSIBILITY,

15              Intervenor-Defendant.

NO. 3:22-cv-05403-DGE

STATE DEFENDANTS' RESPONSE TO
ORDER TO SHOW CAUSE

16

17              **I.      INTRODUCTION**

18      The State Defendants respectfully submit this response to the Court's Order to Show

19  Cause issued on January 9, 2023. Dkt. # 82. The State Defendants request that the Court refrain

20  from appointing an expert witness at this time. The State Defendants intend to offer

21  comprehensive testimony of multiple well-qualified experts, including several historians with

22  expertise in the narrow and developing field of historical firearms regulation. Plaintiffs, however,

23  have indicated they do not intend to offer any expert testimony—making it unnecessary to

24  appoint a neutral arbiter between the parties' experts (and making it unlikely that the Parties

25  would be able to nominate or agree on a qualified neutral expert). The Parties are in agreement

26  that a court-appointed expert is unwarranted. Dkt. #83.

STATE DEFENDANTS' RESPONSE TO
ORDER TO SHOW CAUSE
NO. 3:22-cv-05403-DGE

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

## II.    BACKGROUND

Plaintiffs allege that Engrossed Senate Substitute Bill 5078 (ESSB 5078), Washington's prohibition on the sale and manufacture of large capacity magazines (LCMs), is unconstitutional under the Second Amendment. Dkt. # 42.

On June 23, 2022, the United States Supreme Court issued its opinion in *New York State Rifle & Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). *Bruen* did away with "means–end" scrutiny and established a new test for evaluating claims under the Second Amendment. *Id.* at 2129–30. Step one of the *Bruen* test asks whether "the Second Amendment's plain text covers an individual's conduct" implicated by the state regulation. *Id.* at 2126. If so, at step two, the state "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

Accordingly, if (but only if) Plaintiffs are able to show that the plain text of the Second Amendment protects their right to buy and sell LCMs—a proposition the State Defendants dispute—the State Defendants will need to prove that ESSB 5078 is consistent with our Nation's robust history of regulating weapons and accessories associated with interpersonal violence. In *Bruen*, the Supreme Court stated that in "cases implicating unprecedented societal concerns or dramatic technological changes," such as this one, the historical inquiry "require[s] a more nuanced approach." *Id.* at 2132. In such cases, *Bruen* instructs courts to use analogical reasoning to determine whether modern firearms regulations aimed at solving modern problems are "relevantly similar" to historical regulations solving historical problems. *See id.* at 2132 (quoting Cass Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)). The Court did not "provide an exhaustive survey of the features that render regulations relevantly similar under the Second Amendment," but offered "two metrics" as the "central considerations when engaging in an analogical inquiry": "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Bruen*, 142 S. Ct. at 2132–33 (cleaned up).

STATE DEFENDANTS' RESPONSE TO
ORDER TO SHOW CAUSE
NO. 3:22-cv-05403-DGE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    The State Defendants believe the Court can resolve this case at *Bruen's* first step because

2   LCMs are not "arms" covered by the plain text of the Second Amendment, nor are they suitable

3   for self-defense. However, should the Court find it necessary to determine whether Washington's

4   prohibition on the sale of a limited class of especially lethal accessories is "consistent with the

5   Nation's historical tradition of firearm regulation," the State Defendants intend to offer expert

6   testimony from historians concerning the history and tradition of weapons regulation in the

7   United States.[1] The State Defendants anticipate that the testimony will go beyond merely

8   identifying analogous laws on the books at various times in the past, and will also address the

9   historical context in which firearms and accessories have been regulated—i.e., information

10   necessary to evaluate any burdens imposed on the right of armed self-defense and the

11   justifications for these analogous regulations, as *Bruen* directs. *Id.* The State Defendants have

12   retained three expert historians at present, all of whom have submitted declarations in the

13   pending related case of *Brumback v. Ferguson*, No. 1:22-cv-03093-MKD (E.D. Wash.). They

14   are Dr. Saul Cornell, Dr. Robert Spitzer, and Dr. Brennan Rivas. Copies of the declarations

15   submitted by each historian and filed with the court in the *Brumback* matter, as well as copies of

16   the curricula vitae of those historians (attached as Exhibit A of those declarations), are submitted

17   herewith. Declaration of R. July Simpson in Support of State Defendants' Response to Order to

18   Show Cause (Simpson Decl.), Exhibits 1–3. It should be noted that these declarations do not

19   reflect the experts' final, comprehensive opinions, but were submitted prior to the development

20   of a complete record in *Brumback* for purposes of opposing a motion for a preliminary

21   injunction.

22    Plaintiffs in this case have indicated that they do not intend to provide expert testimony

23   at all, and believe that "publicly available sources" such as "historical statutes" and "law review

---

24

25    [1] The State Defendants also intend to offer expert opinion testimony going to the first part of the *Bruen* test, that is, whether LCMs are self-defensive "arms" implicated by the Second Amendment at all. This may include testimony on the usage of firearms in self-defense and the offensive (not defensive) nature of LCMs, which are designed for mass killing.

26

---

STATE DEFENDANTS' RESPONSE TO
ORDER TO SHOW CAUSE
NO. 3:22-cv-05403-DGE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  articles" are sufficient to conduct the historical analysis *Bruen* requires. Dkt. # 71 at p. 7; *see*

2  *also* Dkt. # 66 at pp. 2–3. Plaintiffs also indicated in their response to Court's order to show

3  cause that they oppose a Court-appointed expert. Dkt. #83.

4  ### III.    LEGAL STANDARD

5        Federal Rule of Evidence 706 permits a court to "appoint any expert that the parties agree

6  on and any of its own choosing." Fed. R. Evid. 706(a). The rule is designed to prevent "[t]he

7  practice of shopping for experts," (Fed. R. Evid. 706(a), advisory committee's notes) and may

8  be used "to assist the court in evaluating contradictory evidence" offered by the parties' experts

9  *Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999).

10  Rule 706 is meant to be used "relatively infrequent[ly]" and is mostly prophylactic. Fed. R. Evid.

11  706(a), advisory committee's notes. "The main objection to this procedure and the main reason

12  for its infrequency are that the judge cannot be confident that the expert whom he has picked is

13  a genuine neutral," particularly when the parties are unable to "agree upon a neutral expert[.]"

14  *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 665 (7th Cir. 2002).

15        "[T]he most important question a court must consider when deciding whether to appoint

16  a neutral expert witness is whether doing so will promote accurate factfinding." *Gorton v. Todd*,

17  793 F. Supp. 2d 1171, 1179 (E.D. Cal. 2011) (citing 29 Charles Alan Wright & Arthur R. Miller,

18  *Federal Practice and Procedure* § 6304 (3d ed. Supp. 2011)). Because a neutral expert should

19  only be appointed where doing so is likely to assist the trier of fact, the corollary is also true:

20  "expert witnesses should not be appointed under Rule 706 where not necessary or significantly

21  useful for the trier of fact to comprehend a material issue in a case." *Id.* at 1181. "Such

22  appointments of experts are generally restricted to cases in which the court requires assistance

23  deciphering complex scientific questions," particularly where expert testimony offered by the

24  parties is unclear, confusing, or conflicting. *In re Golden*, No. 3:20-cv-00102-TWR-NLS, 2021

25  WL 1773526, at *15 (S.D. Cal. Mar. 31, 2021), *aff'd*, No. 21-55441, 2022 WL 127909 (9th Cir.

26  Jan. 13, 2022) (citations omitted); *see also Taylor v. Kuerston*, 598 F. Supp. 3d 874, 876

STATE DEFENDANTS' RESPONSE TO
ORDER TO SHOW CAUSE
NO. 3:22-cv-05403-DGE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

(E.D. Cal. 2022) (neutral experts are "typically used in complex litigation where the record is not clearly developed by the parties, and generally serve the purpose of aiding the court in understanding the subject matter at hand."). Court-appointed experts are used only in those "rare circumstances" "in which the ordinary adversarial process does not suffice." *Taylor*, 598 F. Supp. 3d at 876 (quoting and citing *In re Joint E.&S. Districts Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. 1993)) (internal quotation marks omitted).

There are two general scenarios where courts appoint expert witnesses to assist in factfinding. The first is when the parties offer up dueling experts, and the factfinder is unable to make a decision between their conflicting testimonies. *See Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1071 (9th Cir. 1999) (holding that district court did not abuse its discretion by appointing a neutral expert witness where evidence presented was "confusing and conflicting"); *see also, e.g.*, *High Fructose Corn Syrup*, 295 F.3d at 665 (use of court-appointed expert is appropriate where factfinder would otherwise be "completely at the mercy of the parties' warring experts"). The second is where an indigent party's claims or defenses involve matters that can only be proved by expertise, but, due to lack of resources, the indigent party is unable to offer such evidence. *See Smith v. Jenkins*, 919 F.2d 90, 94 (8th Cir. 1990) (reversing grant of summary judgment and remanding to district court for additional factfinding including, optionally, the appointment of a neutral expert witness). This second scenario generally only comes about where there is some reason to believe that a neutral expert will provide evidence establishing a dispute of material fact. *See id.*; *see also Gorton*, 793 F. Supp. 2d at 1181.

## IV.    DISCUSSION

The State Defendants submit that appointment of an expert witness by the Court is unwarranted. As noted above, only Defendants in this action believe that expert witness testimony is necessary to undertake the historical analysis contemplated by *Bruen*, and the State Defendants have accordingly retained three highly qualified historians to provide this evidence.

STATE DEFENDANTS' RESPONSE TO
ORDER TO SHOW CAUSE
NO. 3:22-cv-05403-DGE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   Plaintiffs, on the other hand, have indicated that they do not intend to submit any expert

2   testimony, choosing instead to rely on "publicly available sources" such as statutes and law

3   review articles. Dkt. # 71 at p. 7. As such, a neutral expert is not necessary either to provide a

4   neutral perspective on the parties' dueling experts or to uncover a dispute of material fact that

5   may remain hidden due to a party's lack of resources. Accordingly, the State Defendants propose

6   that the Court refrain from appointing an expert witness at this time.

7        Ultimately, the State Defendants do not believe this Court will ever need to reach the

8   second, historical step of the *Bruen* test. Several federal courts have already rejected claims that

9   LCMs fall within the Second Amendment's text under *Bruen's* first step. *See, e.g.*, *Oregon*

10   *Firearms Fed'n, Inc. v. Brown*, No. 2:22-cv-01815-IM, 2022 WL 17454829, at *9 (D. Or.

11   Dec. 6, 2022) ("Plaintiffs have failed to show that magazines capable of accepting more than ten

12   rounds of ammunition are covered by the plain text of the Second Amendment."); *Ocean State*

13   *Tactical, LLC v. State of Rhode Island*, No. 2:22-cv-00246-JJM-PAS, 2022 WL 17721175, at

14   *13 (D.R.I. Dec. 14, 2022) ("[P]laintiffs have failed to meet their burden of establishing that

15   LCMs are 'Arms' within the textual meaning of the Second Amendment.").

16        But if this Court should reach a different conclusion, historical expert testimony will be

17   necessary to appropriately apply the second step of the *Bruen* test. To this end, the State

18   Defendants intend to present testimony from three expert historians who will endeavor to place

19   Washington's LCM law into the appropriate and complete historical context, without

20   "cherry-picking" the historical record. Each expert has submitted a declaration in the related

21   *Brumback* case that addresses, in part, the appropriate way to conduct historical research and

22   analysis in this area, the difficulties it poses, and why expertise is necessary to do it properly.

23   *See, e.g.*, Simpson Decl., Ex. 2 ¶ 5 ("[The *Bruen* framework] requires understanding the context

24   of the historical law: how individuals and legislatures of the past understood the right to

25   self-defense, and what was going on at the time that required the regulation to be enacted."); *id.*

26   at Ex. 1 ¶ 10 ("The methods of legal historical research require a deep immersion in the primary

STATE DEFENDANTS' RESPONSE TO          6          ATTORNEY GENERAL OF WASHINGTON
ORDER TO SHOW CAUSE                                  Complex Litigation Division
NO. 3:22-cv-05403-DGE                                  7141 Cleanwater Dr. SW
                                                 PO Box 40111
                                       Olympia, WA 98504-0111
                                         (360) 709-6470

1    source materials, conscious attention to the limits and strengths of various types of legal sources,

2    and a broad knowledge of related historical subfields."). If *Bruen*'s second step is reached, the

3    expert testimony these historians are expected to provide will be sufficient for the Court to make

4    appropriate findings of fact regarding the history and tradition of weapons regulation in the

5    United States as relevant to this case.

6           If the Court agrees with the State Defendants that it is appropriate to consider expert

7    testimony in applying *Bruen*'s second step, it may consider and rely upon that testimony in the

8    course of adjudicating the Second Amendment claim. The Court may likewise consider and rely

9    upon information that Plaintiffs choose to put into the record; indeed, even if Plaintiffs do end

10   up submitting expert testimony, the Court is competent to evaluate its merits in the context of

11   the record as a whole. *See, e.g.*, *Ocean State Tactical*, 2022 WL 17721175 at *7–8 (relying on

12   the starkly different credentials of the parties' respective experts and the *ipse dixit* nature of

13   plaintiffs' expert testimony to make credibility determinations in favor of the state's experts).

14   This approach has been endorsed by the Supreme Court in *Bruen*, consistent with the adversary

15   nature of our justice system and the "principle of party presentation," whereby courts "decide a

16   case based on the historical record compiled by the parties." 142 S. Ct. at 2130 n.6.

17          Further, there is no reason to believe that the State Defendants' experts are the result of

18   "expert shopping" of the kind Rule 706 was designed to guard against. Notably, Dr. Cornell was

19   cited by both the majority and the dissent in *Bruen*. *See* 142 S. Ct. at 2149 (majority op.) (citing

20   one publication); *id.* at 2177, 2180, 2187–88 (Breyer, J., dissenting) (citing four publications).

21   All three experts are well-credentialed—Drs. Cornell and Rivas have PhDs in history, while

22   Dr. Spitzer's PhD is in political science. Drs. Cornell and Spitzer are tenured professors who

23   have repeatedly published in the field of historical firearms regulation, and Dr. Rivas is quickly

24   emerging as a leader in the field, based largely on her dissertation, *"The Deadly Weapon Laws*

25   *of Texas: Regulating Guns, Knives, & Knuckles in the Lone Star State, 1836–1930."* Each of

26   these historians is well-qualified to render reliable opinions concerning the history and tradition

STATE DEFENDANTS' RESPONSE TO
ORDER TO SHOW CAUSE
NO. 3:22-cv-05403-DGE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

of weapons regulation in the United States as relevant to this case. *See* Simpson Decl., Exs. 1–3 (curricula vitae are attached as Exhibit A to the respective declarations).

To be sure, these experts' opinions can be expected to support the case that Washington's LCM law is consistent with our Nation's history and tradition—but this is not because of any expert shopping. It is because serious scholars of history overwhelmingly believe that the United States has a robust tradition of regulating weapons, and particularly of regulating weapons and accessories that play an outsize role in lawless interpersonal violence. *Compare Oregon Firearms Fed'n*, 2022 WL 17454829, at *13 ("Defendants offer evidence that, in the 1800s, states often regulated certain types of weapons, such as Bowie knives, blunt weapons, slungshots, and trap guns because they were dangerous weapons commonly used for criminal behavior and not for self-defense.") *with Ocean State Tactical*, 2022 WL 17721175 at *7 ("The Court must discount to some extent the declaration of both the plaintiffs' experts because neither has been engaged in relevant *neutral* scholarly research.").[2]

## V. CONCLUSION

The parties are in agreement that a court-appointed expert is unwarranted at this time. The State Defendants respectfully submit that there is no need for the Court to appoint an expert witness to assist it in evaluating historical sources, as the record developed by the parties will be sufficient.

DATED this 6th day of February 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ William McGinty*
R. JULY SIMPSON, WSBA #45869
WILLIAM MCGINTY, WSBA #41868
ANDREW HUGHES, WSBA #49515
BRIAN HUNT ROWE, WSBA #56817

[2] The number of credible historians working in this field is quite small, whereas "much of the writing on the topic of the Second Amendment and gun regulation is highly partisan and has been produced by activists with close ties to political advocacy groups." Simpson Decl., Ex. A at 10.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia. WA 98504-0111
(360) 709-6470

Assistant Attorneys General
JEFFREY T. EVEN, WSBA #20367
Deputy Solicitor General
KRISTIN BENESKI, WSBA #45478
First Assistant Attorney General
July.Simpson@atg.wa.gov
William.McGinty@atg.wa.gov
Andrew.Hughes@atg.wa.gov
Brian.Rowe@atg.wa.gov
Jeffrey.Even@atg.wa.gov
Kristin.Beneski@atg.wa.gov
*Attorneys for Defendants Bob Ferguson
and John R. Batiste*

STATE DEFENDANTS' RESPONSE TO
ORDER TO SHOW CAUSE
NO. 3:22-cv-05403-DGE

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia. WA 98504-0111
(360) 709-6470

1

## <u>DECLARATION OF SERVICE</u>

2

I hereby declare that on this day I caused the foregoing document to be electronically

3

filed with the Clerk of the Court using the Court's CM/ECF System which will send notification

4

of such filing to all counsel of record.

5

I declare under penalty of perjury under the laws of the State of Washington and the

6

United States of America that the foregoing is true and correct.

7

DATED this 6th day of February 2023, at Olympia, Washington.

8

9

*/s/ William McGinty*
WILLIAM MCGINTY, WSBA #41868
Assistant Attorney General

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

STATE DEFENDANTS' RESPONSE TO
ORDER TO SHOW CAUSE
NO. 3:22-cv-05403-DGE

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr. SW
PO Box 40111
Olympia. WA 98504-0111
(360) 709-6470