The Honorable Judge David G. Estudillo

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON

GABRIELLA SULLIVAN, *et al.*,

        *Plaintiffs*,

    v.

BOB FERGUSON, in his official capacity as
Washington State Attorney General, *et al.*,

        *Defendants*,

ALLIANCE FOR GUN RESPONSIBILITY,

        *Intervenor-Defendant*.

No. 3:22-cv-05403-DGE

**PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT**

NOTE ON MOTION CALENDAR:
October 16, 2023

Pls.' Mot. for Summ. J.

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...............................................................................1

II. BACKGROUND................................................................................3

    A.    The Magazine Ban Harms Plaintiffs...............................................3

    B.    Procedural History. ........................................................................5

III. ARGUMENT ....................................................................................6

    A.    The Plain Text of the Second Amendment. ...................................6

        1.    Washington's Magazine Ban Restricts the Use of "Arms." ......6

        2.    Magazines Are Protected By Necessary Implication of the Constitutional Text....................................................................8

    B.    History Provides No Justification for the Magazine Ban. ..............9

        1.    Only "Dangerous And Unusual Weapons" May Be Banned Consistent With The Second Amendment. ................................9

        2.    Arms "In Common Use" Cannot Be "Dangerous And Unusual Weapons."................................................................11

        3.    Magazines Holding More Than Ten Rounds Are "In Common Use."...........................................................................13

IV. CONCLUSION................................................................................16

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                    **<u>Page</u>**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.,*
    910 F.3d 106 (3d Cir. 2018) ("*ANJRPC*")..........................................6, 7, 15

*Barnett v. Raoul,*
    --- F. Supp. 3d ----, 2023 WL 3160285 (S.D. Ill. Apr. 28, 2023)...............8

*Caetano v. Massachusetts,*
    577 U.S. 411 (2016).................................................................1, 10, 11, 12

*Duncan v. Becerra,*
    970 F.3d 1133 (9th Cir. 2020) .................................................................15

*Duncan v. Bonta,*
    19 F.4th 1087 (9th Cir. 2021) ............................................................8, 15

*Fyock v. Sunnyvale,*
    779 F.3d 991 (9th Cir. 2015) ............................................................8, 15

*Heller v. Dist. of Columbia* ("*Heller II*"),
    670 F.3d 1244 (D.C. Cir. 2011) ...............................................................15

*Heller v. District of Columbia,*
    554 U.S. 570 (2008)...........................................1, 2, 6, 9, 10, 11, 12

*Jackson v. City & Cnty. of San Francisco,*
    746 F.3d 953 (9th Cir. 2014) .....................................................................8

*Kolbe v. Hogan,*
    849 F.3d 114 (4th Cir. 2017) ...................................................................15

*Luis v. United States,*
    578 U.S. 5 (2016)........................................................................................8

*McDonald v. City of Chicago,*
    561 U.S. 742 (2010).....................................................................................1

*N.Y. State Rifle & Pistol Ass'n v. Cuomo,*
    804 F.3d 242 (2d Cir. 2015)......................................................................15

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
    142 S. Ct. 2111 (2022)............................................1, 6, 7, 9, 10, 11, 12, 13

*Range v. Att'y Gen. U.S.,*
    69 F.4th 96 (3d Cir. 2023) .......................................................................11

*Teter v. Lopez,*
    slip op., No. 20-15948 (9th Cir. Aug. 7, 2023).........................................10

**<u>Constitutional Provisions and Statutes</u>**

U.S. Const. amend. II .................................................................................6

Pls.' Mot. for Summ. J. - ii

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Wash. Rev. Code
§ 9.41.010(16)............................................................................3
§ 9.41.370(1)..............................................................................3

An Act More Effectually to Provide for the National Defense by Establishing an
Uniform Militia throughout the United States,
ch.33, 1 Stat. 271 (1792)............................................................7

**Other Authorities**

CHRISTOPHER S. KOPER ET AL., U.S. DEP'T OF JUSTICE, DOC. NO. 204431, AN
UPDATED ASSESSMENT OF THE FEDERAL ASSAULT WEAPONS BAN:
IMPACTS ON GUN MARKETS & GUN VIOLENCE, 1994-2003 (July 2004),
https://bit.ly/3wUdGRE ..............................................................13

*Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation*,
NAT'L SHOOTING SPORTS FOUND. (July 20, 2020),
https://bit.ly/3QBXiyv ................................................................14

David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*,
78 ALB. L. REV. 849 (2015)..........................................................14

GUN DIGEST 2018 (Jerry Lee & Chris Berens eds., 2017)....................................14

*Large-capacity magazine laws by state*, GUNTAB (May 30, 2021),
https://bit.ly/3rXh7cs ..................................................................14

Lillian Mongeau Hughes, *Oregon voters approve permit-to-purchase for guns
and ban high-capacity magazines*, NPR (Nov. 15, 2022),
https://n.pr/3Vehl88 ....................................................................14

MASSAD AYOOB, THE COMPLETE BOOK OF HANDGUNS (2013) ............................14

NAT'L SHOOTING SPORTS FOUND., Firearm Production in the United States
with Firearm Import and Export Data (2020),
https://bit.ly/3jfDUMt ..................................................................13

NAT'L SHOOTING SPORTS FOUND., MODERN SPORTING RIFLE COMPREHENSIVE
CONSUMER REPORT (2022), https://bit.ly/3GLmErS ..................................14

NICHOLAS J. JOHNSON ET AL., FIREARMS LAW AND THE SECOND AMENDMENT:
REGULATION, RIGHTS, AND POLICY (3d ed. 2021),
https://bit.ly/43QShIp..................................................................7

WILLIAM ENGLISH, 2021 NATIONAL FIREARMS SURVEY: UPDATED ANALYSIS
INCLUDING TYPES OF FIREARMS OWNED (May 18, 2022),
https://bit.ly/3yPfoHw..............................................................13, 14

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## I.  INTRODUCTION

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court explained that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense" and that it is not legislation, but "the traditions of the American people—that demands our unqualified deference." 142 S. Ct. 2111, 2131 (2022) (quotation omitted). In this case, Washington has passed a ban on common ammunition feeding devices capable of holding more than ten rounds of ammunition that is irreconcilable with the traditions of the American people.

The Supreme Court has now repeatedly established that the Second Amendment absolutely "protects the possession and use of weapons that are in common use." *Id.* at 2128 (quotation omitted). In *Heller v. District of Columbia*, the same case in which it established that the Second Amendment protects an individual right to keep and bear arms, the Supreme Court explained that the *only* bans on types of arms that are permissible are those that target "dangerous and unusual" arms, and arms "in common use" cannot be *either*. 554 U.S. 570, 627 (2008). It follows that Second Amendment "elevates above *all other interests* the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635 (emphasis added). Thus, once it is determined that an arm is in common use and therefore protected, law-abiding citizens have an absolute right to possess it. The Supreme Court reiterated this principle in *McDonald v. City of Chicago*, explaining that once it is determined that the Second Amendment "applies" to a particular type of arm, it follows that "citizens *must* be permitted to use" that type of arm for self-defense. 561 U.S. 742, 767–68 (2010) (emphasis added). Several years later, in 2016, the Supreme Court summarily reversed the Supreme Judicial Court of Massachusetts for departing from *Heller* when evaluating a ban on stun guns—arms in common use. *See Caetano v. Massachusetts*, 577 U.S. 411 (2016). And in *Bruen* the Supreme Court emphasized once more that the Second Amendment "protects the possession and use of weapons that are in common use," 142 S. Ct. at 2128, and that this protection is an "unqualified command," *id.* at 2130.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

The Supreme Court's clear and consistent precedent is dispositive here. Firearms equipped with the magazines Washington bans are indisputably in common use by law-abiding citizens, and it follows that Washington's ban is unconstitutional.

While *Heller* provides the rule of decision (arms in common use cannot be banned), *Bruen* provides more explanation of the methodology that led to that rule of decision and that has always governed Second Amendment analysis since *Heller* under a proper understanding of that decision. As *Bruen* makes clear, Second Amendment cases proceed first by asking whether the conduct in question is covered by the plain text of the Second Amendment. Here, it plainly is. Firearms equipped with the magazines that Washington bans are "arms"—i.e., "any thing a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (internal quotation marks omitted). It follows that possessing such arms—which necessarily entails possessing the banned magazines—is covered by the Second Amendment's textual protection of keeping and bearing arms. It makes no difference that Washington targets the magazines themselves rather than just targeting firearms equipped with them. In both storing and feeding ammunition into the chamber of a firearm to be fired, magazines play an integral role in the functioning of a firearm. More fundamentally, by banning magazines capable of holding more than ten rounds of ammunition Washington effectively is banning firearms capable of firing more than ten rounds without reloading. Washington cannot get around the protection of the Second Amendment by banning magazines any more than it could by banning triggers or barrels.

Ordinarily, after assessing the text of the Amendment, the Court would move on to ask whether historical traditions with roots at the Founding demonstrate that the challenged law is consistent with the original understanding of the Second Amendment. However, in this case, that exercise is unnecessary because the Supreme Court has already analyzed the relevant history and determined that historical restrictions on "dangerous and unusual weapons" confirm the reality that any arm "in common use" today among law-abiding Americans is *per se* protected and cannot be banned. There can be no serious dispute that the magazines Washington bans are "in common use"—there are hundreds of millions of them in owned by tens of millions of Americans as private

Pls.' Mot. for Summ. J. - 2

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

surveys and industry and government data all corroborate. Indeed, courts across the country have repeatedly found that these magazines are commonly owned and widely chosen by Americans for self-defense and other lawful purposes. That fact decides this case, and Plaintiffs are entitled to judgment in their favor.

## II.  BACKGROUND

### A.    The Magazine Ban Harms Plaintiffs.

Washington Governor Jay Inslee signed Engrossed Senate Bill 5078 ("the Magazine Ban") on March 23, 2022. On July 1, 2022, the Magazine Ban made it illegal for anyone (subject to limited exceptions for certain government employees) in Washington to "manufacture, import, distribute, sell, or offer for sale any large capacity magazine[s]." Wash. Rev. Code § 9.41.370(1). Washington defines "large capacity magazine" to mean "an ammunition feeding device with the capacity to accept more than 10 rounds of ammunition, or any conversion kit, part, or combination of parts, from which such a device can be assembled." Wash. Rev. Code § 9.41.010(16).

Plaintiffs in this case are an individual, a federally licensed firearms dealer, Second Amendment Foundation (SAF), and Firearms Policy Coalition, Inc. (FPC). They seek a declaration that the Magazine Ban is unconstitutional under the Second and Fourteenth Amendments and an injunction against its enforcement by the defendants, Attorney General Bob Ferguson and Chief of the Washington State Patrol John R. Batiste, who enforce the Ban at the statewide level, as well as six local enforcement officials in the counties where the plaintiffs reside (all in their official capacities). Am. Compl. ¶¶ 16–23.

Plaintiff Gabriella Sullivan is a Washington citizen, resident of Kitsap County, and member of Plaintiffs SAF and FPC. Decl. of Gabriella Sullivan in Supp. of Pls.' Mot. for Summ. J. ¶¶ 1–2 (Aug. 4, 2023) ("Sullivan Decl."). She owns a Sig Sauer P365 handgun, a Smith & Wesson M&P Sport .22 rifle, and a Colt AR-15 rifle, all of which may be equipped with magazines holding more than ten rounds of ammunition. *Id.* at ¶ 3. She owns multiple magazines of that size. *Id.* at ¶ 4. Sullivan owns these magazines for self-defense and other lawful purposes and carries her handgun in public equipped with a magazine capable of holding twelve rounds. *Id.* at ¶ 5. If it were not for

the Magazine Ban, Sullivan would purchase additional magazines capable of holding more than ten rounds of ammunition, both for her existing firearms as well as for other firearms she wishes to acquire. *Id.* at ¶ 7. She is unable to do so because the Magazine Ban has destroyed the legal market for magazines in the state and she fears prosecution for purchasing them out of state and importing them herself. *Id.* at ¶ 6.[1]

Plaintiff Rainier Arms is a federally licensed firearm dealer with a retail location in King County. Decl. of John Hwang in Supp. of Pls.' Mot. for Summ. J. ¶ 2 (Aug. 6, 2023) ("Hwang Decl."). Rainier Arms specializes in high end rifles, pistols, and shotguns as well as parts, optics, and accessories. *Id.* at ¶ 2. Prior to the enactment of the Magazine Ban, Rainier Arms sold magazines capable of holding more than ten rounds, both on their own and as standard equipment for many of the firearms it sells. *Id.* at ¶ 4. Rainier Arms has, because of the Magazine Ban, ceased selling such magazines to civilians in Washington and now only sells such items to government purchasers who are exempted from the statewide Ban. *Id.* at ¶ 5. As a result, Rainier Arms has lost sales and had its business constricted by the Magazine Ban. *Id.* at ¶ 6.

SAF is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. Decl. of Alan Gottlieb in Supp. of Pls.' Mot. for Summ. J. ¶ 2 (Aug. 4, 2023) ("Gottlieb Decl."). SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutionally protected right to possess firearms and firearm ammunition, and the consequences of gun control. *Id.* at ¶ 4. SAF has over 700,000 members and supporters nationwide, including Gabriella Sullivan and John Hwang (CEO of Rainier Arms) and thousands of others in the state of Washington. *Id.* at ¶¶ 5–6. SAF brings this action on behalf of its members. *Id.* at ¶ 8.

---

[1] Plaintiff Daniel Martin has also challenged the Magazine Ban, on similar grounds to Sullivan. *See* Am. Compl. ¶¶ 65–72. However, since filing this lawsuit, Martin has moved out of Washington. As such, he is no longer harmed by the Magazine Ban's destruction of the lawful market for magazines, nor does he face any reasonable threat of enforcement. His claims are therefore moot.

Pls.' Mot. for Summ. J. - 4

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    FPC is a nonprofit membership organization incorporated in Delaware with a primary place

2    of business in Clark County, Nevada. Decl. of Brandon Combs in Supp. of Pls.' Mot. for Summ.

3    J. ¶ 2 (Aug. 4, 2023) ("Combs Decl."). FPC seeks to create a world of maximal human liberty and

4    freedom and to promote and protect individual liberty, private property, and economic freedoms.

5    *Id.* at ¶ 4. In furtherance of this mission, FPC seeks to protect, defend, and advance the People's

6    rights, especially but not limited to the inalienable, fundamental, and individual right to keep and

7    bear arms. *Id.* at ¶ 4. FPC has thousands of members across the country, including thousands of

8    members in Washington, some of whom, including Gabriella Sullivan and John Hwang (CEO of

9    Rainier Arms), reside in Washington. *Id.* at ¶¶ 5–6. FPC brings this action on behalf of its

10   members. *Id.* at ¶ 8.

11   **B.    Procedural History.**

12   Plaintiffs filed this lawsuit on June 3, 2022, shortly after the Magazine Ban was signed into

13   law. Compl., Doc. 1 (June 3, 2022). They filed an amended complaint that is still the operative

14   complaint in this case on the day the Ban took effect. Am. Compl., Doc. 42 (July 1, 2022). The

15   Kitsap County defendants filed a motion to dismiss shortly thereafter for lack of subject matter

16   jurisdiction and failure to state a claim, *see* Mot. to Dismiss, Doc. 44 (July 6, 2022), and the King

17   County defendants filed a motion on similar grounds a month later, *see* Mot. to Dismiss, Doc. 62

18   (Aug. 10, 2022). Following briefing over those issues, the Court largely denied both motions,

19   finding that the Plaintiffs had standing to pursue their claims against the Kitsap and King County

20   Defendants and had stated valid claims for relief under *Ex parte Young*. *See* Order Denying in Part

21   & Granting in Part Defs.' Mots. to Dismiss at 6, 14–15, Doc. 76 (Oct. 24, 2022). The Court granted,

22   however, the King and Kitsap County Defendants' motion to dismiss Plaintiffs' claims to the

23   extent they are brought under Section 1983. *Id.* at 16. The Court also granted the Alliance for Gun

24   Responsibility's motion to intervene as an additional Defendant. *See* Order, Doc. 72 (Oct. 18,

25   2022).

26   Pursuant to this Court's scheduling order, Plaintiffs now move for summary judgment in

27   their favor. *See* Order, Doc. 100 (July 10, 2023).

Pls.' Mot. for Summ. J. - 5

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

## III.  ARGUMENT

In *Bruen*, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126. Here, the Second Amendment's plain text covers the conduct at issue—possession of firearms equipped with the magazines Washington bans—so it falls to Defendants to justify the ban as consistent with historical tradition rooted in the Founding. They cannot possibly do so, because *Bruen* and *Heller* have already established that there is no tradition of banning commonly possessed arms.

### A.    The Plain Text of the Second Amendment.

The first question this Court must ask when confronted with a law implicating the right to keep and bear arms is whether "the Second Amendment's plain text covers [the] conduct" that is proscribed by the law. *Id*. at 2117. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free state, the right of the People to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has left no doubt as to the meaning of "arms" in the Second Amendment: " '[A]rms' [means] 'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another." *Heller*, 554 U.S. at 581 (internal quotation marks omitted). It includes "[w]eapons of offence, or armour of defence." *Id.* (internal quotation marks omitted). "[T]he Second Amendment's definition of 'arms' " thus covers all "modern instruments that facilitate armed self-defense," "even those that were not in existence at the time of the founding.' " *Bruen*, 142 S. Ct. at 2132 (quoting *Heller*, 554 U.S. at 582).

#### 1.  Washington's Magazine Ban Restricts the Use of "Arms."

Washington's magazine ban restricts the possession of arms. Of course, a magazine, by itself, is not capable of expelling a projectile, but neither is a firearm without ammunition, a rifle barrel, or a trigger, but regulations of any of these parts are obviously recognizable as regulations

Pls.' Mot. for Summ. J. - 6

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1  of the firearm itself. Magazines are no different. *See, e.g.*, *Ass'n of N.J. Rifle & Pistol Clubs, Inc.*

2  *v. Att'y Gen. N.J.*, 910 F.3d 106, 116 (3d Cir. 2018) ("*ANJRPC*") (holding magazine are "arms"),

3  *abrogated on other grounds by Bruen*, 142 S. Ct. 2111. If the Second Amendment is to mean

4  anything, then the Second Amendment's protection of "arms" must include not just complete

5  firearms but also component parts. After all, in the Militia Act of 1792 Congress required

6  militiamen to arm themselves not just with firearms but those items necessary to make those arms

7  functional. *See* An Act More Effectually to Provide for the National Defence by Establishing an

8  Uniform Militia throughout the United States, ch. 33, 1 Stat. 271 (1792). And any ban on a

9  component part of a firearm should not be understood merely as a ban on that part, but a ban on

10  firearms that *function with that part*.

11      Magazines are integral for the operation of many common firearms; a "semi-automatic"

12  firearm, in which the action of the firearm automatically loads a new round after firing, cannot

13  function semiautomatically without the use of a magazine. Indeed, in many firearms the magazine

14  is a *fixed* component that cannot be separated from the firearm itself. It is nonsensical to consider

15  magazines to be separate from a firearm. After all, a magazine's function is to both hold *and feed*

16  ammunition into the chamber to be fired. *See* Nicholas J. Johnson et al., Firearms Law and

17  the Second Amendment: Regulation, Rights, and Policy 1978 (3d ed. 2021),

18  https://bit.ly/43QShIp. As the Third Circuit explained in *ANJRPC*, "[b]ecause magazines feed

19  ammunition into certain guns, and ammunition is necessary for such a gun to function as intended,

20  magazines are 'arms' within the meaning of the Second Amendment." 910 F.3d at 116. After all,

21  "[r]egulations that eliminate a person's ability to obtain or use ammunition could thereby make it

22  impossible to use firearms for their core purpose." *Id.* (cleaned up).

23      Though Washington may claim to dispute this, it *must* agree that restricting magazines

24  effectively restricts "arms" or else the State would have no plausible basis for regulating them.

25  Imagine, for example, that Washington banned laser sights, which project a red laser dot on

26  whatever a firearm is aiming at and facilitate aimed fire. The effect of that law would not be to

27  make laser pointers illegal—since the act of pointing a laser at something is not the defining feature

Pls.' Mot. for Summ. J. - 7

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

of a laser sight. It is that laser-dot sights function, in conjunction with a firearm, to assist a shooter in aiming. In other words, such a law would, in reality, ban firearms that have the ability to aim assisted by a laser. In the same way, Washington's ban on magazines capable of holding more than 10 rounds is effectively a ban on *firearms* that are capable of firing 11 or more rounds without reloading. Recently, a district court in Illinois, confronting this same issue, had no difficulty finding that magazines, though they did not function themselves as firearms, were nonetheless "arms" within the Second Amendment because even the State's expert could not describe a firearm without describing its capacity (a function of the magazine not the gun). *Barnett v. Raoul*, --- F. Supp. 3d ----, 2023 WL 3160285, at *8 (S.D. Ill. Apr. 28, 2023); *see also id.* ("[T]his is not even a close call." (internal quotation marks omitted)).

### 2. Magazines Are Protected By Necessary Implication of the Constitutional Text.

Even if this Court finds a restriction on magazines is not the equivalent to a restriction on a firearm itself—and to be clear, that would be incorrect—it still should find that Washington's ban restricts conduct protected by the plain text of the Second Amendment. Constitutional rights "implicitly protect those closely related acts necessary to their exercise." *Luis v. United States*, 578 U.S. 5, 26 (2016) (Thomas, J., concurring in the judgment). In this case, that means that the right to keep and bear arms must also protect the right to keep and bear the ammunition magazines that make those arms functional, since "without bullets, the right to bear arms would be meaningless. A regulation eliminating a person's ability to obtain or use ammunition could thereby make it impossible to use firearms." *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). Indeed, the Ninth Circuit recognized before *Bruen* that its "caselaw supports the conclusion that there must also be some corollary, albeit not unfettered, right to possess the magazines necessary to render those firearms operable." *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015); *see also Duncan v. Bonta*, 19 F.4th 1087, 1151 (9th Cir. 2021) (Bumatay, J., dissenting). Nothing in *Bruen* upsets the conclusion that magazines are protected by the Second Amendment.

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

**B.      History Provides No Justification for the Magazine Ban.**

"The Second Amendment's plain text thus presumptively guarantees" Plaintiffs the right to keep and bear firearms equipped with the magazines at issue, and under *Bruen*, that means that the inquiry shifts from text to history, and the burden is on Washington to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2130, 2135.

Washington will not be able to do that here. The Magazine Ban is a complete prohibition on commerce in ammunition magazines capable of holding more than 10 rounds. The Supreme Court has three times answered the specific question of what historical traditions of firearms regulation can possibly support modern day bans on certain types of "arms." Those cases establish that states can only ban arms that are "dangerous and unusual." Magazines capable of holding more than 10 rounds are neither.

**1.   Only "Dangerous And Unusual Weapons" May Be Banned Consistent With The Second Amendment.**

The historical rule is clear from Supreme Court precedent. In *Heller*, the District of Columbia enacted a ban on the possession of handguns. As *Bruen* would later make explicit, *Heller* began by analyzing the scope of the text of the Second Amendment. *See Heller*, 554 U.S. at 576–600. It then proceeded to analyze the history of the Second Amendment and firearm regulation, which it considered a "critical tool of constitutional interpretation," that allowed the Court to assess "the public understanding of [the Second Amendment] in the period after its . . . ratification." *Id.* at 605. It was in this context that *Heller* concluded that history disclosed an "important limitation on the right to keep and carry arms," namely, that "*the historical tradition* of prohibiting the carrying of 'dangerous and unusual weapons'" showed that "the sorts of weapons protected were those 'in common use at the time.'" *Id.* at 627 (emphasis added). This was, the Court explained, a rule developed from "*the historical understanding* of the scope of the right." *Id.* at 625 (emphasis added). And lest there be any doubt that this conclusion was part of *Heller*'s binding holding, remember, the case was about the validity of a ban on a type of "arm," and, after elucidating this

Pls.' Mot. for Summ. J. - 9

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1   historical limitation on the right, the Court had to assure itself that the handguns that were the
2   subject of D.C.'s ban were not "dangerous and unusual weapons" that could lawfully be banned,
3   an easy task in that case given that "handguns are the most popular weapon chosen by Americans
4   for self-defense in the home [so] a complete prohibition of their use is invalid." *Id.* at 629.

5        In the period after *Heller* and before *Bruen*, the Supreme Court decided *Caetano v.*
6   *Massachusetts*, another arm ban case, this time about stun guns. In resolving that case in a short
7   per curiam opinion, the Court returned to *Heller*'s controlling "in common use" versus "dangerous
8   and unusual" distinction to vacate the judgment of the Massachusetts Supreme Judicial Court
9   holding that the ban was constitutional. *Caetano*, 577 U.S. at 412 (per curiam). Justice Alito, in
10   his concurrence laying out a rationale for finding the law unconstitutional, similarly zeroed in on
11   the controlling "in common use at the time" language from *Heller*, which he understood to
12   "reflect[] the reality that the founding-era militia consisted of citizens 'who would bring the sorts
13   of lawful weapons that they possessed at home to militia duty,' and that the Second Amendment
14   accordingly guarantees the right to carry weapons 'typically possessed by law-abiding citizens for
15   lawful purposes.' " *Id.* at 416 (Alito, J., concurring).

16        In *Bruen*, the Supreme Court reiterated that *Heller*'s textual and historical analysis is
17   controlling in this case. *Bruen* corrected more than a decade's worth of misinterpretation of *Heller*
18   by the lower courts, doing away with the interest balancing regime that the circuit courts had
19   developed and making the structure of *Heller*'s text-and-history analysis explicit. *Bruen*, 142 S.
20   Ct. at 2131. In so doing, it explained that *Heller*'s conclusion that firearms "in common use" are
21   protected by the Second Amendment was "[d]raw[n] from . . . *historical tradition*" and comported
22   with the enactments of colonial legislatures that *Bruen* analyzed in its own historical review. *Id.* at
23   2143 (emphasis added); *see also Teter v. Lopez*, slip op. at 21, No. 20-15948 (9th Cir. Aug. 7,
24   2023). And ultimately, even if *Heller* were not controlling in this case, the State would still fail to
25   demonstrate a relevant historical tradition other than the limits put on "dangerous and unusual
26   weapons" because *Heller* was right and no other tradition works. In any event, because *Bruen*

27

Pls.' Mot. for Summ. J. - 10

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

makes it clear that the burden is on Washington to justify its law, Plaintiffs will respond to any history the State puts forward in their response to its brief.

What this means for this case is that, in applying *Bruen*'s methodology to Washington's ban on magazines capable of holding more than ten rounds of ammunition, when the focus shifts to the Second Amendment's history, the Supreme Court has already done the historical spadework. *Bruen* leaves no doubt that this Court is bound to follow the same historical tradition that controlled *Heller* and *Caetano* here. So although, in other types of Second Amendment challenges, the historical analysis will involve the government seeking to demonstrate, through reference to historical statutes and regulations, that a challenged law "is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms," *id.* at 2127; *see also Range v. Att'y Gen. U.S.*, 69 F.4th 96, 103 (3d Cir. 2023) (en banc) (applying *Bruen* in challenge to law banning possession of firearms by criminal offenders), here, that work has been done. The question is: Are firearms equipped with the banned magazines "dangerous and unusual weapons?"

### 2. Arms "In Common Use" Cannot Be "Dangerous And Unusual Weapons."

The answer to that question is a resounding "no." To understand why, we again must turn to the Supreme Court's decisions addressing bans on types of arms. They teach that "this is a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano*, 577 U.S. at 417 (Alito, J., concurring). Thus, an arm that is "in common use" for lawful purposes by definition does not fall within this category and cannot be banned. *Bruen*, 142 S. Ct. at 2143. And when assessing whether a firearm is "in common use" the Supreme Court has likewise made clear that the Second Amendment focuses on the practices of the American people *nationwide*, not just in Washington. *See id.* at 2131 ("It is this balance—struck by the traditions *of the American people*—that demands our unqualified deference." (emphasis added)); *Heller*, 554 U.S. at 628 (handguns are "overwhelmingly chosen by *American society*" for self-defense (emphasis added)); *Caetano*, 577 U.S. at 420 (Alito, J., concurring) ("stun guns are widely owned and accepted as a legitimate means of self-defense *across the country*" (emphasis added)). Therefore, the

Pls.' Mot. for Summ. J. - 11

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

Amendment protects those who live in states or localities with a less robust practice of protecting the right to keep and bear firearms from outlier legislation (like Washington's ban here) just as much as it protects those who live in jurisdictions that have hewed more closely to America's traditions.

Furthermore, courts and legislatures do not have the authority to second-guess the choices made by law-abiding citizens by questioning whether they really "need" the arms that ordinary citizens have chosen to possess. While *Heller* noted several "reasons that a citizen may prefer a handgun for home defense," the Court held that "[w]*hatever the reason*, handguns are the most popular weapon chosen by Americans for self-defense in the home, and a complete prohibition of their use is invalid." 554 U.S. at 629 (emphasis added). And in *Bruen* the Court reaffirmed that "the traditions of the American people"—which includes their choice of preferred firearms— "demand[ ] [the courts'] unqualified deference." 142 S. Ct. at 2131. Thus, unless the State can show that a certain type of arm is "not typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, that is the end of the matter. Arms owned by law-abiding citizens for lawful purposes cannot be banned.

Finally, the Second Amendment inquiry focuses on the choices commonly made by *contemporary* law-abiding citizens. *Heller* rejected as "bordering on the frivolous" "the argument . . . that only those arms in existence in the 18th century are protected," *id*. at 582. And in *Caetano*, the Supreme Court reiterated this point, holding that "Arms" protected by the Second Amendment need not have been "in existence at the time of the Founding." 577 U.S. at 411–12 (quoting *Heller*, 554 U.S. at 582). The *Caetano* Court flatly denied that a particular type of firearm's being "a thoroughly modern invention" is relevant to determining whether the Second Amendment protects it. *Id.* (internal quotation marks omitted). And *Bruen* cements the point. Responding to laws that allegedly restricted the carrying of handguns during the colonial period, the Court reasoned that "even if these colonial laws prohibited the carrying of handguns because they were considered 'dangerous and unusual weapons' in the 1690s, they provide no justification

Pls.' Mot. for Summ. J. - 12

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1   for laws restricting the public carry of weapons that are unquestionably in common use today."

2   142 S. Ct. at 2143.

3   **3.   Magazines Capable of Holding More Than Ten Rounds Are "In Common**

4   **Use."**

5   This case thus reduces to the following, straightforward inquiry: are the magazines banned

6   by Washington "in common use," according to the lawful choices of contemporary Americans?

7   They unquestionably are and so the State, which bears the burden of proving that they are not, *id*.

8   at 2135, must fail to make the historical showing necessary to save the Ban.

9   There is no question that magazines capable of holding more than 10 rounds are in common

10  use. Government and industry data prove that they are. *See, e.g.,* NAT'L SHOOTING SPORTS FOUND.,

11  FIREARM PRODUCTION IN THE UNITED STATES WITH FIREARM IMPORT AND EXPORT DATA 7 (2020),

12  https://bit.ly/3jfDUMt (finding, based on industry sales data, that American consumers purchased

13  more than 304 million magazines across both pistols and rifles from 1990 to 2018, 52% of which—

14  almost 160 million—had a capacity over 10 rounds); CHRISTOPHER S. KOPER ET AL., U.S. DEP'T

15  OF JUSTICE, DOC. NO. 204431, AN UPDATED ASSESSMENT OF THE FEDERAL ASSAULT WEAPONS

16  BAN: IMPACTS ON GUN MARKETS & GUN VIOLENCE, 1994-2003 at 65–67 (July 2004),

17  https://bit.ly/3wUdGRE (analyzing expected increase in imports of magazines holding more than

18  10 rounds after the sunsetting of the federal assault weapons ban). Recent survey data confirms

19  this: Forty-eight percent of gun owners report having owned magazines that hold more than 10

20  rounds. WILLIAM ENGLISH, 2021 NATIONAL FIREARMS SURVEY: UPDATED ANALYSIS INCLUDING

21  TYPES OF FIREARMS OWNED 22 (May 18, 2022), https://bit.ly/3yPfoHw. Given the survey's

22  estimate that 81.4 million Americans own firearms, that means approximately 39 million

23  Americans have owned at least one magazine that holds more than 10 rounds. And that is a

24  conservative estimate since only current gun owners were polled. Owners of the banned magazines

25  frequently owned more than one such magazine. In fact, Professor English found that American

26  gun owners have owned as many as 269 million handgun magazines that hold over 10 rounds and

27

Pls.' Mot. for Summ. J. - 13                                                          Ard Law Group PLLC

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE                          P.O. Box 11633
                                                                       Bainbridge Island, WA 98110
                                                                       Phone: (206) 701-9243

an additional 273 million rifle magazines over that threshold for a total of **542 million** such magazines. *Id.* at 24.

There should be nothing surprising about these facts—many of the most popular handguns in the country are manufactured with magazines capable of holding more than 10 rounds. *See, e.g.,* GUN DIGEST 2018 at 386–88 (Jerry Lee & Chris Berens eds., 2017) (Glocks); *id.* at 374 (Beretta); *id.* at 408 (Smith & Wesson); *id.* at 408 (Sig Sauer); Massad Ayoob, THE COMPLETE BOOK OF HANDGUNS 87, 90 (2013) (noting that Glock pistols, which are "hugely popular for . . . home and personal defense," typically come equipped with magazines with a capacity over ten rounds). The same is true of many of the most popular semi-automatic rifles. *See, e.g.*, David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 Alb. L. Rev. 849, 859 (2015) ("The most popular rifle in American history is the AR-15 platform, a semiautomatic rifle with standard magazines of twenty or thirty rounds."); *see also Commonly Owned: NSSF Announces Over 24 Million MSRs in Circulation*, NAT'L SHOOTING SPORTS FOUND. (July 20, 2020), https://bit.ly/3QBXiyv. Data from the Firearm Industry Trade Association indicates that over *three quarters* of modern sporting rifle magazines in the country have a capacity of more than 10 rounds, and 52% have a capacity of 30 rounds. *See* NAT'L SHOOTING SPORTS FOUND., MODERN SPORTING RIFLE COMPREHENSIVE CONSUMER REPORT (2022), https://bit.ly/3GLmErS.

These magazines are commonly possessed for lawful purposes. According to the National Firearms Survey, the most common reasons cited for owning these magazines are target shooting (64.3% of owners), home defense (62.4%), hunting (47%), and defense outside the home (41.7%). English, *supra*, at 23. And such magazines may be lawfully owned in the vast majority of states; as of November of last year, only eight other states have laws as strict as Washington's that limit magazine capacity to ten rounds for all firearms. *See* Lillian Mongeau Hughes, *Oregon voters approve permit-to-purchase for guns and ban high-capacity magazines*, NPR (Nov. 15, 2022), https://n.pr/3Vehl88. The vast majority do not regulate magazine size at all. *See, e.g, Large-capacity magazine laws by state*, GUNTAB (May 30, 2021), https://bit.ly/3rXh7cs.

Pls.' Mot. for Summ. J. - 14

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    These statistics conclusively demonstrate that the banned magazines are commonly owned

2    and used overwhelmingly by law-abiding Americans for lawful purposes. Indeed, the conclusion

3    is so inescapable that "courts throughout the country [including in this Circuit,] agree that large-

4    capacity magazines are commonly used for lawful purposes." *Duncan*, 19 F.4th at 1155–56

5    (Bumatay, J., dissenting); *see also Duncan v. Becerra*, 970 F.3d 1133, 1142 (9th Cir. 2020) ("One

6    estimate based in part on government data shows that from 1990 to 2015, civilians possessed about

7    115 million LCMs out of a total of 230 million magazines in circulation."); *Fyock*, 779 F.3d at 998

8    ("[W]e cannot say that the district court abused its discretion by inferring from the evidence of

9    record that, at a minimum, [large-capacity] magazines are in common use."); *Kolbe v. Hogan*, 849

10   F.3d 114, 129 (4th Cir. 2017) (en banc) ("46% of all magazines owned"); *ANJRPC*, 910 F.3d at

11   116–17 ("The record shows that millions of magazines are owned, often come factory standard

12   with semi-automatic weapons, are typically possessed by law-abiding citizens for hunting, pest-

13   control, and occasionally self-defense, and there is no longstanding history of [large capacity

14   magazine] regulation.") (cleaned up); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 255

15   (2d Cir. 2015) ("Even accepting the most conservative estimates cited by the parties and by amici,

16   the . . . large-capacity magazines at issue are 'in common use' as that term was used in *Heller*.");

17   *Heller v. Dist. of Columbia* ("*Heller II*"), 670 F.3d 1244, 1261 (D.C. Cir. 2011) ("As for

18   magazines, fully 18 percent of all firearms owned by civilians in 1994 were equipped with

19   magazines holding more than ten rounds, and approximately 4.7 million more such magazines

20   were imported into the United States between 1995 and 2000."). As the D.C. Circuit noted in

21   *Heller II*, "There may well be some capacity above which magazines are not in common use but,

22   if so . . . that capacity surely is not ten." *Id.*

23   Just as they chose handguns in *Heller*, the American people in large numbers have chosen

24   to arm themselves for their protection with ammunition feeding devices capable of holding more

25   than ten rounds. Because the arms at issue are "in common use" and typically possessed by law-

26   abiding citizens for lawful purposes, Washington's ban violates the Second Amendment.

27

Pls.' Mot. for Summ. J. - 15

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1

**IV.  CONCLUSION**

2        For these reasons, the Court should grant summary judgment in Plaintiffs' favor and

3  against Defendants.

4

5  August 7, 2022.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Ard Law Group PLLC

P.O. Box 11633
Bainbridge Island, WA 98110
Phone: (206) 701-9243

1    Ard Law Group PLLC                      Cooper & Kirk, PLLC

2                                            /s/ David H. Thompson
3    By:                                     David H. Thompson*
                                             dthompson@cooperkirk.com
4
5    Joel B. Ard, WSBA # 40104
     Ard Law Group PLLC                      /s/ Peter A. Patterson
6    P.O. Box 11633                          Peter A. Patterson*
     Bainbridge Island, WA 98110             ppatterson@cooperkirk.com
7    206.701.9243
     Joel@Ard.law
8    Attorneys For Plaintiffs                /s/ William V. Bergstrom
9                                            William V. Bergstrom*
                                             wbergstrom@cooperkirk.com
10
11                                           1523 New Hampshire Avenue, N.W.
                                             Washington, D.C. 20036
12                                           (202) 220-9600
                                             (202) 220-9601 (fax)
13
14                                           Mountain States Legal Foundation
15
                                             /s/ Brian A. Abbas
16                                           Brian A. Abbas*
17
                                             2596 S. Lewis Way
18                                           Lakewood, CO 80227
                                             Phone: (303) 292-2021
19
20                                           FPC Action Foundation
21                                           /s/ Cody J. Wisniewski
22                                           Cody J. Wisniewski*
23                                           5550 Painted Mirage Road
                                             Las Vegas, NV 89149
24                                           Phone: (916) 517-1665
25                                           *Admitted pro hac vice
26
27

Pls.' Mot. for Summ. J. - 17                                    Ard Law Group PLLC

*Sullivan v. Ferguson*, No. 3:22-cv-05403-DGE                   P.O. Box 11633
                                                               Bainbridge Island, WA 98110
                                                               Phone: (206) 701-9243