The Honorable Judge David G. Estudillo

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GABRIELLA SULLIVAN; RAINIER ARMS, LLC; SECOND AMENDMENT FOUNDATION; and FIREARMS POLICY COALITION, INC.,

                Plaintiffs,

v.

BOB FERGUSON, in his official capacity as Washington State Attorney General; JOHN R. BATISTE, in his official capacity as Chief of the Washington State Patrol; PATTI COLE-TINDALL, in her official capacity as Interim Sheriff for King County, Washington; JOHN GESE, in his official capacity as Sheriff for Kitsap County, Washington; RICK SCOTT, in his official capacity as Sheriff for Grays Harbor County, Washington; LEESA MANION, in his official capacity as County Prosecutor for King County, Washington; CHAD M. ENRIGHT, in his official capacity as County Prosecutor for Kitsap County, Washington; and NORMA TILLOTSON, in her official capacity as County Prosecutor for Grays Harbor County, Washington,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 3:22-cv-5403-DGE

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

Noted for October 16, 2023

ORAL ARGUMENT REQUESTED

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

# TABLE OF CONTENTS

I.   **INTRODUCTION**                                                             5

II.  **IDENTITY OF PARTY AND RELIEF REQUESTED**                                   6

III. **STATEMENT OF FACTS**                                                       6

    A.   **The Enactment of Washington's Ban on the Sale of Large Capacity Magazines**   6

    B.   **The Use of Large Capacity Magazines in the Commission of Crimes Increases the Risk of Injury and Death to Victims, Bystanders and Law Enforcement.**   7

    C.   **The Plaintiffs**                                                       8

    D.   **Procedural History**                                                   9

IV.  **ISSUES PRESENTED**                                                         9

V.   **EVIDENCE RELIED ON**                                                      10

VI.  **ARGUMENT**                                                               10

    A.   **Plaintiffs Have Failed to Establish the Redressability Requirement of Article III**   10

    B.   **The *Bruen* Analytical Framework**                                     14

    C.   **Large Capacity Magazines Do Not Fall Within the Plain Text of the Second Amendment**   15

    D.   **Wash. Rev. Code § 9.41.370 Is Consistent With This Nation's History of Regulating Dangerous Uses of Firearms**   22

    E.   **Wash. Rev. Code § 9.41.370 Is Consistent With This Nation's History of Regulating Weapons That Are Unusually Dangerous**   25

VII. **CONCLUSION**                                                             26

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 2

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1

2

# TABLE OF AUTHORITIES

3

Page(s)

Cases

4

*Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney Gen. New Jersey,*
   910 F.3d 106 (3d Cir. 2018) ................................................................ 20
*Brandt v. Bd. of Educ. of City of Chicago,*
   480 F.3d 460 (7th Cir. 2007) .............................................................. 16
*Caetano v. Massachusetts,*
   577 U.S. 411 (2016) ........................................................................... 16
*Carney v. Adams,*
   592 U. S. ——, 141 S.Ct. 493 (2020) ............................................... 12
*Clark v. Cmty. for Creative Non-Violence,*
   468 U.S. 288 (1984) ........................................................................... 19
*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ...................................................................*Passim*
*Duncan v. Bonta,*
   19 F.4th 1087 (9th Cir. 2021) ............................................... 17, 21, 25
*Evenstad v. Herberg,*
   994 F. Supp. 2d 995 (D. Minn. 2014) ................................................ 15
*Franklin v. Massachusetts,*
   505 U.S. 788(1992) ............................................................................ 12
*Haaland v. Brackeen,*
   143 S.Ct. 1609 (June 15, 2023) ............................................. 11, 12, 13
*Jackson v. City and County of San Francisco,*
   746 F.3d 953 (9th Cir. 2014) ............................................................. 16
*Kolbe v. Hogan,*
   849 F.3d 114 (4th Cir. 2017) ............................................................. 21
*Leeson v. Transamerica Disability Income Plan,*
   671 F.3d 969 (9th Cir. 2012) ............................................................. 11
*Lewis v. Cont'l Bank Corp.,*
   494 U.S. 472 (1990) ........................................................................... 10
*Lopez v. Candaele,*
   630 F.3d 775 (9th Cir. 2010) ............................................................. 10
*Lujan v. G&G Fire Sprinklers,*
   532 U.S. 189 (2001) ........................................................................... 18
*Lujan v. Defs. Of Wildlife,*
   504 U.S. 555 (1992) ..................................................................... 11, 13
*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) ..................................................................... 14, 20
*New York State Club Ass'n v. New York,*
   487 U.S. 1 (1988) ............................................................................... 18

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

*New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*,
    804 F.3d 242 (2d Cir. 2015) ................................................................ 7
*New York State Rifle & Pistol Association v. Bruen*,
    142 S.Ct. 2111 (2022)...........................................................*Passim*
*Ocean State Tactical, LLC v. Rhode Island*, 22-CV-246 JJM-PAS,
    2022 WL 17721175 (D.R.I. Dec. 14, 2022) .................................... 17
*All. for Gun Safety*, 2:22-CV-01815-IM,
    2023 WL 4541027 (D. Or. July 14, 2023)....................................... 17
*Presser v. Illinois*,
    116 U.S. 252 (1886) ........................................................................ 24
*Reniger v. Hyundai Motor Am.*,
    122 F.Supp.3d 888 (N.D. Cal. 2015) .............................................. 10
*U.S. v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ...................................................... 18
*U.S. v. Al-Azhari*,
    2020 WL 7334512 (M.D. Fla. Dec. 14, 2020) ............................... 18
*U.S. v. Juvenile Male*,
    564 U.S. 932 (2011) ........................................................................ 12
*U.S. v. McCartney*,
    357 F. App'x 73 (9th Cir. 2009) ..................................................... 18
*U.S. v. Royce*, 1:22-CR-130,
    2023 WL 2163677  (D.N.D. Feb. 22, 2023)................................... 17

Statutes

42 U.S.C. § 1983...................................................................................... 9
Article III of the United States Constitution .............................. 10,11,12
Wash. Rev. Code §  39.34.180(1)...................................................... 12, 13
Wash. Rev. Code §  9.41.010(16)............................................................. 6
Wash. Rev. Code §  9.41.370..........................................................*Passim*

Rules

Fed. R. Civ. P.  56............................................................................... 6, 27
Fed. R. Civ. P. 12(c) ................................................................................ 9
Fed. R. Civ. P. 12(h)(3)........................................................................... 11

Other Authorities

Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*,
    25 Law & Hist. Rev. 139 (2007) ............................................... 23, 24
SB 5078.................................................................................................... 6

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 4

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

## I.      INTRODUCTION.

The Second Amendment protects the right of ordinary, law-abiding citizens to possess and carry weapons for self-defense in case of confrontation. But that right is not unlimited. It is beyond debate that the Second Amendment does not protect any and all weapons, and does not protect the right to carry any weapon for any purpose whatsoever.

The large capacity magazine ban at issue in this case places no limit on the type or amount of firearms the Plaintiffs can buy, sell, or carry, or the type or amount of ammunition that Plaintiffs can buy, sell or carry. Because large capacity magazines are not integral to the use of any firearm and are not commonly used for self-defense they are not protected by the Second Amendment. And even if large capacity magazines were protected by the Second Amendment, the restriction enacted in Washington is consistent with historical regulations on firearm use and uniquely dangerous weapons.

Plaintiffs bring this pre-enforcement challenge against Defendants King County Sheriff Patti Cole-Tindall and King County Prosecuting Attorney Leesa Manion (hereinafter "King County Defendants"), seeking to enjoin them from enforcing Wash. Rev. Code § 9.41.370, which prohibits the manufacture, distribution or sale of large capacity magazines (defined as an ammunition feeding devices with the capacity to accept more than 10 rounds of ammunition). Plaintiffs lack standing against the named King County officials. Plaintiffs' injuries cannot be redressed by enjoining King County Defendants. King County Defendants respectfully request that this Court grant summary judgment as to King County Defendants for lack of Article III jurisdiction because redressability is lacking.

In the alternative, King County Defendants respectfully request that this Court deny Plaintiffs' motion for summary judgment and grant King County Defendants' motion for summary

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1    judgment by finding as a matter of law that Wash. Rev. Code § 9.41.370 does not violate the

2    Second Amendment.

3                    **II.     IDENTITY OF PARTY AND RELIEF REQUESTED**

4            King County Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56.

5                           **III.     STATEMENT OF FACTS**

6    **A. The Enactment of Washington's Ban on the Sale of Large Capacity Magazines.**

7            In 2022, the Washington Legislature enacted SB 5078, codified as Wash. Rev. Code §

8    9.41.370, which provides that "no person in this state may manufacture, import, distribute, sell, or

9    offer for sale any large capacity magazine, except as authorized in this section." Wash. Rev. Code

10   § 9.41.370(1). Large capacity magazines are defined as "an ammunition feeding device with the

11   capacity to accept more than 10 rounds of ammunition." Wash. Rev. Code § 9.41.010(16).

12   Although the law precludes the purchase of magazines that hold more than 10 rounds of

13   ammunition, nothing in the law limits the number of magazines that a person can carry.

14           In enacting the ban on the sale of large capacity magazines, the legislature made a number

15   of findings. First, it found that that gun violence is a threat to public health and safety. Washington

16   Laws of 2022, ch. 104, § 1.[1] Second, it found that "firearms equipped with large capacity

17   magazines increase casualties by allowing a shooter to keep firing for longer periods of time

18   without reloading." *Id.* Third, the legislature found that:

19           Large capacity magazines have been used in all 10 of the deadliest mass shootings
20           since 2009, and mass shooting events from 2009 to 2018 where the use of large capacity
             magazines caused twice as many deaths and 14 times as many injuries. Documentary
             evidence following gun rampages, including the 2014 shooting at Seattle Pacific
21           University, reveals many instances where victims were able to escape or disarm the shooter
             during a pause to reload, and such opportunities are necessarily reduced when large
22           capacity magazines are used. In addition, firearms equipped with large capacity magazines

23   _____
     [1] See Dec. of Summers, Ex. 3.

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

account for an estimated 22 to 36 percent of crime guns and up to 40 percent of crime guns used in serious violent crimes.

*Id.*

In 1994, the U.S. Congress enacted legislation prohibiting magazines with a capacity of more than ten rounds. *New York State Rifle & Pistol Ass'n, Inc. v. Cuomo*, 804 F.3d 242, 248 (2d Cir. 2015). That ban expired in 2004. *Id.* Studies show that during the 10-year period that federal law banned large capacity magazines, mass shooting fatalities declined. Washington Laws of 2022, ch. 104, § 1. The Washington Legislature concluded that enacting a state ban on the sale of large capacity magazines would likely reduce gun deaths and injuries and would not interfere with lawful self-defense. *Id.*

### B. The Use of Large Capacity Magazines In the Commission of Crimes Increases the Risk of Injury and Death to Victims, Bystanders and Law Enforcement.

Nearly all semi-automatic firearms use magazines or other ammunition feeding devices to feed ammunition into the chamber. Declaration of Sgt. John Pavlovich in Support of King County Defendants' Motion for Summary Judgment, ¶ 4. Most modern semi-automatic firearms use detachable box magazines. *Id.* Large capacity magazines range from 11 to 100 round capacities. *Id.*, ¶ 8.

Persons committing crimes are often not practiced in changing magazines. *Id.,* ¶ 10. Also, during the stress of a confrontation the time needed to change a magazine can increase. *Id.* For these reasons, valuable moments while a shooter is changing magazines can provide an opportunity for victims to flee and law enforcement to act. *Id.*

In contrast, large capacity magazines allow persons committing crimes many chances to hit their targets and others through indiscriminate continuous fire without pause. *Id.,* ¶ 11. The use of large capacity magazines by those committing crimes increases the likelihood that law

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1    enforcement will be unable to interrupt or stop indiscriminate fire, resulting in death or injury to

2    more victims and more serious injuries. *Id.* The use of large capacity magazines greatly increases

3    the risk to law enforcement officers responding to an active shooter. *Id.*

4    **C. The Plaintiffs.**

5        Plaintiff Gabrielle Sullivan is resident of Kitsap County, who lawfully owns large capacity

6    magazines purchased before Wash. Rev. Code § 9.41.370 was enacted. Dkt. 104. She states that

7    she would purchase additional large capacity magazines if not for Wash. Rev. Code § 9.41.370.

8    Dkt. 104.

9        Plaintiff Rainier Arms is a corporation that is a licensed firearm dealer located in Auburn,

10   Washington. Dkt. 105; Declaration of Ann Summers in Support of King County Defendant's

11   Motion for Summary Judgment, ¶¶ 2-3. Before enactment of Wash. Rev. Code § 9.41.370, Rainier

12   Arms sold large capacity magazines to civilian customers. Dkt. 105. Since the enactment of Wash.

13   Rev. Code § 9.41.370, Rainier Arms only sells large capacity magazines to exempt government

14   purchasers such as law enforcement agencies. *Id.* Rainier Arms sells approximately 1,200 firearm

15   models and approximately 20 different ammunition calibers. Dec. of Summers, Ex. 1, at 6. There

16   is not a single model of firearm nor a single ammunition caliber that Rainier Arms is prohibited

17   from selling to civilians as a result of Wash. Rev. Code § 9.41.370. *Id.*, at 6-7. As Rainier Arms

18   has admitted, there are no models of firearms sold by Rainier Arms that are incapable of

19   functioning without a large capacity magazine. *Id.* at 7. By its plain terms, Wash. Rev. Code §

20   9.41.370 does not limit the number of firearms, the number of magazines, or the amount of

21   ammunition that a civilian can purchase from Rainier Arms.

22

23

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 8

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

Plaintiffs Second Amendment Foundation and Firearms Policy Coalition are advocacy organizations with members in Washington, but neither have identified any members that are residents of unincorporated King County.  Dkt. 102, 103.

**D.  Procedural history.**

Plaintiffs filed an Amended Complaint seeking declaratory and injunctive relief.  Dkt. 42. Plaintiffs ask this Court to declare that Wash. Rev. Code §  9.41.370's ban on manufacturing, importing, and selling large capacity magazines is unconstitutional under the Second and Fourteenth Amendments, and seeks to enjoin Defendants from enforcing the law.  *Id.*  Although the amended complaint refers to damages, counsel for Plaintiff has represented to this Court that Plaintiffs are not seeking damages.  Dec. of Summers, Ex. 2, at 7.

King County Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(c) for lack of subject matter jurisdiction and failure to state a claim upon which relief could be granted.  Dkt. 62. This Court granted the motion in part and denied it in part.  Dkt. 76.  This Court concluded that for purposes of the motion to dismiss on the pleadings, Rainer Arms had sufficiently pled an injury in fact to establish standing in that they alleged lost profits as a result of the large capacity magazine ban. *Id.* at 6-7.  This Court also concluded that the injury was traceable to King County Defendants and likely to be redressed by action from this Court because Rainier Arms could be prosecuted by King County Defendants, while acknowledging that King County Defendants are not primarily charged with enforcing misdemeanors within the city of Auburn.  *Id.* at 7-10.  This Court dismissed Plaintiffs' claims brought under 42 U.S.C. § 1983 for failure to state a claim.  *Id.* at 17.

## IV.    ISSUES PRESENTED

1. Does this Court lack Article III jurisdiction over Plaintiffs' claims against King County Defendants where Plaintiffs' alleged harms cannot be redressed by enjoining King

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

County Defendants?  **Yes.**

2. Does Wash. Rev. Code § 9.41.370's restriction on the manufacture, distribution and sale of large capacity magazines fall outside the plain text of the Second Amendment because large capacity magazines are (1) not arms, and (2) are not commonly used by ordinary citizens for the lawful purpose of self-defense?  **Yes.**

3. Have Defendants shown that even if large capacity magazines fell within the protections of the Second Amendment, Wash. Rev. Code § 9.41.370 is consistent with the Nation's history and tradition of (1) regulating how firearms are used for the purposes of public safety, or (2) banning unusually dangerous weapons?  **Yes.**

## V.     EVIDENCE RELIED ON

Declaration of Ann Summers in Support of King County Defendant's Motion for Summary Judgment, and attached exhibits.

Declaration of James Daniels in Support of King County Defendant's Motion for Summary Judgment.

Declaration of Jesse Anderson in Support of King County Defendant's Motion for Summary Judgment.

Declaration of Sgt. John Pavlovich in Support of King County Defendant's Motion for Summary Judgment.

## VI.     ARGUMENT

### A. Plaintiffs Have Failed to Establish the Redressability Requirement of Article III.

Article III of the United States Constitution limits federal court jurisdiction to "actual, ongoing cases or controversies."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  In order to invoke the subject matter jurisdiction of this Court, Plaintiffs bear the burden of establishing standing, which consists of three elements:  "injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury."  *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010).  Standing to sue King County requires Plaintiffs' to satisfy each of the three elements.  *Reniger v. Hyundai Motor Am.*, 122 F.Supp.3d 888, 895 (N.D. Cal. 2015) ("where there

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1 are multiple defendants and multiple claims, there must exist at least one named plaintiff with

2 Article III standing as to each defendant and each claim").

3       Recognizing that this Court previously determined that Plaintiffs' injuries are likely to be

4 redressed in this case, King County Defendants respectfully request that this Court reconsider that

5 conclusion in light of *Haaland v. Brackeen*, __ U.S. __, 143 S.Ct. 1609 (June 15, 2023).  *See*

6 *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976 n.12 (9th Cir. 2012) ("federal

7 courts have a continuing independent obligation to determine whether subject-matter jurisdiction

8 exists") (citation and internal quotations omitted); Fed. R. Civ. P. 12(h)(3) ("If the court determines

9 at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

10       In *Haaland v. Brackeen*, the individual plaintiffs and the state of Texas challenged the

11 constitutionality of the Indian Child Welfare Act, which requires courts to place an Indian child

12 with an Indian caretaker if one is available.  *Id.* at 1622.  The Court held that the individual

13 plaintiffs (a birth mother, and foster and adoptive parents) had failed to establish that their injuries

14 were likely to be redressed by the relief requested, which was declaratory and injunctive relief

15 against federal officials.  *Id.* at 1639.  The Court explained that injunctive relief against federal

16 officials would not remedy the harm alleged because *state* officials were tasked with applying the

17 placement preferences imposed by the challenged Act.  *Id.*  Because state officials were not parties

18 to the suit, "there is no reason they should be obliged to honor an incidental legal determination

19 the suit produced."  *Id.* (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 569 (1992)).  The Court

20 concluded that an injunction against federal officials would not give the plaintiffs legally

21 enforceable protection from the alleged harm.  *Id.*  Likewise, the Court concluded that because

22 declaratory relief only resolves "the legal rights of the parties" and state officials who were

23 nonparties would not be bound by it, the constitutional issue would not be settled between the

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 11

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1    plaintiffs and "the officials who matter." *Id.* "Without preclusive effect, a declaratory judgment

2    is little more than an advisory opinion." *Id.*  The Court explained:

3        "Redressability requires that the court be able to afford relief *through the exercise of its*
         *power*, not through the persuasive or even awe-inspiring effect of the opinion explaining
4        the exercise of its power." *Franklin v. Massachusetts*, 505 U.S. 788, 825(1992) (Scalia, J.,
         concurring in part and concurring in judgment) (emphasis in original); see also *United*
5        *States v. Juvenile Male*, 564 U.S. 932, 937 (2011) (per curiam) (a judgment's "possible,
         indirect benefit in a future lawsuit" does not preserve standing). Otherwise, redressability
6        would be satisfied whenever a decision might persuade actors who are not before the
         court—contrary to Article III's strict prohibition on "issuing advisory opinions." *Carney*
7        *v. Adams*, 592 U. S. ——, ——, 141 S.Ct. 493 (2020). It is a federal court's judgment, not
         its opinion, that remedies an injury; thus it is the judgment, not the opinion, that
8        demonstrates redressability.

9    *Id.* at 1639-40 (emphasis in original).

10          In light of *Haaland v. Brackeen*, Plaintiffs cannot show that enjoining King County Sheriff

11   Cole-Tindall and King County Prosecutor Manion will redress their alleged injury, because, as this

12   Court previously acknowledged, King County Defendants are not the officials primarily tasked

13   with enforcing gross misdemeanors in Auburn, Washington (or Kitsap County).  Because Rainier

14   Arms is located within the city limits of Auburn, the primary responsibility for enforcing the law

15   would fall to the Auburn Police Department, not the King County Sheriff's Office.  Declaration of

16   Jesse Anderson in Support of King County Defendant's Motion for Summary Judgment, ¶¶ 4-5.

17   In addition, prosecution of misdemeanors within the city limits of Auburn is conducted by the

18   Auburn City Attorney's Office, not the King County Prosecuting Attorney's Office.  Declaration

19   of James Daniels in Support of King County Defendant's Motion for Summary Judgment, ¶ 4-6.

20          Wash. Rev. Code § 39.34.180(1),  provides in relevant part:

21          Each county, city, and town is responsible for the prosecution, adjudication,
            sentencing, and incarceration of misdemeanor and gross misdemeanor offenses committed
22          by adults in their respective jurisdictions, and referred from their respective law
            enforcement agencies, whether filed under state law or city ordinance, and must carry out
23

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 12

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

these responsibilities through the use of their own courts, staff, and facilities, or by entering into contracts or interlocal agreements under this chapter to provide these services.

The Auburn City Code (hereinafter "ACC") contains the Auburn Criminal Code.  ACC, Title 9. ACC 9.02.020 provides that "any person who commits within the corporate limits of the city any crime" that is a violation of the code "or a violation the prosecution of which is the responsibility of the city pursuant to [Wash. Rev. Code §]  39.34.180, is liable to arrest and punishment."  ACC 9.02.110 incorporates by reference into the city code all gross misdemeanors in the Revised Code of Washington, including specifically those in Title 9.[2]

In light of Wash. Rev. Code § 39.34.180, and Auburn's incorporation of all gross misdemeanors defined in the state code into its city code, enjoining King County Defendants from enforcing Wash. Rev. Code § 9.41.370 will not redress Plaintiffs' alleged harms because Auburn will still be able to prosecute violations of the large capacity magazine law.  The Auburn Police Department and Auburn City Attorney are not parties to this suit and will not be bound by declaratory or injunctive relief issued by this Court, as explained in *Haaland v. Brackeen*.  As such, Plaintiffs' request for declaratory and injunctive relief against King County Defendants fails to present a justiciable case or controversy for purposes of Article III, and this Court should dismiss King County Defendants for lack of subject matter jurisdiction.  *See Lujan v. Defs. of Wildlife*, *supra*, 504 U.S. at 561 (plaintiff faces "the burden of establishing these elements" for standing to exist).

---

[2] ACC 9.02.110(A) states as follows:  "statutes of the state of Washington specified herein and as specified in ordinances codified in this title are adopted by reference as and for a portion the penal code of the city of Auburn."  ACC 9.02.110(B) provides that "The city hereby adopts by reference all of the crimes defined as gross misdemeanors or misdemeanors in the Revised Code of Washington, as not enacted or hereafter amended or adopted, including but not limited to, RCW Titles 9, . . . ."

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 13

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

**B. The *Bruen* Analytical Framework.**

The Second Amendment reads "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Second Amendment guarantees an individual right to possess and carry weapons in case of confrontation. *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). It extends to all instruments that constitute bearable arms, including those not in existence at the time of founding. *Id.* at 582. The Second Amendment was intended to preserve the pre-existing right of English subjects to "have Arms for their Defence suitable to their Conditions, and as allowed by Law," contained in the 1689 English Declaration of Rights. *Id.* at 593; J. Malcolm, *To Keep and Bear Arms: The Origin of an Anglo-American Right* (1994), at 119.[3] In *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court concluded that the Fourteenth Amendment makes the Second Amendment fully applicable to the States.

The Supreme Court's recent decision in *New York State Rifle & Pistol Association v. Bruen*, __ U.S. __, 142 S.Ct. 2111 (2022), governs the analytical framework that this Court must apply. If a challenged law prohibits conduct that is covered by the Second Amendment's plain text, the Constitution presumptively protects that conduct. *Id.* at 2126. To justify a regulation that prohibits conduct covered by the Second Amendment, the government must demonstrate that the regulation is consistent with this Nation's "historical tradition of firearm regulation." *Id.* at 2126. Significantly, inherent in *Bruen's* test is the recognition that there *is* a historical tradition of firearm regulation in the United States. If a regulation is consistent with the historical tradition of firearm regulation, the conduct falls outside the Second Amendment's protection. *Id.* at 2126. Pursuant

---

[3] The Court cited to Professor Malcolm in *Heller*, 554 U.S. at 592.

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 14

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

to *Heller* and *Bruen*, the Second Amendment protects the right of ordinary, law-abiding citizens to possess handguns in the home for self-defense and to carry handguns publicly for self-defense. *Id.* at 2122.

### C. Large Capacity Magazines Do Not Fall Within the Plain Text of the Second Amendment.

#### 1. Large Capacity Magazines Are Not "Arms" Because They Are Not Necessary For the Operation of Any Firearm.

Plaintiffs argue that large capacity magazines are protected by the Second Amendment simply because "magazines are integral for the operation of many common firearms." Dkt. 101, at 7. However, Washington has not banned magazines. Plaintiffs' argument glosses over the fact that, as Plaintiffs have admitted, all firearms are operable without large capacity magazines by using regular capacity magazines. All of the firearms that Plaintiffs own and sell can be operated without a large capacity magazine. The law at issue does not ban any type of firearm, or any component that is necessary for any firearm's operation. The law does not render any firearm inoperable. It does not ban any type of ammunition, nor does it limit the amount of ammunition that Plaintiffs can buy, sell or carry. It does not limit the number of magazines a person can carry.[4] Viewed in the proper context, large capacity magazines are not arms and do not fall within the text of the Second Amendment. For this reason alone, Plaintiffs' challenge fails.

---

[4] Any constitutional injury faced by Plaintiffs is *de minimis*. A gun owner can carry more than 10 rounds by carrying multiple magazines and can change magazines if necessary. *See Evenstad v. Herberg*, 994 F.Supp.2d 995, 1001 (D. Minn. 2014) (even in First Amendment context, "there are some injuries so de minimis that they do not rise to the level of constitutional violation"); *Brandt v. Bd. of Educ. of City of Chicago*, 480 F.3d 460, 465 (7th Cir. 2007) ("*de minimis non curat lex* (the law doesn't concern itself with trifles) is a doctrine applicable to constitutional as to other cases").

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 15

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

The Supreme Court has interpreted "arms" to include "*weapons* that were not specifically designed for military use and were not employed in a military capacity." *Heller*, 554 U.S. at 581 (emphasis added). In *Heller*, the Court struck down a District of Columbia law that banned the possession of any handguns in the home, rejecting the argument that the Second Amendment only protected the right to possess and carry weapons in connection with militia service. *Id.* at 577-84. The law at issue in *Heller* banned an entire class of arms, handguns, overwhelmingly used for self-defense, and thus the law burdened the right of ordinary, law-abiding citizens to possess handguns for self-defense. *Id.* at 628-29. Similarly, the law at issue in *Caetano v. Massachusetts*, 577 U.S. 411, 412 (2016), banned possession of an entire class of weapons, stun guns, that were commonly used by ordinary citizens for self-defense. The law at issue in *Bruen* restricted the right to possess handguns outside the home to those who could "demonstrate a special need for self-protection distinguishable from that of the general community." *Bruen,* 142 S.Ct. at 2123. The standard was demanding, and could not be met by a showing that one lived or worked in an area known for criminal activity. *Id.* Thus, the New York law also burdened the right of ordinary, law-abiding citizens to carry a common class of weapons, handguns, for self-defense. *Id.*

Prior to *Bruen,* the Ninth Circuit noted that the right to possess firearms for protection implies a corresponding right to obtain ammunition necessary to use them. *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). It therefore concluded that a prohibition on the sale of ammunition would fall within the text of the Second Amendment. However, Wash. Rev. Code § 9.41.370 does not prohibit the sale of any type of ammunition, and Plaintiffs' reliance on *Jackson* is misplaced. Wash. Rev. Code § 9.41.370 does not make it impossible to use any firearm.

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 16

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

Prior to *Bruen*, many circuits addressing regulation of large capacity magazines, including the Ninth Circuit, assumed without deciding that large capacity magazines fall within the text of the Second Amendment.  See *Duncan v. Bonta,* 19 F.4th 1087, 1103 (9th Cir. 2021), *cert. granted, judgment vacated*, 142 S. Ct. 2895, *and vacated and remanded*, 49 F.4th 1228 (2022) (collecting cases).  These cases are not binding on this Court.

In contrast to the restrictions at issue in *Heller* and *Bruen*, Wash. Rev. Code § 9.41.370 places no restriction on the right of ordinary, law-abiding citizens to possess or carry *any firearm, anywhere*.  A ban on large capacity magazines is not a restriction on any type of firearm.  And it cannot be equated with a ban on ammunition.  Without ammunition, a firearm would be useless and an ordinary, law-abiding citizen could not use the firearm for purposes of self-defense.  But Rainier Arms has conceded in discovery that none of the approximately 1,200 firearms that it sells needs a large capacity magazine to be operational.  Dec. of Summers, Ex. 1, at 6-7.  Wash. Rev. Code § 9.41.370 does not regulate conduct covered by the Second Amendment's plain text because it does not burden the right of ordinary, law-abiding citizens to possess or carry any operational firearm.  *See Oregon Firearms Fed'n v. Kotek Oregon All. for Gun Safety*, 2:22-CV-01815-IM, 2023 WL 4541027, at *2 (D. Or. July 14, 2023) (holding that large capacity magazines are not arms protected by the Second Amendment because they are not necessary to render a firearm operable); *Ocean State Tactical, LLC v. Rhode Island*, 22-CV-246 JJM-PAS, 2022 WL 17721175, at *16 (D.R.I. Dec. 14, 2022) (denying preliminary injunction and concluding that large capacity magazines are not arms within the meaning of the Second Amendment because they are a type of holder of ammunition that is not integral to a firearm).

A useful analogy is a silencer.  In *U.S. v. Royce*, 1:22-CR-130, 2023 WL 2163677, at * 4 (D.N.D. Feb. 22, 2023), the court held that a silencer is not an arm within the meaning of the

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1    Second Amendment because "a silencer is not necessary to make a firearm operable."  *See also*

2    *U.S. v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) (holding that a silencer is a firearm accessory,

3    not a weapon and not protected by the Second Amendment); *U.S. v. McCartney*, 357 F. App'x 73,

4    76 (9th Cir. 2009) (holding that silencers are not protected by the Second Amendment); *U.S. v. Al-*

5    *Azhari*, No. 8:20-CR-206-T-60AEP, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020) (finding

6    a silencer is not a bearable arm within the meaning of the Second Amendment).   Likewise, a large

7    capacity magazine is not an arm within the meaning of the Second Amendment because it is not

8    necessary to make any firearm operable; it is a mere accessory.[5]

9    Although *Bruen* places the burden on the government to demonstrate that a regulation that

10   burdens conduct protected by the Second Amendment is consistent with historical traditions, it did

11   not alter the long-standing rule that statutes are presumed constitutional and the party challenging

12   a statute initially bears the burden of demonstrating that it is unconstitutional.  *Lujan v. G&G Fire*

13   *Sprinklers*, 532 U.S. 189, 198 (2001) (stating that "as the party challenging the statutory

14   withholding scheme, respondent bears the burden of demonstrating its unconstitutionality"

15   because statutes are presumed to be constitutional); *New York State Club Ass'n v. New York*, 487

16   U.S. 1, 17 (1988) (stating "the burden of showing a statute to be unconstitutional is on the

17   challenging party").  Here, Plaintiffs have failed to demonstrate that the ban on large capacity

18   magazines implicates the Second Amendment.

19   Placing the burden on Plaintiffs to establish that conduct falls within the plain text of the

20   Second Amendment is consistent with *Bruen's* instruction that the Second Amendment analysis

21   _____

22   [5] The difference between parts integral to operation versus accessories are useful.  For example,
     a car needs a driver's seat to be operational, but a leather seat is optional and has no impact on
23   the function of the vehicle.  With firearms, the legislature can regulate optional accessories that
     are not integral to the functionality of the weapon.

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 18

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

mirrors the analysis under the Free Speech Clause of the First Amendment. *Bruen,* 142 S.Ct. at 2130 (citing First Amendment cases). In *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984), the Court explained "[a]lthough it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." Thus, under *Bruen,* before the burden shifts to the government to demonstrate analogous historical traditions, the plaintiff necessarily bears the burden of proving that the conduct at issue falls within the plain text of the Second Amendment. Plaintiffs have failed to meet that burden in this case.

2. Large Capacity Magazines Are Not Arms Commonly Used for Self-Defense by Ordinary, Law-Abiding Citizens.

Even if a large capacity magazine fell within the definition of "arms"—despite the fact that it is neither a weapon nor integral to the operation of any weapon—Plaintiffs have failed to show that large capacity magazines are in common use for self-defense, and thus protected by the Second Amendment. In *Heller*, the Court cautioned that the right to keep and bear arms "was not unlimited," just as the First Amendment right to free speech is not unlimited. 554 U.S. at 595. The Second Amendment does not protect the right of citizens "to carry arms for *any sort* of confrontation." *Id.* "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. The Court specified "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625.

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

In *Bruen*, the Court explained that its analysis requires courts to consider that individual self-defense is the "central component" of the Second Amendment right.   142 S.Ct. at 2133 (quoting *McDonald*, 561 U.S. at 767).   The restriction in *Bruen* on ordinary, law-abiding adult citizens carrying handguns in public fell within the plain text of the Second Amendment.   *Id.* at 2134.   It was undisputed in *Bruen* that handguns are "weapons 'in common use' today for self-defense."   *Id.*   The Court easily concluded that the conduct restricted—carrying any handguns publicly for self-defense—was protected by the Second Amendment because the right to carry weapons in case of confrontation must necessarily include confrontations outside the home.   *Id.* at 2134-35.

Thus, pursuant to *Bruen,* the inquiry as to whether large capacity magazines fall within the plain text of the Second Amendment is whether large capacity magazines are weapons in common use for self-defense, and whether the restriction burdens the right to carry weapons in common use for self-defense in case of confrontation.   The answer to both inquiries is no.   Plaintiffs have presented no empirical evidence that large capacity magazines are commonly needed in order for ordinary, law-abiding citizens to use their firearms for self-defense. Sgt. Pavlovich, who has been a sheriff's deputy for 29 years and has investigated over 150 shootings and 25 officer-involved shootings, is unaware of any incident where a civilian fired as many as 10 rounds in what was determined to be lawful self-defense.   Dec. of Pavlovich, ¶ 12.   Notably, in *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Attorney Gen. New Jersey*, 910 F.3d 106, 112 (3d Cir. 2018), *abrogated by Bruen*, 142 S. Ct. 2111 (2022) (affirming denial of preliminary injunction) (citations omitted), the Third Circuit concluded that the record in that case established that "LCMs 'are not necessary or appropriate for self-defense,' and that use of LCMs in self-defense can result in 'indiscriminate firing,' and 'severe adverse consequences for innocent bystanders.'"

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 20

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

In *Heller,* the Court made clear that weapons that are most useful in military service rather than individual self-defense do not fall within the plain text of the Second Amendment and may be banned.  The Court stated, "It may be objected that if weapons that are most useful in military service— M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause." 554 U.S. at 627.  As the Ninth Circuit previously observed, "large-capacity magazines have limited lawful, civilian benefits, whereas they provide significant benefits in a military setting" and are thus, "'most useful in military service,' at least in an ordinary understanding of that phrase." *Duncan v. Bonta*, 19 F.4th at 1102 (quoting *Kolbe v. Hogan*, 849 F.3d 114, 135 (4th Cir. 2017), *abrogated by Bruen*, 142 S. Ct. 2111 (2022)).  Thus, the fact that large capacity magazines are most useful in military service necessitates the conclusion that they are not within the plain text of the Second Amendment.

Wash. Rev. Code § 9.41.370 does not burden Plaintiffs' right to possess or carry any firearm that is commonly used by ordinary, law-abiding citizens for self-defense.  It in no way restricts an ordinary, law-abiding citizen's right to carry any firearm in case of confrontation.  Plaintiff has presented no empirical evidence that a large capacity magazine is necessary to render any firearm suitable for self-defense.  Wash. Rev. Code § 9.41.370's restriction on large capacity magazines does not fall within the plain text of the Second Amendment.  Plaintiffs' failure to establish this record requires summary judgment for Defendants.

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 21

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1

2

### D. Wash. Rev. Code § 9.41.370 Is Consistent With This Nation's History of Regulating Dangerous Uses of Firearms.

3

4

Even if large capacity magazines fell within the plain text of the Second Amendment,

Wash. Rev. Code §  9.41.370 is constitutional as long as it is consistent with this Nation's

5

"historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126.  As argued above, Wash.

6

Rev. Code § 9.41.370 does not prohibit any firearm or any type of ammunition.  Properly

7

understood, the ban on the sale of large capacity magazines is a regulation on how certain firearms

8

may be used.  They may not be used in a way that allows continuous fire of more than 10 rounds

9

without changing magazines because of the extreme danger that continuous, uninterrupted fire

10

poses to victims, bystanders and law enforcement.

11

In *Heller*, the Court explained that nothing in its opinion should be interpreted as casting

12

doubt on "longstanding prohibitions" such as "laws forbidding the carrying of firearms in sensitive

13

places such as schools and government buildings."  554 U.S. at 626-27.  The Court specified this

14

was a not an exhaustive list of presumptively lawful regulatory measures.  *Id.* at 627 n.26.  As

15

such, the Court recognized historical traditions of regulating the manner in which firearms are

16

carried and used.

17

In *Bruen*, the Court explained that "[t]hroughout modern Anglo-American history, the right

18

to keep and bear arms in public has traditionally been subject to well-defined restrictions governing

19

the intent for which one could carry arms, *the manner of carry*, or the exceptional circumstances

20

under which one could not carry arms." *Bruen*, 142 S.Ct. at 2138 (emphasis added).  For example,

21

the Court recognized a history of statutes that prohibited bearing firearms in a way that "spreads

22

'fear' or 'terror' among the people."  *Id*. at 2145.  "The historical evidence from antebellum

23

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

America does demonstrate that *the manner* of public carry was subject to reasonable regulation." *Id.* at 2150 (emphasis in original).

There is historical tradition of regulating particularly dangerous uses of firearms.  As Professor Robert Churchill has explained:

> In early America, the legal immunity surrounding the possession of guns by members of the body politic did not extend to their use. Early American militia laws prohibited any use of guns on the day of muster unless expressly ordered by militia officers. They also required militiamen and other householders to bring their guns to the muster field twice a year so that militia officers could record which men in the community owned guns. Some colonies authorized door-to-door surveys of gun ownership. More important, colonial and early state governments routinely exercised their police powers to restrict the time, place, and manner in which Americans used their guns.

Robert H. Churchill, *Gun Regulation, the Police Power, and the Right to Keep Arms in Early America: The Legal Context of the Second Amendment*, 25 Law & Hist. Rev. 139, 161–62 (2007). Of particular relevance to this case, were the widely enacted colonial restrictions on firing guns after dark:

> Colonial governments expressed particular concern over the firing of guns after dark, in part because the traditional method of raising the alarm of an attack after dark involved the firing of several guns in succession. Thus, an amendment to New Hampshire's militia law prohibited the firing of guns after sunset during "time of war or watch." Connecticut and Georgia enacted similar measures. North Carolina was more concerned with the dangers to lives and property stemming from the use of guns in night-time hunting, a practice that it banned. New York and Pennsylvania, noting that "great dangers have arisen and mischief been done," prohibited the firing of "guns, rockets, squibs, and fireworks" to celebrate the new year. These legislatures probably hoped to avoid fires caused by raucous night-time celebrations in built-up settlements. Rhode Island responded to similar fears of "accidental death" and the "firing of the towns" when prohibiting the firing of guns and lighting of fireworks within any town after dark. For its part, Virginia cracked down on celebratory gunfire while "drinkeing Marriages and funerals only excepted." The commonwealth also prohibited gunfire on the Sabbath.

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 23

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

*Id.* at 162.[6]  Professor Churchill concludes that colonial governments did not hesitate to regulate the use of guns in order to promote public safety.  *Id.* at 164.[7]  The existence of such regulations was acknowledged by the Court in *Heller*, although the majority and dissent debated their significance to question at issue in that case:  whether the Second Amendment protected an individual right to bear arms.  *Heller*, 554 U.S. at 632-34 (majority opinion), 683-85 (J. Breyer, dissenting).

The Supreme Court's own precedent demonstrates a historical tradition of regulating dangerous uses of firearms.  In *Presser v. Illinois,* 116 U.S. 252, 253 (1886), the defendant was indicted for violating a law that prohibited "any body of men whatever, other than the regular organized volunteer militia of this state, and the troops of the United States, to associate themselves together as a military company or organization, or to drill or parade with arms in any city or town of this state, without the license of the governor thereof, which license may at any time be revoked."  Presser challenged the prohibition on drilling and parading with arms as a violation of the Second Amendment.  *Id.* at 264.  While the Court acknowledged that the states cannot "prohibit the people from keeping and bearing arms," it concluded that it was "clear" that forbidding bodies

---

[6] Prof. Churchill cites to the following sources:  "An Act in Addition to the Act for regulating the Militia," 1718, New Hampshire Session Laws; Acts and Laws of his Majesties Colony of Connecticut in New England (1702), 5; "An Act for Regulating the Watch in the Town of Savannah," 1759, Allen D. Candler, The Colonial Records of the State of Georgia (Atlanta: The Franklin Printing and Publ. Co., 1904-16), 18:295; "An Act to prevent the pernicious Practice of hunting with a Gun in the Night by Fire Light," 1774, North Carolina Session Laws; "An Act to Prevent firing of guns and other firearms within this State, on certain days therein mentioned," 1785, Laws of the State of New York (Albany: Weed, Parsons, and Co., 1886), 2:152; "An Act to suppress the disorderly practice of firing guns, etc.," 1774, Mitchell, Statutes at Large, 8:410; "An Act for Preventing Mischief being done in the town of Newport, or in any other town in this Government," 1731, Rhode Island Session Laws; 6 Commonwealth, c. 12 (Virginia, 1655-56), Hening, Statutes at Large, 1:401; and 18 Charles I, c. 35 (Virginia, 1642), ibid., 1:261.

[7]

---

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1    of men associating together as military organizations from drilling or parading with arms in cities

2    did not infringe the constitutional right to keep and bear arms.  *Id.* at 264-65.  In so holding, the

3    Court approved a regulation on the use of firearms that had been deemed dangerous to public peace

4    and order, and that did not burden the right to self-defense.  *Id.* at 268 (noting the right to suppress

5    armed mobs as "necessary to the public peace, safety, and good order").

6          As the Ninth Circuit previously acknowledged, restrictions on large capacity magazines

7    still allow law-abiding citizens to "fire as many bullets as they would like for whatever lawful

8    purpose they choose. The ban on large-capacity magazines has the sole practical effect of requiring

9    shooters to pause for a few seconds after firing ten bullets, to reload or to replace the spent

10   magazine." *Duncan v. Bonta*, 19 F.4th at 1104.  However, "large-capacity magazines can be

11   exploited by criminals, to tragic result," and large capacity magazines have been the weapon

12   accessory of choice in many of the deadliest mass shootings in recent history. *Id.* at 1106.  Because

13   large capacity magazines exacerbate the harm caused in mass shootings, the ban on the

14   manufacture and sale of large capacity magazines is in keeping with a historical tradition of

15   regulating particularly dangerous uses of firearms.

16

17         **E.  Wash. Rev. Code § 9.41.370 Is Consistent With This Nation's History of Regulating Weapons That Are Unusually Dangerous.**

18         Both *Heller* and *Bruen* acknowledge "the historical tradition of prohibiting the carrying of

19   'dangerous and unusual weapons.'"  *Bruen,* 142 S.Ct. at 2128; *Heller,* 554 U.S. at 627.  Because

20   the regulations at issue in *Heller* and *Bruen* applied to all handguns, and because handguns are

21   "indisputably" in common use for self-defense today, handguns did not qualify as "dangerous" or

22   "unusual." *Id.*  The Court unfortunately did not explain what might constitute a dangerous and

23   unusual weapon.

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 25

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

The most sensible construction of "dangerous and unusual" is unusually dangerous in the context of the core right of the Second Amendment:  the right of ordinary, law-abiding citizens to carry weapons for self-defense.  While large capacity magazines are in common use for military and law enforcement purposes, they are not in common use by ordinary, law-abiding citizens for purposes of self-defense, as argued above.  As explained by Defendants' experts, large capacity magazines are not commonly used in lawful self-defense by law-abiding civilians, and are unusually dangerous because indiscriminate, continuous fire of many rounds is likely to endanger bystanders and law enforcement.  *See  Oregon Firearms Fed'n, supra*, at *34 (D. Or. July 14, 2023) (finding large capacity magazines are not commonly used for self-defense and have uniquely dangerous propensities).

Plaintiffs' argument that many large capacity magazines have been sold and thus are not "unusual" boils down to this:  if the gun industry can sell enough of a type of weapon before legislative bodies act to ban them, then that particular weapon becomes enshrined in the Second Amendment no matter how dangerous it is or whether it is used by civilians in lawful self-defense. But thankfully, the Supreme Court has not, in fact, outsourced constitutional interpretation of the Second Amendment to the gun industry's effective marketing of new products.

## VII.   CONCLUSION

Plaintiffs' claims for declaratory and injunction relief against King County Defendants should be dismissed for lack of Article III jurisdiction, because the relief requested will not redress the harms that they allege.  In addition, Plaintiffs' request for declaratory and injunctive relief should be denied as a matter of law, because Plaintiffs have failed to demonstrate that large capacity magazines restricted by Wash. Rev. Code § 9.41.370 are (1) arms, and (2) are commonly

---

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 26

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1   used for the law purpose of self-defense, and thus fall within the plain text of the Second

2   Amendment.   Finally, Defendants have demonstrated that Wash. Rev. Code § 9.41.370's

3   restriction on large capacity magazines is consistent with the Nation's history and tradition of (1)

4   regulating particularly dangerous uses of firearms, or (2) banning unusually dangerous weapons.

5   The gun industry's relentless marketing of large capacity magazines to civilians since the federal

6   ban expired is insufficient to confer Second Amendment protection.   This Court should grant

7   summary judgment for King County Defendants pursuant to Fed. R. Civ. P.  56.

8

9          DATED this 1st day of September, 2023.

10                                        LEESA MANION (she/her)
                                          King County Prosecuting Attorney
11

12                                        By: _____

13                                        ANN M. SUMMERS, WSBA #21509
                                          Senior Deputy Prosecuting Attorney
14                                        Attorney for King County Defendants
                                          701 5th Avenue, Suite 600
15                                        Seattle, WA 98104
                                          Phone: (206) 477-1120/Fax: (206) 296-8819
16                                        ann.summers@kingcounty.gov

17

18

19

20

21

22

23

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 27

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 1, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF E-filing system which will send notification of such filing to all counsel of record.

I declare under penalty of perjury under the laws of the United States of America and the State of Washington that the foregoing is true and correct.

DATED this 1st day of September, 2023.

_____
RAFAEL MUNOZ-CINTRON
Paralegal I – Litigation Section
King County Prosecuting Attorney's Office

DEFENDANTS PATTI COLE-TINDALL AND LEESA MANION'S
RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
AND CROSS-MOTION FOR SUMMARY JUDGMENT
[No. 3:22-cv-5403-DGE] - 28

**Leesa Manion** (she/her)
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 5th Avenue, Suite 600
Seattle, Washington 98101
(206) 477-1120  Fax (206) 296-8819