1          The Honorable Judge David G. Estudillo

2

3

4

5

6                 UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF WASHINGTON
7                         AT TACOMA

8    GABRIELLA SULLIVAN; RAINIER ARMS,        )
     LLC; SECOND AMENDMENT                    )
9    FOUNDATION; and FIREARMS POLICY          )   No. 3:22-cv-5403-DGE
     COALITION, INC.,                         )
10                         Plaintiffs,        )
          v.                                  )   DECLARATION OF ANN
11                                            )   SUMMERS IN SUPPORT OF KING
     BOB FERGUSON, in his official capacity as )   COUNTY DEFENDANTS' MOTION
12   Washington State Attorney General; JOHN R. )   FOR SUMMARY JUDGMENT
     BATISTE, in his official capacity as Chief of the )
13   Washington State Patrol; PATTI COLE-     )
     TINDALL, in her official capacity as Interim )
14   Sheriff for King County, Washington; JOHN )
     GESE, in his official capacity as Sheriff for )
15   Kitsap County, Washington; RICK SCOTT, in )
     his official capacity as Sheriff for Grays Harbor )
16   County, Washington; LEESA MANION, in her )
     official capacity as County Prosecutor for King )
17   County, Washington; CHAD M. ENRIGHT, in )
     his official capacity as County Prosecutor for )
18   Kitsap County, Washington; and NORMA    )
     TILLOTSON, in her official capacity as County )
19   Prosecutor for Grays Harbor County,     )
     Washington,                              )
20                         Defendants.        )
                                              )
21   _____)

22

23

**Leesa Manion (she/her)**
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120  Fax (206) 296-8819

I, ANN SUMMERS, declare under penalty of perjury under the laws of the State of Washington as follows:

1. I am a King County Senior Deputy Prosecuting Attorney and one of the assigned attorneys for King County Sheriff Patti Cole-Tindall and King County Prosecuting Attorney Leesa Manion in this case.  I am over eighteen years of age.  I have personal knowledge of the facts contained in this declaration and am otherwise competent to testify to the matters in this declaration.

2. On August 25, 2023, I viewed the website for Plaintiff Rainier Arms at https://www.rainierarms.com.  The contact information posted on the home page of the website lists the address of Rainier Arms as 2504 Auburn Way N., Auburn, Washington.

3. On August 25, 2023, I viewed the Washington Secretary of State website at https://www.sos.wa.gov. I used the "corporation search" function to search for the registered address of Rainier Arms, LLC.  The principal office street address of Rainier Arms, LLC, as registered with the Secretary of State is 2504 Auburn Way N., Auburn, WA 98002.

4. Attached as Exhibit 1 is a true and correct copy of Rainier Arms Responses and Objections to King County Defendants' Frist Set of Interrogatories and Requests for Production to Plaintiff Rainier Arms, LLC.

5. Attached as Exhibit 2 is a true and correct copy of an excerpt of a certified transcript of the motion hearing in this matter on September 23, 2022.

6. Attached as Exhibit 3 is a true and correct copy of Washington Laws of 2022, ch. 104.

**Leesa Manion (she/her)**
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120  Fax (206) 296-8819

1    I declare under penalty of perjury under the laws of the United States of America and the

2    State of Washington that the foregoing is true and correct to the best of my knowledge.

3

4    Signed this 30th day of August, 2023 at Seattle, Washington.

5    _____

6    ANN M. SUMMERS

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

DECLARATION OF ANN SUMMERS IN SUPPORT
OF KING COUNTY DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT  [No. 3:22-cv-5403-DGE] - 3

**Leesa Manion (she/her)**
Prosecuting Attorney
CIVIL DIVISION, Litigation Section
701 Fifth Avenue, Suite 600
Seattle, Washington 98104
(206) 477-1120  Fax (206) 296-8819

# Exhibit 1

1

The Honorable Judge David G. Estudillo

2

3

4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6

7   GABRIELLA SULLIVAN; RAINIER ARMS,       )
    LLC; SECOND AMENDMENT                     )
    FOUNDATION; and FIREARMS POLICY          )   No. 3:22-cv-05403-DGE
8   COALITION, INC.,                          )
                        Plaintiffs,           )
9        v.                                   )   KING COUNTY DEFENDANTS'
                                              )   FIRST SET OF INTERROGATORIES
10  BOB FERGUSON, in his official capacity as )   AND REQUESTS FOR
    Washington State Attorney General; JOHN R.)   PRODUCTION TO PLAINTIFF
11  BATISTE, in his official capacity as Chief of the )   RAINIER ARMS, LLC.
    Washington State Patrol; PATTI COLE-      )
12  TINDALL, in her official capacity as Interim )
    Sheriff for King County, Washington; JOHN )   **And Rainier Arms' Responses and**
13  GESE, in his official capacity as Sheriff for )   **Objections.**
    Kitsap County, Washington; RICK SCOTT, in )
14  his official capacity as Sheriff for Grays Harbor )
    County, Washington; DAN SATTERBERG, in )
15  his official capacity as County Prosecutor for )
    King County, Washington; CHAD M.         )
16  ENRIGHT, in his official capacity as County )
    Prosecutor for Kitsap County, Washington; and )
17  NORMA TILLOTSON, in her official capacity as )
    County Prosecutor for Grays Harbor County, )
18  Washington,                               )
                        Defendants.           )
19  _____ )

20      TO:         Rainier Arms, LLC, plaintiff;

21      AND TO:     Ard Law Group, attorneys for plaintiff.

        In accordance with CR 26, CR 33 and CR 34, plaintiff named above is hereby required to

22  answer, in writing, the following interrogatories with respect to their specific property interests

23  Rainier Arms, LLC Responses to KING COUNTY DEFENDANTS' FIRST SET OF
    INTERROGATORIES AND REQUESTS FOR PRODUCTION
    TO PLAINTIFF RAINIER ARMS, LLC - 1
    [No. 3:22-cv-5403-DGE]

**separately and fully** under oath, within thirty (30) days of their service upon you.  These interrogatories are deemed continuing in nature and you must supplement your answer pursuant to CR 26(e).

**RAINIER ARMS' RESPONSE:** To the extent the preliminary statement appears to state King County's reliance on Washington Civil Rules for Superior Court, Rainier Arms will instead comply with the Federal Rules of Civil Procedure. To the extent the preliminary statement appears to refer to multiple plaintiffs by reference to "their [sic] specific property interests," Rainier Arms responds only on its behalf. To the extent the preliminary statement refers to "property interests" other than the right to sell firearms as queried in the Interrogatories, Rainier Arms disregards it.

PRELIMINARY STATEMENT

These interrogatories call for all information (including information contained in or on writings, recordings, photographs, or any other tangible thing or material) that is known or available to you, including all information in possession of your doctors, agents, attorneys, accountants, auditors or other persons or experts and any investigators or any person acting on your behalf or under you or your attorneys' employment, direction and/or control.

If you are asserting that part of any response to an interrogatory is privileged, specify the grounds therefore, identify the alleged privileged documents or conversations by date, author, recipient and general subject matter, and provide all information responsive to the interrogatory which does not fall within your claim of privilege.

Unless conclusively negated by the context of the question, the following is to be considered applicable to all questions contained in this set of written interrogatories:

        A.     The word "person" includes the plural as well as the singular and includes any natural person, firm, association, partnership, corporation, or other form of legal entity.

Rainier Arms, LLC Responses to KING COUNTY DEFENDANTS' FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION
TO PLAINTIFF RAINIER ARMS, LLC - 2
[No. 3:22-cv-5403-DGE]

B.     Each interrogatory is intended to and does request that each and every particular and part thereof be answered with the same force and effect as if each part and particular were the subject of and were asked by a separate interrogatory.

C.     The terms "document" and/or "writing" mean and include, but are not limited to, any printed, typewritten, or handwritten matter of whatever character, and every form of recording upon any tangible thing.

D.     Whenever you are asked to identify any document or writing, state with respect to each such document or writing:

     1.     The date it bears and the date it was prepared,

     2.     The identity of the author and/or originator,

     3.     The identity of each addressee,

     4.     The nature and substance thereof,

     5.     The identity of the present custodian thereof,

     6.     The present location of the document, and

     7.     Whether you will provide a copy thereof without further request.

E.     Whenever you are asked to identify or describe an oral communication or conversation, state with respect thereto:

     1.     The date and place thereof and whether it was in person or by telephone,

     2.     The identity of each person who participated in or heard any part of communication,

     3.     The substance of what was said by each person who participated therein, and

     4.     The identity of any document that recorded, summarized or confirmed the oral communication.

Rainier Arms, LLC Responses to KING COUNTY DEFENDANTS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION TO PLAINTIFF RAINIER ARMS, LLC - 3
[No. 3:22-cv-5403-DGE]

F.      Whenever you are asked to identify any person, state with respect to such person:

1.      The person's name,

2.      Such person's last known business address and telephone number,

3.      Such person's last known residence address and telephone number,

4.      Such person's present occupation and business affiliation, and

5.      Such person's occupation and business affiliation of the time to which your answer relates.

You are hereby notified that the following interrogatories shall be deemed continuing, and any additional information, including any conclusions, opinions or contentions that are different from those set forth in plaintiff's answer relating in any way to these interrogatories, which the plaintiff acquires subsequent to the date of answering these interrogatories and up to and including the date of trial, shall be furnished to defendant promptly after such information is acquired.

**RAINIER ARMS' RESPONSE:** Rainier Arms objects to and disregards any aspect of the foregoing statement that attempts to impose an obligation in excess of those in the Federal Rules of Civil Procedure.

## OBJECTIONS TO ALL INTERROGATORIES

1. The fact that Plaintiff responds to any Interrogatory shall not be construed as a waiver of all or any part of the objections interposed by Plaintiff to any Interrogatory.

2. By making these responses and objections to the Interrogatories, Plaintiff does not waive, and hereby expressly reserves, his right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Plaintiff makes these responses and objections herein without in any way implying that

1
2
she considers the Interrogatories, and responses to the Interrogatories, to be relevant or material to the subject matter of this action.

3
4
5
6
7
8
3. Plaintiff objects to the Interrogatories to the extent that they seek disclosure of information protected under the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Nothing contained herein is intended to be, nor shall in any way be construed as, a waiver of any attorney-client privilege, work-product doctrine, right to privacy, or any other applicable privilege or immunity.

### INTERROGATORIES

9
10
11
**INTERROGATORY NO. 1:**  State the monthly and annual gross proceeds of sales of Rainier Arms, LLC, for retailing as reported to the Washington Department of Revenue for the year 2020.

12
13
14
**ANSWER**:
Documents sufficient to answer this Interrogatory are attached with this response.

15
16
17
**INTERROGATORY NO. 2:**  State the monthly and annual gross proceeds of sales of Rainier Arms, LLC, for retailing as reported to the Washington Department of Revenue for the year 2021.

18
19
20
**ANSWER**:
Documents sufficient to answer this Interrogatory are attached with this response.

21
22
**INTERROGATORY NO. 3:**  State the monthly and annual gross proceeds of sales of Rainier Arms, LLC, for retailing as reported to the Washington Department of Revenue for the year 2022.

23

**ANSWER**:

Documents sufficient to answer this Interrogatory are attached with this response.

**INTERROGATORY NO. 4:**  State the number of firearm models that are currently available for purchase from Rainier Arms, LLC.

**ANSWER**:

Approximately 1200.

**INTERROGATORY NO. 5:**  State the number of ammunition calibers that are currently available for purchase from Rainier Arms, LLC.

**ANSWER**:

Rainier Arms objects to this Interrogatory as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence, because none of the challenged statutes regulates or prohibits the sale of any ammunition type or caliber. Rainier Arms further responds: approximately 20.

**INTERROGATORY NO. 6:**  List all firearm models that were sold by Rainier Arms, LLC, prior to enactment of RCW 9.41.370 that Rainier Arms, LLC, is prohibited from selling by RCW 9.41.370 to persons in Washington other than branches of the armed forces or law enforcement agencies.

**ANSWER**:

None.

Rainier Arms, LLC Responses to KING COUNTY DEFENDANTS' FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION
TO PLAINTIFF RAINIER ARMS, LLC - 6
[No. 3:22-cv-5403-DGE]

1

2      **INTERROGATORY NO. 7:**  List all firearm models that were sold by Rainier Arms,

3  LLC, prior to enactment of RCW 9.41.370 that cannot be operated without a large capacity

4  magazine as defined by RCW 9.41.010(36).

5      **ANSWER**:

6      Rainier Arms objects to this Interrogatory as irrelevant and not reasonably calculated to

7  lead to the discovery of admissible evidence. Rainier Arms further states that there are no models

8  of firearms sold by Rainier Arms that are incapable of functioning without magazines banned by

9  the laws challenged here, but that none are capable of functioning in a way that permits them to

10  fire more than 10 rounds without reloading.

11      **INTERROGATORY NO. 8:**  List all ammunition types and/or calibers that were sold

12  by Rainier Arms, LLC, prior to enactment of RCW 9.41.370 that Rainier Arms, LLC, is

13  prohibited from selling by RCW 9.41.370 to persons in Washington other than branches of the

14  armed forces or law enforcement agencies.

15      **ANSWER**:

16      Rainier Arms objects to this Interrogatory as irrelevant and not reasonably calculated to

17  lead to the discovery of admissible evidence, because none of the challenged statutes regulates or

18  prohibits the sale of any ammunition type or caliber. Rainier Arms further responds: none.

19

20      **INTERROGATORY NO. 9:**  List all ammunition types and/or calibers that were sold

21  by Rainier Arms, LLC, prior to enactment of RCW 9.41.370 that are only marketed and/or sold

   in large capacity magazines as defined by RCW 9.41.010(36).

22

23  Rainier Arms, LLC Responses to KING COUNTY DEFENDANTS' FIRST SET OF
   INTERROGATORIES AND REQUESTS FOR PRODUCTION
   TO PLAINTIFF RAINIER ARMS, LLC - 7
   [No. 3:22-cv-5403-DGE]

1

**ANSWER**:

2

Rainier Arms objects to this Interrogatory as irrelevant and not reasonably calculated to

3

lead to the discovery of admissible evidence, because none of the challenged statutes regulates or

4

prohibits the sale of any ammunition type or caliber. Rainier Arms further responds that

5

ammunition is sold separately from magazines, rendering the Interrogatory confusing at best.

6

Rainier Arms further responds: none.

7

**INTERROGATORY NO. 10:**  Identify each person whom you intend to call as an

8

expert witness at trial or for dispositive motions of this case and, for each, provide the following

9

information:

10

(a)     all opinions to be expressed by the witness and the basis and reasons therefor;

11

(b)     the data or other information considered by the witness in forming the opinions;

12

(c)     any exhibits to be used as a summary of or support for the opinions;

13

(d)     the qualifications of the witness, including a list of all publications written by the

14

witness in the last ten years;

15

(e)     the compensation to be paid for the witness's study, preparation, and testimony in

16

this case; and

17

(f)     other cases in which the witness has testified as an expert at trial or by deposition

18

in the last 5 years.

19

**ANSWER:**

20

Rainier Arms objects to this Interrogatory as attempting to avoid the case schedule. Rainier

21

Arms will provide this information when the case schedule and federal rules require it, not before.

22

23

Rainier Arms, LLC Responses to KING COUNTY DEFENDANTS' FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION
TO PLAINTIFF RAINIER ARMS, LLC - 8
[No. 3:22-cv-5403-DGE]

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 1:**  Provide the combined excise tax returns filed by Rainier Arms, LLC with the Washington Department of Revenue from January 2020 to December 2022.

**RESPONSE:**
The documents are produced with these responses.

**REQUEST FOR PRODUCTION NO. 2:**  Produce all Documents and Communications related to Interrogatory Number 10 above.

**RESPONSE:**

Rainier Arms objects to this RFP as attempting to avoid the case schedule. Rainier Arms will provide this information when the case schedule and federal rules require it, not before.

Rainier Arms, LLC Responses to KING COUNTY DEFENDANTS' FIRST SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION
TO PLAINTIFF RAINIER ARMS, LLC - 9
[No. 3:22-cv-5403-DGE]

1   May 31, 2023

2   ARD LAW GROUP PLLC                    COOPER & KIRK, PLLC

3

4   By: _____          _____
                                          David H. Thompson
                                          dthompson@cooperkirk.com
5
    Joel B. Ard, WSBA # 40104
6   ARD LAW GROUP PLLC                    _____
    P.O. Box 11633                        Peter A. Patterson
7   Bainbridge Island, WA 98110           ppatterson@cooperkirk.com
    206.701.9243
8   Joel@Ard.law                          _____
    ATTORNEYS FOR PLAINTIFFS              William V. Bergstrom
9                                         wbergstrom@cooperkirk.com

10                                        1523 New Hampshire Avenue, N.W.
                                          Washington, D.C. 20036
11                                        (202) 220-9600
                                          (202) 220-9601 (fax)
12
                                          FIREARMS POLICY COALITION
13

14                                        _____
                                          Cody J. Wisniewski
15                                        5550 Painted Mirage Road
                                          Las Vegas, NV 89149
16                                        916-378-5785
                                          cwi@fpchq.org
17
                                          MOUNTAIN STATES LEGAL
18                                        FOUNDATION

19                                        _____
                                          Brian A Abbas
20                                        2596 S Lewis Way
                                          Lakewood, CO 80227
21                                        303-292-2021
                                          babbas@mslegal.org

22

23   Rainier Arms, LLC Responses to KING COUNTY DEFENDANTS' FIRST SET OF
     INTERROGATORIES AND REQUESTS FOR PRODUCTION
     TO PLAINTIFF RAINIER ARMS, LLC - 10
     [No. 3:22-cv-5403-DGE]

1

## <u>VERIFICATION OF ANSWER TO INTERROGATORIES</u>

2     I, Geoff Cole, declare:

3         1.      I have read the foregoing Answers to the State Defendants' Interrogatories.

4         2.      I believe, based on reasonable inquiry, that the foregoing Answers are true and

5   correct to the best of my knowledge, information and belief.

          3.      I verify under penalty of perjury that the foregoing is true and correct.
6
7   Executed this 31st day of May, 2023.

8                                               _____
9                                               Geoff Cole

10

11

12

13

14

15

16

17

18

19

20

21

22

23   Rainier Arms, LLC Responses to KING COUNTY DEFENDANTS' FIRST SET OF
     INTERROGATORIES AND REQUESTS FOR PRODUCTION
     TO PLAINTIFF RAINIER ARMS, LLC - 11
     [No. 3:22-cv-5403-DGE]

# Exhibit 2

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

_____

|                           |   |                      |
|---------------------------|---|----------------------|
| GABRIELLA SULLIVAN, et al., | ) | 3:22-cv-5403-DGE    |
|                           | ) |                      |
|              Plaintiffs,  | ) | Tacoma, Washington   |
|                           | ) |                      |
| v.                        | ) | September 23, 2022   |
|                           | ) |                      |
| BOB FURGUSON, et al.,     | ) | Motion Hearing       |
|                           | ) |                      |
|              Defendants.  | ) | 2:00 p.m.            |

_____

VERBATIM REPORT OF PROCEEDINGS
BEFORE THE HONORABLE DAVID G. ESTUDILLO
UNITED STATES DISTRICT JUDGE
_____

Proceedings stenographically reported and transcribed
With computer-aided technology

```
 1
 2                          APPEARANCES
 3

 4     For the Plaintiffs:      JOEL B. ARD
                                Ard Law Group
 5                              P.O. Box 11633
                                Bainbridge Island, Washington
 6
                                WILLIAM BERGSTROM
 7                              PETER A. PATTERSON
                                Cooper & Kirk
 8                              1523 New Hampshire Avenue NW
                                Washington, DC
 9

10     For the Defendants       ANDREW R.W. HUGHES
       Ferguson and             Attorney General's Office
11     Batiste:                 800 Fifth Avenue
                                Suite 2000
12                              Seattle, Washington  98104-3188

13     For the Defendants       ANN MARIE SUMMERS
       Satterberg and          DAVID J.W. HACKETT
14     Cole-Tindall:            King County Prosecutor's Office
                                1191 Second Avenue
15                              Suite 1700
                                Seattle, Washington
16
       For the Defendants       CHRISTINE M. PALMER
17     Gese and Enright:        Kitsap County Prosecutor's Office
                                614 Division Street
18                              MS-35A
                                Port Orchard, Washington
19
       For the Defendants       CALLIE A. CASTILLO
20     Scott and Tillotson:     Lane Powell
                                1420 Fifth Avenue
21                              Suite 4200
                                Seattle, Washington
22
       For the Proposed         ZACHARY J. PEKELIS
23     Intervener Defendant     Pacifica Law Group LLP
       Alliance for Gun         1191 Second Avenue
24     Responsibility:          Suite 2000
                                Seattle, Washington
25
```

1  need for discovery and/or the reason not to engage in

2  discovery.  I am not sure who wants to go first.

3      I think plaintiff, of course, indicates no discovery is

4  needed, and I am not sure who officially did the complete

5  response from the defense side.  The State defendants

6  indicate that some discovery is required.

7      From the plaintiff's side, any comments you want to make?

8  I have read your position.  Anything you think the Court

9  should focus on on that issue at this point?

10          MR. BERGSTROM:  No.  I'll be very brief.  I would

11  highlight the *Bruen* test is new.  It is fairly clear what

12  matters and what doesn't here.  The sort of facts that matter

13  to the merits of this case are not the facts found in

14  discovery.  Things that are known facts about the laws and

15  about the historical tradition, that is something we think we

16  don't need discovery on.

17      The other two issues the State raises are damages and

18  plaintiffs' standing.  We don't think -- again, the

19  plaintiffs' standing, we don't think facts that go to

20  standing in this case are really in dispute here.  We don't

21  think discovery is necessary on those either.

22      Rainier Arms is a dealer.  They have stopped selling these

23  magazines because of the ban.  Our two individual plaintiffs

24  cannot purchase them and are not purchasing them because of

25  the ban.  We don't think discovery would be fruitful on

those.

Regarding damages, I would say quickly, we said in our submission that we were planning on amending the Complaint. We have discussed it some more. I think we could stipulate away damages. Either way, we are not seeking damages in this case. We think discovery on that point is also unnecessary.

THE COURT: Thank you. Let me ask you a brief question about the legislative facts or historical context. What do you envision presenting to the Court in your motion in support for plaintiff's position on why this history, the legislative facts support a finding of the current regulations in violation of the Second Amendment? What would you be presenting? Some case law? Specific statutes? Are you going to give me a summary of what you believe the history incorporates, and who is going to present that summary of the history?

MR. BERGSTROM: Good question. First, I would say under *Bruen* the burden is actually on the defendants to present that history, to prove their law is constitutional under that history.

We would intend to rely on publicly available sources: historical statutes, Law Review articles, things of that nature to present that history.

THE COURT: Let me hear from the defense side, the State defendants.

1   with regard to the current motions on behalf of King County,

2   Kitsap and Intervener Alliance, they are on my priority list.

3   I do hope to get to them on a sooner-than-later basis, but I

4   can't give you a date right now unfortunately.

5        All right.  Thank you.  Have a good rest of your

6   afternoon.  I appreciate you all being here and hopefully you

7   can enjoy the rest of your weekend.

8            MR. BERGSTROM:  Thank you.

9            THE COURT:  Thank you.

10                (The proceedings adjourned.)

11

12

13                  C E R T I F I C A T E

14

15

16       I certify that the foregoing is a correct transcript from

17   the record of proceedings in the above-entitled matter.

18

19

20

21   */s/ Angela Nicolavo*

22   ANGELA NICOLAVO
     COURT REPORTER

23

24

25

Exhibit 3

CERTIFICATION OF ENROLLMENT

**ENGROSSED SUBSTITUTE SENATE BILL 5078**

Chapter 104, Laws of 2022

67th Legislature
2022 Regular Session

FIREARMS—LARGE CAPACITY MAGAZINES

EFFECTIVE DATE: July 1, 2022

Passed by the Senate February 9, 2022
  Yeas 28  Nays 20

DENNY HECK
**President of the Senate**

Passed by the House March 4, 2022
  Yeas 55  Nays 42

LAURIE JINKINS
**Speaker of the House of
Representatives**

Approved March 23, 2022 10:34 AM

CERTIFICATE

I, Sarah Bannister, Secretary of
the Senate of the State of
Washington, do hereby certify that
the attached is **ENGROSSED
SUBSTITUTE SENATE BILL 5078** as
passed by the Senate and the House
of Representatives on the dates
hereon set forth.

SARAH BANNISTER
**Secretary**

FILED

March 23, 2022

JAY INSLEE
**Governor of the State of Washington**

**Secretary of State
State of Washington**

# ENGROSSED SUBSTITUTE SENATE BILL 5078

Passed Legislature - 2022 Regular Session

**State of Washington**      **67th Legislature**      **2021 Regular Session**

**By** Senate Law & Justice (originally sponsored by Senators Liias, Kuderer, Darneille, Hunt, Nguyen, Pedersen, and Wilson, C.; by request of Attorney General)

READ FIRST TIME 01/29/21.

1    AN ACT Relating to establishing firearms-related safety measures
2  to increase public safety by prohibiting the manufacture,
3  importation, distribution, selling, and offering for sale of large
4  capacity magazines, and by providing limited exemptions applicable to
5  licensed firearms manufacturers and dealers for purposes of sale to
6  armed forces branches and law enforcement agencies for purposes of
7  sale or transfer outside the state; amending RCW 9.41.010; adding new
8  sections to chapter 9.41 RCW; creating a new section; prescribing
9  penalties; and providing an effective date.

10   BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

11    NEW SECTION.  **Sec. 1.** The legislature finds and declares that
12  gun violence is a threat to the public health and safety of
13  Washingtonians. Firearms equipped with large capacity magazines
14  increase casualties by allowing a shooter to keep firing for longer
15  periods of time without reloading. Large capacity magazines have been
16  used in all 10 of the deadliest mass shootings since 2009, and mass
17  shooting events from 2009 to 2018 where the use of large capacity
18  magazines caused twice as many deaths and 14 times as many injuries.
19  Documentary evidence following gun rampages, including the 2014
20  shooting at Seattle Pacific University, reveals many instances where
21  victims were able to escape or disarm the shooter during a pause to

ESSB 5078.SL

1  reload, and such opportunities are necessarily reduced when large
2  capacity magazines are used. In addition, firearms equipped with
3  large capacity magazines account for an estimated 22 to 36 percent of
4  crime guns and up to 40 percent of crime guns used in serious violent
5  crimes. Based on this evidence, and on studies showing that mass
6  shooting fatalities declined during the 10-year period when the
7  federal assault weapon and large capacity magazine ban was in effect,
8  the legislature finds that restricting the sale, manufacture, and
9  distribution of large capacity magazines is likely to reduce gun
10 deaths and injuries. The legislature further finds that this is a
11 well-calibrated policy based on evidence that magazine capacity
12 limits do not interfere with responsible, lawful self-defense. The
13 legislature further finds that the threats to public safety posed by
14 large capacity magazines are heightened given current conditions. Our
15 country is in the midst of a pandemic, economic recession, social
16 tensions, and reckonings over racial justice. The years 2020 and 2021
17 have seen a sharp increase in gun sales and gun violence, as well as
18 fears over gun violence and incidents of armed intimidation. In this
19 volatile atmosphere, the legislature declares that it is time to
20 enhance public health and safety by limiting the sale of large
21 capacity magazines. The legislature intends to limit the prospective
22 sale of large capacity magazines, while allowing existing legal
23 owners to retain the large capacity magazines they currently own.

24     **Sec. 2.**  RCW 9.41.010 and 2021 c 215 s 93 are each amended to
25 read as follows:
26     Unless the context clearly requires otherwise, the definitions in
27 this section apply throughout this chapter.
28     (1) "Antique firearm" means a firearm or replica of a firearm not
29 designed or redesigned for using rim fire or conventional center fire
30 ignition with fixed ammunition and manufactured in or before 1898,
31 including any matchlock, flintlock, percussion cap, or similar type
32 of ignition system and also any firearm using fixed ammunition
33 manufactured in or before 1898, for which ammunition is no longer
34 manufactured in the United States and is not readily available in the
35 ordinary channels of commercial trade.
36     (2) "Barrel length" means the distance from the bolt face of a
37 closed action down the length of the axis of the bore to the crown of
38 the muzzle, or in the case of a barrel with attachments to the end of
39 any legal device permanently attached to the end of the muzzle.

1    (3) "Bump-fire stock" means a butt stock designed to be attached
2    to a semiautomatic firearm with the effect of increasing the rate of
3    fire achievable with the semiautomatic firearm to that of a fully
4    automatic firearm by using the energy from the recoil of the firearm
5    to generate reciprocating action that facilitates repeated activation
6    of the trigger.
7    (4) "Crime of violence" means:
8    (a) Any of the following felonies, as now existing or hereafter
9    amended: Any felony defined under any law as a class A felony or an
10   attempt to commit a class A felony, criminal solicitation of or
11   criminal conspiracy to commit a class A felony, manslaughter in the
12   first degree, manslaughter in the second degree, indecent liberties
13   if committed by forcible compulsion, kidnapping in the second degree,
14   arson in the second degree, assault in the second degree, assault of
15   a child in the second degree, extortion in the first degree, burglary
16   in the second degree, residential burglary, and robbery in the second
17   degree;
18   (b) Any conviction for a felony offense in effect at any time
19   prior to June 6, 1996, which is comparable to a felony classified as
20   a crime of violence in (a) of this subsection; and
21   (c) Any federal or out-of-state conviction for an offense
22   comparable to a felony classified as a crime of violence under (a) or
23   (b) of this subsection.
24   (5) "Curio or relic" has the same meaning as provided in 27
25   C.F.R. Sec. 478.11.
26   (6) "Dealer" means a person engaged in the business of selling
27   firearms at wholesale or retail who has, or is required to have, a
28   federal firearms license under 18 U.S.C. Sec. 923(a). A person who
29   does not have, and is not required to have, a federal firearms
30   license under 18 U.S.C. Sec. 923(a), is not a dealer if that person
31   makes only occasional sales, exchanges, or purchases of firearms for
32   the enhancement of a personal collection or for a hobby, or sells all
33   or part of his or her personal collection of firearms.
34   (7) "Family or household member" has the same meaning as in RCW
35   7.105.010.
36   (8) "Felony" means any felony offense under the laws of this
37   state or any federal or out-of-state offense comparable to a felony
38   offense under the laws of this state.
39   (9) "Felony firearm offender" means a person who has previously
40   been convicted or found not guilty by reason of insanity in this

1  state of any felony firearm offense. A person is not a felony firearm
2  offender under this chapter if any and all qualifying offenses have
3  been the subject of an expungement, pardon, annulment, certificate,
4  or rehabilitation, or other equivalent procedure based on a finding
5  of the rehabilitation of the person convicted or a pardon, annulment,
6  or other equivalent procedure based on a finding of innocence.
7      (10) "Felony firearm offense" means:
8      (a) Any felony offense that is a violation of this chapter;
9      (b) A violation of RCW 9A.36.045;
10     (c) A violation of RCW 9A.56.300;
11     (d) A violation of RCW 9A.56.310;
12     (e) Any felony offense if the offender was armed with a firearm
13  in the commission of the offense.
14     (11) "Firearm" means a weapon or device from which a projectile
15  or projectiles may be fired by an explosive such as gunpowder.
16  "Firearm" does not include a flare gun or other pyrotechnic visual
17  distress signaling device, or a powder-actuated tool or other device
18  designed solely to be used for construction purposes.
19     (12) "Gun" has the same meaning as firearm.
20     (13) "Intimate partner" has the same meaning as provided in RCW
21  7.105.010.
22     (14) "Law enforcement officer" includes a general authority
23  Washington peace officer as defined in RCW 10.93.020, or a specially
24  commissioned Washington peace officer as defined in RCW 10.93.020.
25  "Law enforcement officer" also includes a limited authority
26  Washington peace officer as defined in RCW 10.93.020 if such officer
27  is duly authorized by his or her employer to carry a concealed
28  pistol.
29     (15) "Lawful permanent resident" has the same meaning afforded a
30  person "lawfully admitted for permanent residence" in 8 U.S.C. Sec.
31  1101(a)(20).
32     (16) "Licensed collector" means a person who is federally
33  licensed under 18 U.S.C. Sec. 923(b).
34     (17) "Licensed dealer" means a person who is federally licensed
35  under 18 U.S.C. Sec. 923(a).
36     (18) "Loaded" means:
37     (a) There is a cartridge in the chamber of the firearm;
38     (b) Cartridges are in a clip that is locked in place in the
39  firearm;

1    (c) There is a cartridge in the cylinder of the firearm, if the
2    firearm is a revolver;

3    (d) There is a cartridge in the tube or magazine that is inserted
4    in the action; or

5    (e) There is a ball in the barrel and the firearm is capped or
6    primed if the firearm is a muzzle loader.

7    (19) "Machine gun" means any firearm known as a machine gun,
8    mechanical rifle, submachine gun, or any other mechanism or
9    instrument not requiring that the trigger be pressed for each shot
10   and having a reservoir clip, disc, drum, belt, or other separable
11   mechanical device for storing, carrying, or supplying ammunition
12   which can be loaded into the firearm, mechanism, or instrument, and
13   fired therefrom at the rate of five or more shots per second.

14   (20) "Manufacture" means, with respect to a firearm or large
15   capacity magazine, the fabrication or construction of a firearm or
16   large capacity magazine.

17   (21) "Nonimmigrant alien" means a person defined as such in 8
18   U.S.C. Sec. 1101(a)(15).

19   (22) "Person" means any individual, corporation, company,
20   association, firm, partnership, club, organization, society, joint
21   stock company, or other legal entity.

22   (23) "Pistol" means any firearm with a barrel less than
23   ((sixteen)) 16 inches in length, or is designed to be held and fired
24   by the use of a single hand.

25   (24) "Rifle" means a weapon designed or redesigned, made or
26   remade, and intended to be fired from the shoulder and designed or
27   redesigned, made or remade, and intended to use the energy of the
28   explosive in a fixed metallic cartridge to fire only a single
29   projectile through a rifled bore for each single pull of the trigger.

30   (25) "Sale" and "sell" mean the actual approval of the delivery
31   of a firearm in consideration of payment or promise of payment.

32   (26) "Secure gun storage" means:

33   (a) A locked box, gun safe, or other secure locked storage space
34   that is designed to prevent unauthorized use or discharge of a
35   firearm; and

36   (b) The act of keeping an unloaded firearm stored by such means.

37   (27) "Semiautomatic assault rifle" means any rifle which utilizes
38   a portion of the energy of a firing cartridge to extract the fired
39   cartridge case and chamber the next round, and which requires a
40   separate pull of the trigger to fire each cartridge.

1    "Semiautomatic assault rifle" does not include antique firearms,
2   any firearm that has been made permanently inoperable, or any firearm
3   that is manually operated by bolt, pump, lever, or slide action.
4       (28) "Serious offense" means any of the following felonies or a
5   felony attempt to commit any of the following felonies, as now
6   existing or hereafter amended:
7       (a) Any crime of violence;
8       (b) Any felony violation of the uniform controlled substances
9   act, chapter 69.50 RCW, that is classified as a class B felony or
10  that has a maximum term of imprisonment of at least ((ten)) 10 years;
11      (c) Child molestation in the second degree;
12      (d) Incest when committed against a child under age ((fourteen))
13  14;
14      (e) Indecent liberties;
15      (f) Leading organized crime;
16      (g) Promoting prostitution in the first degree;
17      (h) Rape in the third degree;
18      (i) Drive-by shooting;
19      (j) Sexual exploitation;
20      (k) Vehicular assault, when caused by the operation or driving of
21  a vehicle by a person while under the influence of intoxicating
22  liquor or any drug or by the operation or driving of a vehicle in a
23  reckless manner;
24      (l) Vehicular homicide, when proximately caused by the driving of
25  any vehicle by any person while under the influence of intoxicating
26  liquor or any drug as defined by RCW 46.61.502, or by the operation
27  of any vehicle in a reckless manner;
28      (m) Any other class B felony offense with a finding of sexual
29  motivation, as "sexual motivation" is defined under RCW 9.94A.030;
30      (n) Any other felony with a deadly weapon verdict under RCW
31  9.94A.825;
32      (o) Any felony offense in effect at any time prior to June 6,
33  1996, that is comparable to a serious offense, or any federal or out-
34  of-state conviction for an offense that under the laws of this state
35  would be a felony classified as a serious offense; or
36      (p) Any felony conviction under RCW 9.41.115.
37      (29) "Short-barreled rifle" means a rifle having one or more
38  barrels less than ((sixteen)) 16 inches in length and any weapon made
39  from a rifle by any means of modification if such modified weapon has
40  an overall length of less than ((twenty-six)) 26 inches.

1      (30) "Short-barreled shotgun" means a shotgun having one or more
2   barrels less than ((eighteen)) 18 inches in length and any weapon
3   made from a shotgun by any means of modification if such modified
4   weapon has an overall length of less than ((twenty-six)) 26 inches.

5      (31) "Shotgun" means a weapon with one or more barrels, designed
6   or redesigned, made or remade, and intended to be fired from the
7   shoulder and designed or redesigned, made or remade, and intended to
8   use the energy of the explosive in a fixed shotgun shell to fire
9   through a smooth bore either a number of ball shot or a single
10  projectile for each single pull of the trigger.

11     (32) "Transfer" means the intended delivery of a firearm to
12  another person without consideration of payment or promise of payment
13  including, but not limited to, gifts and loans. "Transfer" does not
14  include the delivery of a firearm owned or leased by an entity
15  licensed or qualified to do business in the state of Washington to,
16  or return of such a firearm by, any of that entity's employees or
17  agents, defined to include volunteers participating in an honor
18  guard, for lawful purposes in the ordinary course of business.

19     (33) "Undetectable firearm" means any firearm that is not as
20  detectable as 3.7 ounces of 17-4 PH stainless steel by walk-through
21  metal detectors or magnetometers commonly used at airports or any
22  firearm where the barrel, the slide or cylinder, or the frame or
23  receiver of the firearm would not generate an image that accurately
24  depicts the shape of the part when examined by the types of X-ray
25  machines commonly used at airports.

26     (34) "Unlicensed person" means any person who is not a licensed
27  dealer under this chapter.

28     (35) "Untraceable firearm" means any firearm manufactured after
29  July 1, 2019, that is not an antique firearm and that cannot be
30  traced by law enforcement by means of a serial number affixed to the
31  firearm by a federally licensed manufacturer or importer.

32     (36) "Large capacity magazine" means an ammunition feeding device
33  with the capacity to accept more than 10 rounds of ammunition, or any
34  conversion kit, part, or combination of parts, from which such a
35  device can be assembled if those parts are in possession of or under
36  the control of the same person, but shall not be construed to include
37  any of the following:

38     (a) An ammunition feeding device that has been permanently
39  altered so that it cannot accommodate more than 10 rounds of
40  ammunition;

1    (b) A 22 caliber tube ammunition feeding device; or

2    (c) A tubular magazine that is contained in a lever-action
3    firearm.

4    (37) "Distribute" means to give out, provide, make available, or
5    deliver a firearm or large capacity magazine to any person in this
6    state, with or without consideration, whether the distributor is in-
7    state or out-of-state. "Distribute" includes, but is not limited to,
8    filling orders placed in this state, online or otherwise.
9    "Distribute" also includes causing a firearm or large capacity
10   magazine to be delivered in this state.

11   (38) "Import" means to move, transport, or receive an item from a
12   place outside the territorial limits of the state of Washington to a
13   place inside the territorial limits of the state of Washington.
14   "Import" does not mean situations where an individual possesses a
15   large capacity magazine when departing from, and returning to,
16   Washington state, so long as the individual is returning to
17   Washington in possession of the same large capacity magazine the
18   individual transported out of state.

19   NEW SECTION. **Sec. 3.** A new section is added to chapter 9.41 RCW
20   to read as follows:

21   (1) No person in this state may manufacture, import, distribute,
22   sell, or offer for sale any large capacity magazine, except as
23   authorized in this section.

24   (2) Subsection (1) of this section does not apply to any of the
25   following:

26   (a) The manufacture, importation, distribution, offer for sale,
27   or sale of a large capacity magazine by a licensed firearms
28   manufacturer for the purposes of sale to any branch of the armed
29   forces of the United States or the state of Washington, or to a law
30   enforcement agency in this state for use by that agency or its
31   employees for law enforcement purposes;

32   (b) The importation, distribution, offer for sale, or sale of a
33   large capacity magazine by a dealer that is properly licensed under
34   federal and state law for the purpose of sale to any branch of the
35   armed forces of the United States or the state of Washington, or to a
36   law enforcement agency in this state for use by that agency or its
37   employees for law enforcement purposes;

38   (c) The distribution, offer for sale, or sale of a large capacity
39   magazine to or by a dealer that is properly licensed under federal

1 and state law where the dealer acquires the large capacity magazine
2 from a person legally authorized to possess or transfer the large
3 capacity magazine for the purpose of selling or transferring the
4 large capacity magazine to a person who does not reside in this
5 state.
6     (3) A person who violates this section is guilty of a gross
7 misdemeanor punishable under chapter 9A.20 RCW.

8     <u>NEW SECTION.</u>  **Sec. 4.**  A new section is added to chapter 9.41 RCW
9 to read as follows:
10     Distributing, selling, offering for sale, or facilitating the
11 sale, distribution, or transfer of a large capacity magazine online
12 is an unfair or deceptive act or practice or unfair method of
13 competition in the conduct of trade or commerce for purposes of the
14 consumer protection act, chapter 19.86 RCW.

15     <u>NEW SECTION.</u>  **Sec. 5.**  If any provision of this act or its
16 application to any person or circumstance is held invalid, the
17 remainder of the act or the application of the provision to other
18 persons or circumstances is not affected.

19     <u>NEW SECTION.</u>  **Sec. 6.**  This act takes effect July 1, 2022.

    Passed by the Senate February 9, 2022.
    Passed by the House March 4, 2022.
    Approved by the Governor March 23, 2022.
    Filed in Office of Secretary of State March 23, 2022.

**--- END ---**