1                                 HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GABRIELLA SULLIVAN, et al., | No. 3:22-cv-05403-DGE |
| *Plaintiffs,* | ALLIANCE FOR GUN RESPONSIBILITY'S RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT |
| v. | |
| BOB FERGUSON, et al., | |
| *Defendants,* | |
| and | NOTE ON MOTION CALENDAR: October 16, 2023 |
| ALLIANCE FOR GUN RESPONSIBILITY, | ORAL ARGUMENT REQUESTED |
| *Intervenor-Defendant.* | |

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.    FACTS ........................................................................................................ 2

III.   ARGUMENT ............................................................................................. 2

    A.  Plaintiffs' Arguments Have Been Rejected by Eight Federal Courts ............................. 2

    B.  Legal Standard Under *Bruen* ........................................................... 6

    C.  LCMs Are Not Protected by the Second Amendment's Plain Text ................................ 6

       1. LCMs are accessories, not arms ..................................................... 6

       2. LCMs are not in common use for self-defense ............................... 9

       3. LCMs are dangerous and unusual .................................................. 12

    D.  The Act is Consistent With Our Historical Tradition of Firearm Regulation ............... 12

       1. LCM restrictions have ample historical antecedents ...................... 14

    E.  Plaintiffs' Arguments are Barred by Issue Preclusion .................................. 17

IV.   CONCLUSION ........................................................................................ 19

CERTIFICATE OF COMPLIANCE .................................................................. 19

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT- i
3:22-cv-05403-DGE

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF AUTHORITIES

**Federal Cases**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of N.J.*,
910 F.3d 106 (3d Cir. 2018) ................................................................................. 11

*Barnett v. Raoul*,
No. 3:23-cv-00209-SPM, 2023 WL 3160285 (S.D. Ill. Apr. 28, 2023) ..................................... 4

*Bevis v. City of Naperville*, No. 22 C,
4775, 2023 WL 2077392 (N.D. Ill. Feb. 17, 2023) ........................................................... 4, 16

*Caetano v. Massachusetts*,
577 U.S. 411 (2016) ................................................................................................ 10

*Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*,
--- F. Supp. 3d ----, No. CV 22-951-RGA,
2023 WL 2655150 (D. Del. Mar. 27, 2023) ................................................................. 4, 13, 16

*Duncan v. Bonta*,
19 F.4th 1087 (9th Cir. 2021) (en banc) ..................................................................... 10, 11

*Fyock v. Sunnyvale*,
779 F.3d 991 (9th Cir. 2015) .................................................................................... 8, 9

*Gospel Missions of Am. v. City of L.A.*,
328 F.3d 548 (9th Cir. 2003) .................................................................................... 19

*Hanson v. District of Columbia*,
No. 22-2256 (RC), 2023 WL 3019777 (D.D.C. Apr. 20, 2023) ..................................... 4, 11, 16

*Hartford v. Ferguson*, --- F. Supp. 3d ----,
No. 3:23-CV-05364-RJB,
2023 WL 3836230 (W.D. Wash. June 6, 2023) ................................................................. 4, 13

*Heller v. District of Columbia*,
554 U.S. 570 (2008) ....................................................................................... 6, 8, 10, 12

*Herrera v. Raoul*,
No. 23 CV 532, 2023 WL 3074799 (N.D. Ill. Apr. 25, 2023) .......................................... 4, 16

*Hydranautics v. FilmTec Corp.*,
204 F.3d 880 (9th Cir. 2000) .................................................................................... 18

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Jackson v. City and County of San Francisco*,
  746 F.3d 953 (9th Cir. 2014) ................................................................................. 8, 9

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ................................................................................................. 10

*Nat'l Ass'n for Gun Rights v. Lamont* (*NAGR*),
  No. CV 3:22-1118 (JBA),
  2023 WL 4975979 (D. Conn. Aug. 3, 2023) .................................... 4, 10, 13, 16

*New York State Rifle and Pistol Association, Inc. v. Bruen*,
  142 S. Ct. 2111 (2022) .................................................................................... passim

*Ocean State Tactical, LLC v. Rhode Island*,
  No. 22-CV-246 JJM-PAS, 2022 WL 17721175 (D.R.I. Dec. 14, 2022) ..................... 4, 7, 9, 11

*Oregon Firearms Fed'n v. Kotek* (*OFF*),
  --- F. Supp. 3d. ----, No. 2:22-CV-01815-IM,
  2023 WL 4541027 (D. Or. July 14, 2023) ......................................................... passim

*Robi v. Five Platters, Inc.*,
  838 F.2d 318 (9th Cir. 1988) ................................................................................... 18

*Teter v. Lopez*,
  --- F.4th ----, No. 20-15948, 2023 WL 5008203 (9th Cir. Aug. 7, 2023) ............................. 13

*United States v. Alaniz*,
  69 F.4th 1124 (9th Cir. 2023) ................................................................................. 13

*United States v. Cox*,
  906 F.3d 1170 (10th Cir. 2018) ................................................................................. 7

*United States v. Saleem*,
  --- F. Supp. 3d ----, No. 3:21-cr-00086-FDW-DSC, 2023 WL 2334417
  (W.D.N.C. Mar. 2, 2023) ........................................................................................... 7

**State Cases**

*Rocky Mountain Gun Owners v. Polis*,
  467 P.3d 314 (Colo. 2020) ....................................................................................... 11

*State v. Misch*,
  256 A.3d 519 (Vt. 2021) ........................................................................................... 11

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT- iii
3:22-cv-05403-DGE

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**Federal Statutes**

26 U.S.C. §§ 5845(a), 5861(d)............................................................................ 7

Pub. L. 103-322, 108 Stat. 1796 ......................................................................... 2

**State Statutes**

720 ILCS 5/24-1.10(a)(1) ................................................................................... 3

Colo. Rev. Stat. § 18-12-301(2)(a)(I) ................................................................ 3

Del. Code Ann. tit. 11, § 1469(a)........................................................................ 3

Vt. Stat. tit. 13, § 4021(e)(1) .............................................................................. 3

**Other Authorities**

C. Sunstein, *On Analogical Reasoning*,
    106 Harv. L. Rev. 741 (1993) .................................................................... 14

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT- iv
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I.    INTRODUCTION

Eight federal district courts have rejected Plaintiffs' arguments challenging reasonable regulations of large capacity magazines (LCMs). In fact, Plaintiffs Second Amendment Foundation (SAF) and the Firearms Policy Coalition (FPC) recently sued to invalidate Oregon Ballot Measure 114 (Measure 114), a 2022 initiative that also restricts LCMs. *See Oregon Firearms Fed'n v. Kotek* (*OFF*), --- F. Supp. 3d. ----, No. 2:22-CV-01815-IM, 2023 WL 4541027 (D. Or. July 14, 2023) (lead case), *appeal docketed*, No. 23-35540 (9th Cir.).[1] After expedited but substantial discovery, extensive briefing, and a six-day bench trial, SAF and FPC's challenge suffered a total defeat. Yet just a month after their loss in Oregon, SAF and FPC raise the same arguments before this Court to challenge Washington's LCM restrictions. Though the *OFF* decision is so far the only final judgment on the merits in a post-*Bruen* challenge to an LCM regulation, eight other federal courts have rejected efforts by the gun lobby (including SAF and FPC) to preliminarily enjoin state laws regulating either LCMs or assault weapons (which mass shooters frequently use together), after concluding that the challengers were unlikely to succeed on the merits. Plaintiffs present no persuasive reason—evidentiary or legal—for this Court to disagree with those well-reason decisions.

Plaintiffs fail to carry their burden to demonstrate that Washington's LCM regulations implicate the Second Amendment. They do not—LCMs are not "arms" under the plain text of the Constitution. Further, Intervenor-Defendant Alliance for Gun Responsibility (the Alliance) and State Defendants present ample, unrebutted evidence that Engrossed Substitute Senate Bill 5078

---

[1] SAF and FPC are plaintiffs in *Fitz v. Rosenblum*, No. 3:22-cv-01859-IM (D. Or.), which was consolidated with three other cases challenging Measure 114, with *OFF* designated as the lead case. *OFF*, 2023 WL 4541027, at *1 n.1. This motion uses *OFF* to refer to the consolidated cases.

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 1
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(ESSB 5078 or the Act) is consistent with our nation's historical tradition of firearm regulation. LCMs are dangerous and unusual weapons that represent both a dramatic technological advancement and have contributed to an unprecedented societal concern—the epidemic of mass shootings. The Defendants have assembled a robust record of analogous restrictions on weapons. Compared to these laws, ESSB 5078's burden on self-defense is non-existent, while its justification—increasing the safety of all Washingtonians—is robust. This Court should join the growing chorus of federal judges and grant summary judgment in Defendants' favor.

## II.     FACTS

The Alliance joins in full State Defendants' Response, Dkt. #114, and incorporates by reference the factual background and procedural history set forth therein.

## III.     ARGUMENT

### A.  Plaintiffs' Arguments Have Been Rejected by Eight Federal Courts

Plaintiffs' suit is the latest in a series of unsuccessful challenges to state laws restricting LCMs or assault weapons. In 1994, Congress adopted the Violent Crime Control and Law Enforcement Act, commonly known as the federal Assault Weapons Ban, which generally restricted "large capacity ammunition feeding devices" (defined as magazines with capacity of more than 10 rounds) and "semiautomatic assault weapons." Pub. L. 103-322, §§ 110303(b), 110102(a), 108 Stat. 1796 (Sept. 13, 1994). The law sunsetted in 2004, but state and local jurisdictions stepped in to fill the regulatory gap. Today, nine states and the District of Columbia prohibit the sale, manufacture, transfer, or possession of assault weapons, while 15 jurisdictions

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 2
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

similarly restrict assault weapons.[2] Those 15 jurisdictions together contain over one-third of the U.S. population.[3] And the near-universal dividing line for detachable LCM capacity is ten rounds—the same number used by ESSB 5078. *Id.*[4]

Nine federal district courts have heard challenges to LCM or assault weapon regulations since the Supreme Court's decision in *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). These courts' analyses of LCM restrictions and assault weapons restrictions tend to dovetail, not only because both sets of laws are designed to address the same societal harms (gun violence and especially mass shootings) but because both share the same historical antecedents under *Bruen*'s history prong: a long national tradition of regulating dangerous weaponry. *Compare* Laws of 2022, ch. 104 § 1 (legislative finding that "[f]irearms equipped with large capacity magazines increase casualties by allowing a shooter to keep firing for longer periods of time without reloading" and "have been used in all 10 of the deadliest mass shootings since 2009"), *with* Laws of 2023, ch. 162 § 1 ("Assault weapons have been used in the deadliest mass shootings in the last decade. An assailant with an assault weapon can hurt and kill twice the number of people than an assailant with a handgun or nonassault rifle. This is because the additional features of an assault weapon . . . allow shooters to fire large number of rounds quickly.").

---

[2] Giffords L. Ctr., *Assault Weapons*, https://giffords.org/lawcenter/gun-laws/policy-areas/hardware-ammunition/assault-weapons/ (last visit Aug. 27, 2023); Giffords L. Ctr., *Large Capacity Magazines*, https://giffords.org/lawcenter/gun-laws/policy-areas/hardware-ammunition/large-capacity-magazines/ (last visit Aug. 27, 2023).

[3] *See* U.S. Census Bur., QuickFacts, https://www.census.gov/quickfacts/ (last visit Aug. 27, 2023).

[4] The four exceptions set limits at 17 rounds (Delaware), 15 rounds for handguns but 10 rounds for long guns (Illinois and Vermont), or 8 rounds for shotguns but 15 rounds for all other firearms (Colorado). Colo. Rev. Stat. § 18-12-301(2)(a)(I); Del. Code Ann. tit. 11, § 1469(a); 720 ILCS 5/24-1.10(a)(1); Vt. Stat. tit. 13, § 4021(e)(1).

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 3
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

So far, all but one of the nine courts to hear post-*Bruen* challenges to LCM or assault weapon restrictions have rejected them—including a court in this District. *Hartford v. Ferguson*, --- F. Supp. 3d ----, No. 3:23-CV-05364-RJB, 2023 WL 3836230, at *7 (W.D. Wash. June 6, 2023) (assault weapons); *Nat'l Ass'n for Gun Rights v. Lamont* (*NAGR*), No. CV 3:22-1118 (JBA), 2023 WL 4975979, at *26 (D. Conn. Aug. 3, 2023) (LCMs and assault weapons); *OFF*, 2023 WL 4541027, at *1 (LCMs); *Hanson v. District of Columbia*, No. 22-2256 (RC), 2023 WL 3019777, at *17 (D.D.C. Apr. 20, 2023) (LCMs); *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, --- F. Supp. 3d ----, No. CV 22-951-RGA, 2023 WL 2655150, at *13 (D. Del. Mar. 27, 2023) (LCMs and assault weapons); *Bevis v. City of Naperville*, No. 22 C 4775, 2023 WL 2077392, at *16 (N.D. Ill. Feb. 17, 2023) (LCMs and assault weapons); *Ocean State Tactical, LLC v. Rhode Island*, No. 22-CV-246 JJM-PAS, 2022 WL 17721175, at *16 (D.R.I. Dec. 14, 2022) (LCMs); *Herrera v. Raoul*, No. 23 CV 532, 2023 WL 3074799, at *7 (N.D. Ill. Apr. 25, 2023) (LCMs and assault weapons). In the one case to go the other way, the district court's preliminary injunction against Illinois's restrictions on LCMs and assault weapons was quickly stayed. *Barnett v. Raoul*, No. 3:23-cv-00209-SPM, 2023 WL 3160285, at *11 (S.D. Ill. Apr. 28, 2023), *stayed pending appeal*, No. 23-1825, Dkt. #30 (7th Cir. May 12, 2023).

In *OFF*, plaintiffs challenged Oregon's restrictions on the manufacture, sale, transfer, and possession of LCMs.[5] Six months after denying plaintiffs' motion for a temporary restraining order, the court held a full trial on the merits of the challenge. The plaintiffs, including SAF and

---

[5] Oregon's law, unlike Washington's, also generally prohibits possession of LCMs, except that "[c]urrent owners and inheritors of LCMs may" possess LCMs purchased before the law's effective date "at their home (or on property under their control), on the premises of a gun dealer, at shooting ranges, for recreational activities like hunting, at firearms competitions or exhibitions, for certain educational purposes, or during transport to or from one of these permissible locations." *OFF*, 2023 WL 4541027, at *6.

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 4
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the FPC, participated fully in the trial, presenting fact and expert witnesses challenging Oregon's law. SAF, FPC, and the other *OFF* plaintiffs raised the same legal arguments there that Plaintiffs raise here. They failed on every count.

First, the *OFF* court concluded that LCMs are not covered by the Second Amendment's plain text. 2023 WL 4541027, at *25. Specifically, the court held that LCMs are not "bearable arms," *id.* at *25–26; they are not in "common use today for self-defense," *id.* at *26–33; and they are "dangerous and unusual," *id.* at *33–34. Second, Judge Immergut concluded that Oregon's regulation of LCMs was consistent with our nation's historical tradition of firearm regulation. *Id.* at *34–36. Applying the *Bruen* framework, the court concluded that LCMs implicate both "unprecedented societal concerns" and "dramatic technological changes." *Id.* at *36–39 (quoting *Bruen*, 142 S. Ct. at 2132). The court also concluded that historical regulations impose a "comparable burden" on the right of armed self-defense, and that the burden is "comparably justified." *Id.* at *39–45.

Notably, many of the experts in this case testified in the *OFF* trial. The *OFF* court found credible and relied on the opinions of: (1) historical experts Dr. Brian DeLay, Dr. Kevin Sweeney, and Dr. Brennan Rivas, *id.* at *15; (2) social scientist Lucy Allen, whom the court deemed a "highly qualified and credible witness," *id.* at *12; and (3) Professor Louis Klarevas, whose research undergirded the court's findings that LCMs enhance the lethality of shooting events, *id.* at *34.

The *OFF* court's conclusions were well-reasoned and correct. Plaintiffs now repeat the same arguments in their motion for summary judgment. In this case, however, they offer no experts or fact witnesses—their only declarations are from the Plaintiffs themselves, in an attempt to establish standing. *See* Dkt. ##102–05. Their claim fails because they present no meaningful

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

evidence to support them; their legal theories defy *Bruen* and the overwhelming weight of authority applying it in analogous cases; and the doctrine of issue preclusion bars Plaintiffs from raising the same issues and arguments issues they litigated in *OFF* which the court rejected in a final judgment.

## B.  Legal Standard Under *Bruen*

The Alliance agrees with State Defendants' recitation of the *Bruen* standard. Dkt. #114 at 12.

## C.  LCMs Are Not Protected by the Second Amendment's Plain Text

### 1.  LCMs are accessories, not arms

An LCM is not an "Arm[]."U.S. Const. amend. II. It is a firearm accessory that is not necessary for any firearm to function—and thus not within the Second Amendment's plain text. Indeed, Plaintiffs all but admit that LCMs are not arms, arguing that "[f]irearms *equipped with the magazines* that Washington bans are 'arms.'" Dkt. #101 at 6 (emphasis added). To aid their cause, Plaintiffs conjure a new definition of "arms," arguing that LCMs are arms simply because they "are instruments that facilitate armed self-defense." *Id.* at 10. This supposed definition takes language from *Bruen* out of context. In reiterating that the meaning of "arms" in the Second Amendment "does not apply 'only [to] those arms in existence in the 18th century,'" *Bruen* confirmed that "though the Second Amendment's definition of 'arms' is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense." 142 S. Ct. at 2132 (quoting *Heller v. District of Columbia*, 554 U.S. 570, 582 (2008)). This passage did not purport to redefine "arms" as any "instruments that facilitate armed self-defense," as Plaintiffs now contend. Such a broad understanding would sweep far beyond

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 6
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

"weapons" and "armour," applying to not just firearm accessories (like holsters and gun safes) but practically every self-defense product imaginable—from burglar alarms to night-vision goggles.

Plaintiffs' chosen example—laser sights—demonstrates the flaw in their understanding of the meaning of "arms." According to Plaintiffs, these sights that assist a shooter in aiming, cannot be regulated by the Second Amendment, and thus neither can LCMs. Dkt. #101 at 11–12. They overlook that laser sights are directly analogous to another accessory unprotected by the Second Amendment: firearm silencers. In *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018), the court rejected a challenge to a federal law prohibiting possession of unregistered firearm silencers, 26 U.S.C. §§ 5845(a), 5861(d). The challengers claimed that silencers were "commonly used by law-abiding citizens for lawful purposes." *Cox*, 906 F.3d at 1186. But the court declined to reach the common-use question because silencers failed "a more basic question." *Id.* Invoking *Heller*'s definition of "arms," the Tenth Circuit reasoned that a "silencer is a firearm accessory[,] . . . not a weapon in itself (nor . . . 'armour of defence')," so it "can't be a 'bearable arm' protected by the Second Amendment." *Id.*; *United States v. Peterson*, CR 22-231, 2023 WL 5383664, at *2 (E.D. La. Aug. 21, 2023) (confirming silencers are not "arms" post-*Bruen*); *United States v. Saleem*, --- F. Supp. 3d ----, No. 3:21-cr-00086-FDW-DSC, 2023 WL 2334417, at *9 (W.D.N.C. Mar. 2, 2023) ("[S]ilencers, because they are not independently operable and do not serve any central self-defense purpose, are not firearms within the meaning of the Second Amendment but are instead firearm accessories that fall outside its protection."). By itself, an LCM is no more an "arm" than a silencer, laser sight, or other accessory, which is precisely how manufacturers themselves market LCMs. *See Ocean State Tactical*, 2022 WL 17721175, at *13 n.26; Dkt. #116-1 (Busse Rep.) at 6.

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 7
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Plaintiffs' argument that LCMs are arms also rests on the false premise that ESSB 5078 regulates *all* magazines. *See* Dkt. #101 at 10–12. The Act does not regulate all magazines, it regulates only *large-capacity* magazines. As the *OFF* court recognized, the analysis must focus on LCMs specifically rather than magazines generally, and no firearm requires an LCM to operate. 2023 WL 4541027 at *26 ("Based on the evidence presented at trial, this Court finds that while magazines may often be necessary to render a firearm operable, LCMs are not."). So too here. Plaintiffs present no evidence to support their contention that LCMs are required to make any firearm operable. In contrast, unrebutted evidence shows that "there is no known firearm that requires a large-capacity magazine to function as designed." Busse Rep. at 7.

Plaintiffs' reliance on *Jackson v. City and County of San Francisco*, 746 F.3d 953 (9th Cir. 2014), and *Fyock v. Sunnyvale*, 779 F.3d 991 (9th Cir. 2015), is misplaced. Neither case holds that LCMs are protected "Arms" as a matter of constitutional *text*. They instead addressed whether the challenged laws "regulate[d] conduct *historically* understood to be protected by the Second Amendment"—a separate question from *Bruen*'s text-focused first step. *Jackson*, 746 F.3d at 967 (emphasis added) (cleaned up); *see Fyock*, 779 F.3d at 997 (considering "whether the regulation resembled prohibitions *historically* exempted from the Second Amendment") (emphasis added).

In *Jackson*, the court upheld a restriction on hollow-point bullets but concluded that "prohibitions on the sale of ammunition do not fall outside 'the historical understanding of the scope of the [Second Amendment] right.'" *Id.* at 968 (quoting *Heller*, 554 U.S. at 625). The court reasoned that "the right to possess firearms for protection implies a corresponding right to obtain the bullets necessary to use them." *Id.* at 967 (cleaned up). But a right to obtain "bullets necessary to use [firearms]" does not extend to ammunition feeding devices that are not necessary for any firearm to operate. Plaintiffs' reliance on *Jackson* ignores the atextual nature of its holding, as well

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

as the significant "distinction between bullets and magazines, between ammunition and the *holder* of ammunition." *Ocean State Tactical*, 2022 WL 17721175, at *12 n.25 (distinguishing *Jackson*); *see also OFF*, 2023 WL 4541027 at *25 (citing *Jackson* and concluding LCMs are not protected by the Second Amendment).

Similarly, the *Fyock* plaintiffs challenged an ordinance banning LCMs and the Ninth Circuit upheld the district court's denial of a preliminary injunction. 779 F.3d at 994. In dicta, the court assumed that, because handguns are commonly possessed for self-defense, "there must also be some corollary, albeit not unfettered, right to possess the magazines *necessary* to render those firearms operable." *Id.* at 998 (emphasis added) (citing *Jackson*, 746 F.3d at 967). But the court expressly did not reach whether LCMs were "arms" as a matter of text or history. *See id.* at 997 n.3 (noting that it was "bypassing the historical analysis step and assuming without deciding that [the challenged LCM ordinance] burdens the Second Amendment"); *see also Ocean State Tactical*, 2022 WL 17721175, at *12 n.25 (noting that *Fyock* contains "no discussion of whether LCMs are 'Arms'").

Thus, no circuit precedent addresses the threshold question under *Bruen* of whether "the plain text of the Second Amendment protects" LCMs. 142 S. Ct. at 2134. For the reasons above, the answer to that question is no.

### 2.  LCMs are not in common use for self-defense

An independent reason why LCMs fall outside the "plain text of the Second Amendment" applies even if LCMs are viewed as weapons: they are not "*self-defense* weapons," *Bruen*, 142 S. Ct. at 2143 (emphasis added), and Plaintiffs present no evidence that LCMs are "in common use today for self-defense," *id.* at 2134 (cleaned up). Instead, Plaintiffs misconstrue the relevant inquiry as asking how many LCMs are owned by Americans. Dkt. #101 at 17–19. They are

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 9
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

mistaken. The Supreme Court has repeatedly emphasized that "individual self-defense 'is the *central component*' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (quoting *Heller*, 554 U.S. at 599). For that reason, the Second Amendment "guarantee[s] the individual the right to possess and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592. It is "'not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" *Bruen*, 142 S. Ct. at 2128 (quoting *Heller*, 554 U.S. at 626). Reaffirming *Heller* and *McDonald*, the *Bruen* Court made clear that the Second Amendment's text covers "weapons 'in common use' today for self-defense." 142 S. Ct. at 2134 (quoting *Heller*, 554 U.S. at 627); *see also Caetano v. Massachusetts*, 577 U.S. 411, 416–17 (2016) (Alito, J., concurring in judgment) (observing that Second Amendment protections extend to "weapons most commonly *used today for self-defense*, namely, revolvers and semiautomatic pistols") (emphasis added); *Duncan v. Bonta*, 19 F.4th 1087, 1127 (9th Cir. 2021) (en banc) (Berzon, J., concurring), *cert. granted, judgment vacated in light of Bruen*, 142 S. Ct. 2895 (2022) ("*Heller* focused not just on the prevalence of a weapon, but on the primary use or purpose of that weapon."). The Second Amendment protects self-defense weapons only, not machineguns or other weapons "most useful in military service." *Heller*, 554 U.S. at 627. Plaintiffs' singular focus on the mass production or *ownership* of LCMs ignores the centrality of self-defense in the Supreme Court's Second Amendment jurisprudence.

Once again, Plaintiffs made the same argument in *OFF*. It failed. 2023 WL 4541027, at *28 ("This Court rejects Plaintiffs' invitation to equate 'commonly owned' with 'in common use today for self-defense.'"). Other district courts across the country have likewise refused to misread *Bruen*'s common use language in this manner. *E.g.*, *NAGR*, 2023 WL 4975979, at *22 ("In the absence of persuasive evidence that . . . LCMs . . . are commonly used or are particularly suitable

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 10
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

for self-defense, Plaintiffs have failed to carry their burden."); *Ocean State Tactical*, 2022 WL 17721175, at *15 (concluding there is no "link between LCMs and the use of firearms in self-defense"); *Hanson*, 2023 WL 3019777, at *8 (D.D.C. Apr. 20, 2023) (same).

Courts, including the Ninth Circuit, have routinely recognized LCMs' lack of utility for individual self-defense. *Duncan*, 19 F.4th at 1105 (majority) ("[T]he record here, as in other cases, does not disclose whether the added benefit of a large-capacity magazine—being able to fire more than ten bullets in rapid succession—has *ever* been realized in self-defense in the home."); *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. of N.J.*, 910 F.3d 106, 118 (3d Cir. 2018) ("The record here demonstrates that LCMs are not well-suited for self-defense."); *State v. Misch*, 256 A.3d 519, 553 n.29 (Vt. 2021) (per curiam) ("[N]o one has come forward with even anecdotal examples of any LCM being necessary for individual self-defense."); *Rocky Mountain Gun Owners v. Polis*, 467 P.3d 314, 331 (Colo. 2020) ("[T]estimony at trial established that '[i]n no case had a person fired even five shots in self-defense, let alone ten, fifteen, or more.'").[6] Recent decisions agree with this pre-*Bruen* case law. *Ocean State Tactical*, 2022 WL 17721175, at *14 ("There is simply no credible evidence in the record to support the plaintiffs' assertion that LCMs are weapons of self-defense and there is ample evidence put forth by the State that they are not."); *Hanson*, 2023 WL 3019777, at *8 (concluding "that law-abiding individuals do not use LCMs for self-defense because incidents where a civilian actually expends more than ten bullets in self-defense are vanishingly rare.") (cleaned up).

---

[6] *Bruen* abrogated many of these cases to the extent they applied means-end scrutiny in the two-step approach adopted by circuit courts after *Heller*. *See* 142 S. Ct. at 2127. But the Supreme Court's rejection of the second step does not undermine the courts' analysis of LCMs' utility for self-defense.

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 11
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Here the record supports the same conclusion. Defendants' unrebutted experts demonstrate that LCMs are not "in common use today for self-defense." *Bruen*, 142 S. Ct. at 2134; Dkt. 114 at 17–27; Busse Rep. at 24.

### 3. LCMs are dangerous and unusual

In *Heller*, the Supreme Court recognized the established "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" 554 U.S. at 627 (quoting 4 Blackstone, *Commentaries of the Laws of England* 148–49 (1769)). State Defendants ably demonstrate why, whether this question is viewed as part of *Bruen*'s first or second prong, LCMs are "dangerous and unusual." Dkt. #114 at 27–29; *see also OFF*, 2023 WL 4541027, at *34 ("[W]hile LCMs may be possessed by millions of Americans today, they are not commonly used for self-defense. Further, this Court finds based on the evidence in the record that LCMs have uniquely dangerous propensities.").

### D. The Act is Consistent With Our Historical Tradition of Firearm Regulation

Even if ESSB 5078 regulated conduct that fell within the text of the Second Amendment (it does not), the Act would still be constitutional. As *Bruen* explained, while conduct falling within the Second Amendment's plain text is presumptively protected, regulations of such conduct are nevertheless constitutional if "consistent with this Nation's historical tradition of firearm regulation." 142 S. Ct. at 2126.

Plaintiffs' contention that "the Supreme Court has already done the historical spadework" in this case is completely unsupported. The Supreme Court has not addressed the constitutionality of regulating firearm accessories or components, let alone LCMs. Indeed, *Bruen* has universally been recognized as a sea-change in how federal courts should evaluate Second Amendment challenges. *OFF*, 2023 WL 4541027, at *5 ("*Bruen* creates a new two-step analysis for assessing

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the constitutionality of firearms regulations."); *Teter v. Lopez*, --- F.4th ----, No. 20-15948, 2023 WL 5008203, at *7 (9th Cir. Aug. 7, 2023) (discussing two questions posed in new test under *Bruen*).

Plaintiffs' attempt to short-circuit the historical analysis finds no support in *Bruen*. Although the Second Amendment's text does not protect LCMs for the reasons explained above, even if LCMs were "presumptively protected" as a textual matter, *Bruen* leaves no doubt as to the next step: determine whether ESSB 5078 is "consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2117, 2130. Moreover, binding circuit precedent establishes that the "common use" question is part of *Bruen*'s threshold textual prong, not its historical prong: In describing "*Bruen* step one," the Ninth Circuit explained that "it requires a textual analysis, determining whether the challenger is 'part of the people' whom the Second Amendment protects,' whether the weapon at issue is '*in common use today for self-defense*,' and whether the 'proposed course of conduct' falls within the Second Amendment." *United States v. Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) (emphasis added) (quoting *Bruen*, 142 S. Ct. at 2134–35). The Court should decline Plaintiffs' invitation to bypass the history prong altogether, just as other district courts have refused to do, in this circuit and elsewhere. *See, e.g.*, *Hartford*, 2023 WL 3836230, at *2–3 ("The Plaintiffs maintain that they need only show that the 'arms' regulated by HB 1240 are 'in common use' today for lawful purposes and so are not 'unusual.' If they do, they contend, the weapon cannot be banned under *Heller* and *Bruen*. The Plaintiffs misread *Heller* and *Bruen*."); *Del. State Sportsmen's*, 2023 WL 2655150 at *8 ("Plaintiffs argue that, once a weapon is found to be 'in common use' within the meaning of the Second Amendment, it cannot be regulated, and no historical analysis is necessary. I disagree.") (cleaned up); *NAGR*, 2023 WL 4975979, at *25 ("[N]o other constitutional right waxes and wanes based solely on what manufacturers choose to

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 13
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

sell and how Congress chooses to regulate what is sold, and the Second Amendment should be no exception.").

### 1.  LCM restrictions have ample historical antecedents

The "analogical inquiry" required under *Bruen*'s history prong demonstrates that ESSB 5078 is constitutional. In setting out the analogical inquiry, *Bruen* indicated that cases will fall into two categories: First, the "inquiry will be fairly straightforward" in cases where a "challenged regulation addresses a general societal problem that has persisted since the 18th century." *Bruen*, 142 S. Ct. at 2131. In those "straightforward" cases, a closer fit between the challenged law and historical antecedents may be required, such that "the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* Both *Bruen* and *Heller* "exemplifie[d] this kind of straightforward historical inquiry" because they involved "a perceived societal problem—firearm violence in densely populated communities"—that the Founding generation experienced and "could have adopted" similar laws "to confront that problem," but did not. *Id.* ("New York's proper-cause requirement concerns the same alleged societal problem addressed in *Heller*: 'handgun violence,' primarily in 'urban area[s].'"). In such "straightforward" cases, "the historical analogies . . . are relatively simple to draw." *Id.* at 2132.

Second, by contrast, a "more nuanced approach" is required in "cases implicating [1] unprecedented societal concerns or [2] dramatic technological changes." *Id.* Under the "nuanced" approach, "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* (quoting C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)). Without "provid[ing] an exhaustive survey of the features that render regulations

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 14
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

relevantly similar under the Second Amendment," the *Bruen* Court identified "two metrics: how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* at 2132–33. "*[C]entral* considerations" in that "analogical inquiry" are "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 2133 (cleaned up). The Court also emphasized that the "nuanced" approach "requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.*[7]

The "nuanced" approach is appropriate here, for two reasons. First, LCMs contribute directly to an unprecedented societal concern—mass shootings. State Defendants and their experts thoroughly explain how LCMs contribute directly to the modern phenomenon of mass shootings. Dkt. #114 at 29–30. One of the Alliance's experts, trauma surgeon Dr. Eileen Bulger, also explains how increased numbers of bullets fired and victims shot—both of which occur in mass shootings involving LCMs—create serious issues for medical care providers. Decl. of Eileen Bulger, Ex. A at 3–7.

---

[7] *Bruen* also provided guidance on how courts should receive evidence in conducting the historical inquiry. "[I]n our adversarial system of adjudication," the Court explained, "we follow the principle of party presentation. Courts are thus entitled to decide a case based on the historical record compiled by the parties." 142 S. Ct. at 2130 n.6. That is the path this Court should follow. The record presented by the parties in this case is clear: the Alliance and the State Defendants offer overwhelming evidence that LCMs are dangerous and unusual, as well as a robust historical record demonstrating a long tradition of regulating items like LCMs. Plaintiffs offer nothing. And although Plaintiffs say they "will respond to any history the State puts forward in their . . . [cross-opposition/reply] brief," Dkt. # 101 at 15, Plaintiffs have disclosed no experts in this case—so any response they do muster will lack all evidentiary foundation and persuasive force.

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 15
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Second, LCMs also represent a dramatic technological change. Professor DeLay has done exhaustive research in this area, and his unrebutted findings demonstrate that (1) high-capacity firearms were experimental and vanishingly rare in 1791; (2) firearms with fixed LCMs represented less than .002% of guns in the U.S. in 1868; and (3) firearms with detachable LCMs began coming under both state and federal regulation soon after they first became commercially available through the United States in the 1920s and 1930s. Decl. of Brian DeLay, Ex. A at 3; *see also* Decl, of Kevin Sweeney, Ex. A at 33 ("[R]epeating firearms were extraordinarily rare in eighteenth-century America."). The *OFF* court relied extensively on Professor DeLay's testimony in concluding that modern-day LCMs represent a dramatic technological change from the Founding and Reconstruction-era firearms. 2023 WL 4541027, at *18–19, 37–39 (also relying on Professor Sweeney). For that reason, and because LCM restrictions address an unprecedented societal concern, many other district courts have agreed that the "nuanced" approach to the analogical inquiry is appropriate in such cases. *See, e.g.*, *NAGR*,  2023 WL 4975979, at *29; *Herrera*, 2023 WL 3074799, at *7; *Hanson*, 2023 WL 3019777, at *13.

Those courts have also agreed that, under the nuanced approach, LCM restrictions like those in ESSB 5078 are "consistent with the nation's historical tradition of firearm regulation" because they are "relevantly similar" to historical analogues—that is, they impose "comparable burdens on the right to self-defense" and are "comparably justified." *Bruen*, 142 S. Ct. at 2133; *see, e.g.*, *OFF*, 2023 WL 4541027, at *46; *Herrera*, 2023 WL 3074799, at *7; *Bevis*, 2023 WL 2077392, at *14–16; *NAGR*, 2023 WL 4975979, at *33; *Hanson*, 2023 WL 3019777, at *17; *Del. State Sportsmen's*, 2023 WL 2655150, at *13. As discussed above, the burden on the right to self-defense is negligible, if it exists at all. The justification is equally clear: reducing the number and lethality of mass shootings.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

The *OFF* court's analysis is particularly helpful when assessing LCM restrictions' historical analogs. Based on the testimony of Dr. Robert Spitzer and Dr. Brennan Rivas, both experts in this case, the court identified policies that regulated the following arms and accoutrement: (1) trap guns, (2) gunpowder storage devices, (3) blunt objects, (4) Bowie knives, (5) pistols, (6) revolvers, and (7) semi and fully-automatic weapons. *OFF*, 2023 WL 4541027, at *39–45. The court concluded that all of these historical restrictions imposed comparable burdens to Oregon's LCM regulation, and that those burdens were comparably justified. *Id*. The court also rejected the plaintiffs' arguments that certain restrictions, such as restrictions on concealed carrying of revolvers, were not analogous because they did not prohibit the purchase or carrying of the arms in question. As the court noted, "[a]n outright prohibition on the concealed carrying of an item that is commonly used in self-defense is more burdensome than restrictions on the purchase and carrying of an item that is almost never used in self-defense situations." *OFF*, 2023 WL 4541027, at *43. These analogs are equally applicable here, and ESSB 5078 is consistent with our nation's history and tradition of firearm regulation.

### E.  Plaintiffs' Arguments are Barred by Issue Preclusion

Although the record independently demonstrates that Plaintiffs' challenge to ESSB 5078 fails as a matter of law, a second reason warrants entry of summary judgment in Defendants' favor: issue preclusion (collateral estoppel) bars Plaintiffs from litigating many of the underlying issues because they raised these exact issues before the Oregon court and lost completely in a final judgment. All three elements of issue preclusion are satisfied: (1) an identical issue must necessarily have been decided at the previous proceeding; (2) the first proceeding must have ended with a final judgment on the merits; and (3) the precluded party must either have been a party or

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 17
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

be in privity with a party at the first proceeding. *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000).

First, Plaintiffs raise the same issue here that they did in *OFF*. One need look no further than the complaint filed by SAF and FPC in the District of Oregon to see that they raise the same issues here. *See* Decl. of Zachary J. Pekelis, Ex. A (Or. Compl.). The arguments raised in the Oregon Complaint are the same as those undergirding the current challenge, and frequently appear to be copied and pasted from the First Amended Complaint in this case with minimal editing, if any. *Compare* Dkt. #42 ¶¶ 1–7, 30–35, 38–43, 45–49, *with* Or. Compl. ¶¶ 1–7, 26–31, 33–38, 39–43. The single count alleged in both complaints is also the same, and relies on the same legal authorities. *Compare* Dkt. #42 ¶¶ 73–80 (challenging LCM law based on *Bruen*, *Heller*, and *Jackson*), *with* Or. Compl. ¶¶ 57–63 (same). In both suits, Plaintiffs contend that (1) LCMs are bearable arms, (2) LCMs are "in common use" as the term is used *Bruen* and *Heller*, (3) LCMs do not represent a dramatic technological change or an unprecedented societal concern under *Bruen*, and (4) regulations of LCMs are inconsistent with our nation's historical tradition of firearm regulation. As explained above, these issues were all addressed by the *OFF* court. The *OFF* court concluded that (1) LCMs are not bearable arms, 2023 WL 4541027, at *26; (2) LCMs are not in common use as defined by *Bruen* and *Heller*, *id.* at *33; (3) LCMs represent both a dramatic technological change *and* an unprecedented societal concern under *Bruen*, *id.* at *37–39; and (4) regulations of LCMs are consistent with the nation's historical tradition of firearm regulation, *id.* at *46.

Second, the challenge to Oregon's LCM restriction ended with a final judgment on the merits. *OFF*, 2023 WL 4541027. That the decision has been appealed does not alter its preclusive effect. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988).

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 18
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Third, Plaintiffs in this case are the same as the *OFF* plaintiffs or in privity with them. SAF and FPC were both plaintiffs in the *OFF* litigation. Or. Compl. ¶¶ 14–15. The remaining Plaintiffs with live claims[8] are members of the two organizational plaintiffs and thus are in privity. Plaintiff Gabriella Sullivan is a member of both organizations. Dkt. #42 ¶ 55. Both Rainier Arms and its CEO, John Hwang, are members of FPC. Dkt. #103 ¶ 6. SAF and FPC explicitly "bring[] this lawsuit on behalf of [their] thousands of members in Washington, including Sullivan and Hwang." Dkt. ##102 ¶ 8, 103 ¶ 8. The Ninth Circuit has recognized that an organization cannot escape collateral estoppel merely by adding members of that organization as plaintiffs to a new suit. *See Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 556–57 (9th Cir. 2003). In *Gospel Missions*, the organizational plaintiff sought to avoid res judicata by adding 20 individual members as plaintiffs to the suit. *Id.* The Ninth Circuit rejected the argument that the member plaintiffs meant res judicata could not apply because "[i]n its complaint, [the organizational plaintiff] admitted that all the individual plaintiffs are members of the organization, thus admitting these twenty individuals are in privity."). So too here. FPC and SAF cannot escape issue preclusion by recruiting their individual members as plaintiffs.

## IV.    CONCLUSION

For the reasons above, the Court should enter summary judgment in Defendants' favor.

## CERTIFICATE OF COMPLIANCE

I certify that this response complies with the applicable word-count limitation set by Order, Dkt. #100, and contains 5,974 words.

---

[8] Plaintiffs concede that the claims of the other individual Plaintiff, Daniel Martin, are moot. Dkt. #101 at 8 n.1.

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 19
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DATED this 1st day of September, 2023.

PACIFICA LAW GROUP LLP


s/ Zachary J. Pekelis
Zachary J. Pekelis, WSBA #44557
Kai A. Smith, WSBA #54749

*Attorneys for Intervenor-Defendant*
*Alliance for Gun Responsibility*

ALLIANCE FOR GUN RESPONSIBILITY'S
CROSS-MOTION FOR SUMMARY JUDGMENT - 20
3:22-cv-05403-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750