1

2

3

4

5

6                                             The Honorable David G. Estudillo

7                    UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9   GABRIELLA SULLIVAN, et al.,              NO. 3:22-cv-05403-DGE

10                  Plaintiffs,              REPLY IN SUPPORT OF STATE
                                             DEFENDANTS' CROSS-MOTION
11          v.                               FOR SUMMARY JUDGMENT

12   BOB FERGUSON, in his Official Capacity   NOTE ON MOTION CALENDAR:
    as Washington State Attorney General, et al.,   October 16, 2023
13
                    Defendants,
14
    ALLIANCE FOR GUN RESPONSIBILITY,
15
                    Intervenor-Defendant.
16

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF STATE                          ATTORNEY GENERAL OF WASHINGTON
DEFENDANTS' CROSS-MOTION FOR                            Complex Litigation Division
SUMMARY JUDGMENT                                           7141 Cleanwater Dr SW
NO. 3:22-cv-05403-DGE                                         PO Box 40111
                                                         Olympia, WA 98504-0111
                                                            (360) 709-6470

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION ................................................................................................. 1

3

II.     ARGUMENT ...................................................................................................... 1

4

    A.   Plaintiffs Fail to Carry Their Burden at *Bruen* Step One ......................... 1

5

        1.   LCMs are accessories, not arms .................................................. 2

6

        2.   Plaintiffs bear the burden to show LCMs are in common use—they
cannot .......................................................................................... 4

7

8

            a.   Plaintiffs bear the burden at *Bruen* step one ............................... 4

9

            b.   Plaintiffs fail to carry their burden of proving that LCMs are
commonly used for self-defense .................................................. 5

10

        3.   LCMs are not covered by the Second Amendment because they are
military items not suitable for self-defense ....................................... 7

11

    B.   Defendants Have Met Their Burden at *Bruen* Step Two ......................... 8

12

III.    CONCLUSION ................................................................................................. 12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Barnett v. Raoul*,
  2023 WL 3160285 (S.D. Ill. Apr. 28, 2023) ........................................................................... 1

4

*Brumback v. Ferguson*,

5

  2023 WL 6221425 (E.D. Wash. Sept. 25, 2023) ................................................................. 1, 2

6

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ............................................................................................................ 5, 7

7

*Duncan v. Bonta*,

8

  No. 23-55805 (9th Cir. Oct. 10, 2023) ................................................................................... 1

9

*Duncan v. Bonta*,
  19 F.4th 1087 (9th Cir. 2021) ................................................................................................. 7

10

*Duncan v. Bonta*,

11

  2023 WL 6180472 (S.D. Cal. Sept. 22, 2023) ........................................................................ 1

12

*Facebook, Inc. v. Duguid*,
  141 S.Ct. 1163 (2021) ............................................................................................................. 2

13

*Hanson v. District of Columbia*,

14

  2023 WL 3019777 (D.D.C. Apr. 20, 2023) ............................................................................ 7

15

*Nat'l Ass'n for Gun Rights v. Lamont*,
  2023 WL 4975979 (D. Conn. Aug. 3, 2023) ................................................................... 5, 6, 7

16

*New York State Rifle & Pistol Ass'n v. Bruen*,

17

  142 S.Ct. 2111 (2022) .............................................................................. 4, 5, 8, 10, 11

18

*Ocean State Tactical, LLC v. Rhode Island*,
  2022 WL 17721175 (D.R.I. Dec. 14, 2022) ........................................................................ 2, 5

19

*Or. Firearms Fed'n v. Kotek*,

20

  2023 WL 4541027 (D. Or. July 14, 2023) ......................................................................... 2, 5, 6

21

*Or. Firearms Fed'n, Inc. v. Brown*,
  644 F. Supp. 3d 782 (D. Or. Dec. 6, 2022) ............................................................................ 6

22

*Staples v. United States*,

23

  511 U.S. 600 (1994) ............................................................................................................... 12

24

*Teter v. Lopez*,
  76 F.4th 938 (9th Cir. 2023) ............................................................................................. 4, 5, 6

25

*United States v. Alaniz*,

26

  69 F.4th 1124 (9th Cir. 2023) .................................................................................................. 4

STATE DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY
JUDGMENT
NO. 3:22-cv-05403-DGE

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

*United States v. Rare Breed Triggers, LLC*, 2023 WL 5689770 (E.D.N.Y. Sept. 5, 2023) ........ 3

### **Statutes**

Militia Act of 1792, ch. 33, 1 Stat. 271 § 1 ................................................................ 2

### **Other Authorities**

SB 5078, § 3 ..................................................................................................... 8

STATE DEFENDANTS' RESPONSE AND
CROSS-MOTION FOR SUMMARY
JUDGMENT
NO. 3:22-cv-05403-DGE

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

## I.    INTRODUCTION

Ten district courts have addressed the constitutionality of LCM restrictions following *Bruen*. All but two have rejected plaintiffs' challenges (or found them unlikely to succeed), concluding that the Second Amendment does not protect LCMs and/or that LCM restrictions are consistent with America's historical tradition of regulating weapons disproportionately used in criminal violence. Dkt. # 131-1 (MSJ) at 6-7 (citing decisions issued prior to Sept. 1, 2023); *Brumback v. Ferguson*, 2023 WL 6221425 (E.D. Wash. Sept. 25, 2023). And the judgments of the two district courts that concluded differently were each promptly stayed by the Court of Appeals. *Barnett v. Raoul*, 2023 WL 3160285 (S.D. Ill. Apr. 28, 2023) (stayed pending appeal); *Duncan v. Bonta*, 2023 WL 6180472 (S.D. Cal. Sept. 22, 2023) (stayed pending appeal). In *Duncan*, an *en banc* panel of the Ninth Circuit concluded that California "is likely to succeed on the merits" of its appeal. Order, Dkt. # 10 at 2, No. 23-55805 (9th Cir. Oct. 10, 2023).

Facing the great weight of authority against them, Plaintiffs argue that everyone is wrong—except them. They insist that commonality is the sole question courts can consider in evaluating constitutionality, even though courts addressing this very question—including Judge Bryan of this Court—have consistently rejected their attempt to rewrite the *Bruen* test to suit their preferences. MSJ at 13-14. Under a proper application of Supreme Court precedent, SB 5078 is constitutional and should be upheld.

## II.    ARGUMENT

### A.    Plaintiffs Fail to Carry Their Burden at *Bruen* Step One

Plaintiffs fail to carry their burden at *Bruen* step one for three independent reasons: (1) LCMs are accessories, not arms; (2) LCMs are not commonly used for self-defense; and (3) LCMs are military-style accessories, outside the scope of the Second Amendment. Plaintiffs fail to overcome any of these grounds, let alone all three.

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1      **1.      LCMs are accessories, not arms**

2      Plaintiffs do not dispute that they bear the burden of demonstrating that LCMs are "arms"

3  at *Bruen*'s first step. Yet they offer no evidence on the merits whatsoever, not even to *rebut*

4  Defendants' historical, linguistic, and contemporary evidence proving that force-multiplying

5  accessories like LCMs have never been understood to be "arms." MSJ at 14-17. Nor do Plaintiffs

6  rebut the evidence showing that SB 5078 does not otherwise interfere with their use of arms

7  because LCMs are not necessary for any gun to fire exactly as intended. *Id.* at 11. This is fatal

8  to their claim. *See Brumback*, 2023 WL 6221425, at *9 ("Plaintiffs have offered insufficient

9  evidence suggesting that the text of the Second Amendment was meant to include large capacity

10  magazines."); *Ocean State Tactical, LLC v. Rhode Island*, 2022 WL 17721175, at *12-13 (D.R.I.

11  Dec. 14, 2022); *Or. Firearms Fed'n v. Kotek* (*OFF*), 2023 WL 4541027, at *25-26 (D. Or. July

12  14, 2023).

13      In lieu of evidence, Plaintiffs offer only their counsel's arguments. First, though Plaintiffs

14  do not dispute that corpus linguistics is relevant to the textual-historical question presented,[1] nor

15  do they question Dr. Baron's qualifications or offer any rebuttal expert testimony, Plaintiffs

16  assert he did not consider the "most important sources": the Militia Act of 1792 and article I,

17  section 8, clause 16 of the Constitution. Dkt. # 133 (Resp.) at 10. But the Militia Act *supports*

18  Dr. Baron's arms/accoutrements distinction; it refers to militiamen carrying "a good musket or

19  firelock, a sufficient bayonet and belt, two spare flints, and a knapsack, a pouch, with a box

20  therein, to contain not less than twenty four cartridges" as being "armed, *accoutred* and

21  provided." Militia Act of 1792, ch. 33, 1 Stat. 271 § 1 (emphasis added). That Congress has the

22  authority to "organiz[e], arm[], and disciplin[e] the Militia," and that the Militia Act required "a

23  knapsack, a pouch, with a box therein" for militiamen, does not somehow mean that knapsacks,

24  pouches, and cartridge-boxes are "arms." Resp. at 10.

25

26      [1] *Cf. Facebook, Inc. v. Duguid*, 141 S.Ct. 1163, 1174 (2021) (Alito, J.,concurring) (inviting corpus linguistics analysis of future interpretive questions).

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

Second, Plaintiffs wave away expert Ryan Busse's testimony with a single, unsubstantiated sentence, arguing that the firearm industry's classification of LCMs as "accessories" has "no constitutional significance." Resp. at 10. But undisputed evidence that industry experts have for decades marketed and sold LCMs as accessories (not as firearms) is certainly probative, especially since the industry's modern understanding of its own products is fully consistent with the historical evidence.

Third, SB 5078 is not comparable to a ban on all triggers as Plaintiffs suggest. Resp. at 11. That argument is flawed because LCMs are just one type of magazine. The apt analogy would be between LCMs and trigger cranks or forced-reset triggers—accessories that convert ordinary firearms into military-style weaponry. *See United States v. Rare Breed Triggers, LLC*, 2023 WL 5689770, at *50 (E.D.N.Y. Sept. 5, 2023) (enjoining defendant from selling "forced-reset triggers[] and other machinegun conversion devices").

Finally, Plaintiffs argue that the State Defendants' argument lacks a "limiting principle" and, relatedly, that there is no textual basis for treating LCMs differently from lower-capacity magazines. Resp. at 11. But the Second Amendment provides both a limiting principle and a textual basis for regulating LCMs. Because LCMs are accessories, not arms, the Second Amendment is only implicated if SB 5078 otherwise "infringes" the right to use arms. MSJ at 15-16. Infringement is the limiting principle, and it explains why Washington's law is constitutionally distinguishable from, for example, a ban on anything but "one-shot gun[s]." *Id.* at 11; *contra* Resp. at 11.[2] Because Plaintiffs offered *no* evidence that LCMs provide meaningful self-defense benefits over ordinary magazines, they have failed to show that Washington's regulation of these accessories is an infringement. This is dispositive.

---

[2] It is Plaintiffs' argument that lacks a limiting principle, as it leads to the untenable conclusion that 100- or even 1,000-capacity magazines presumptively cannot be regulated.

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1
2

**2.**      **Plaintiffs bear the burden to show LCMs are in common use—they cannot**

      **a.**      **Plaintiffs bear the burden at *Bruen* step one**

3      Plaintiffs' insistence that "common use" is the *State's* burden, Resp. at 12-14, cannot be

4  squared with *Bruen*, as a straightforward reading of the case demonstrates. In applying its own

5  test, the *Bruen* Court addressed "common use" at step one. *New York State Rifle & Pistol Ass'n*

6  *v. Bruen*, 142 S.Ct. 2111, 2134-36 (2022). Specifically, the Court first confirmed that "handguns

7  are weapons 'in common use' today for self-defense" in concluding that "[t]he Second

8  Amendment's plain text . . . presumptively" applied. *Id.* at 2134-35. Only then did the Court

9  proceed to step two, shifting the burden to New York. *Id.* at 2135.

10      Plaintiffs appear to suggest that "common use" cannot be part of *Bruen*'s first step

11  because these words are not found in the Second Amendment's text, *see* Resp. at 14, but this

12  oversimplification not only ignores how *Bruen* applied the test, it ignores the jurisprudential

13  underpinnings of *Heller*, *McDonald*, and *Bruen*. The Supreme Court's Second Amendment

14  jurisprudence focuses on what its words meant at ratification. *See Bruen*, 142 S.Ct. at 2127.

15  Thus, at step one, plaintiffs must prove that a particular weapon is among those that Founding-era

16  Americans would have understood the Second Amendment to cover, i.e., "weapons in common

17  use today for self-defense." *Id.* at 2134 (cleaned up). *Bruen* step two—evaluating historical

18  analogues—is only necessary if a presumption of Second Amendment protection is established

19  at step one. *See id.* at 2135-36.

20      The Ninth Circuit in *Alaniz* correctly applied *Bruen*, explaining that step one examines,

21  *inter alia*, whether a weapon is "'in common use' today for self-defense[.]" *United States v.*

22  *Alaniz*, 69 F.4th 1124, 1128 (9th Cir. 2023) (quoting *Bruen*, 142 S.Ct. at 2134-35).[3] Plaintiffs,

23  however, assert that *Teter v. Lopez*, 76 F.4th 938 (9th Cir. 2023), absolves them of their step-

24  one burden. Resp. at 12-13. While *Teter* may, at first blush, appear in tension with *Heller*, *Bruen*,

25

26

---

[3] This portion of *Alaniz* is not "dicta." Resp. 6. *Alaniz* articulated the test, then applied it to hold that a state statute did not violate the Second Amendment. *Alaniz*, 69 F.4th at 1128-29. The Court's assumption *arguendo* that *Bruen* step one was satisfied in no way undermines its (correct) articulation of the test.

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

and *Alaniz*, a closer look reveals that *Teter*'s burden-shifting discussion focuses not on butterfly knives' commonality, but whether they are "dangerous and unusual." *Teter*, 76 F.4th at 950-51. Though related, these are distinct questions that courts often analyze separately. *See infra* at II.A.3; MSJ at 22-23; *see, e.g.*, *OFF*, 2023 WL 4541027, at *34. *Teter* says nothing about the former, whereas *Heller*, *Bruen*, and *Alaniz* place the burden of proving "common use" squarely on Plaintiffs.[4]

### b.     Plaintiffs fail to carry their burden of proving that LCMs are commonly used for self-defense

As the State Defendants have shown, LCMs' extended rapid-fire capabilities may be useful on the battlefield, but they are basically never used for self-defense. MSJ at 19-22. Plaintiffs may wish *Heller* and *Bruen* had set a different standard, but common *ownership* alone is not enough; Plaintiffs must prove that LCMs actually "facilitate armed self-defense." *Bruen*, 142 S.Ct. at 2132; *see also OFF*, 2023 WL 4541027, at *29; *Nat'l Ass'n for Gun Rights v. Lamont*, 2023 WL 4975979, at *13 (D. Conn. Aug. 3, 2023); *Ocean State Tactical*, 2022 WL 17721175, at *15. Plaintiffs have failed to carry their step-one burden.

Again calling on *Teter*, Resp. at 14, Plaintiffs place too much weight on its paraphrasing of *Heller*, while ignoring the actual standard established by both *Heller* and *Bruen*: that "common use," not common ownership, is the relevant metric. *Heller* makes clear that the Second Amendment covers only "arms 'in common *use* at the time for lawful purposes like self-defense." *District of Columbia v. Heller*, 554 U.S. 570, 624 (2008) (cleaned up; emphasis added); *see also id.* at 627 (recognizing that "the right to keep and carry arms" for self-defense extends only to "the sorts of weapons . . . in common *use* at the time") (cleaned up; emphasis added ). *Bruen* reaffirms this, quoting *Heller*'s "common use" language. *Bruen*, 142 S.Ct. at 2128, 2134.[5] Following *Heller*, courts that have specifically addressed the question (which *Teter*

---

[4] Of course, even if *Teter* did require Defendants to prove LCMs are not commonly used for self-defense, the State Defendants have made that showing through unrebutted expert testimony. *See* MSJ at 9-10, 19-22.

[5] Like *Teter*, *Heller* once refers to "weapons not typically *possessed* by law-abiding citizens." 554 U.S. at 625 (emphasis added). But it does so only to distinguish them from "arms 'in common *use* at the time' for lawful

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

did not) have concluded that use, not ownership, is the lodestar. *See, e.g.*, *Nat'l Ass'n for Gun Rights*, 2023 WL 4975979, at \*13-14; *Or. Firearms Fed'n, Inc. v. Brown*, 644 F. Supp. 3d 782, 799-800 (D. Or. Dec. 6, 2022). And, notwithstanding its imprecise paraphrasing, *Teter's* analysis clearly focuses on use. It reasons "that butterfly knives may be *used* for self-defense," and that they "are an integral part of the [F]ilipino martial art called Escrima." *Teter*, 76 F.4th at 950 (emphasis added; cleaned up). This is in marked contrast to LCMs, which are neither useful nor actually used for self-defense. MSJ at 9-10, 19-22. Once again, *Teter* does not support Plaintiffs.

Plaintiffs are correct that a firearm can be "used" even if it is not fired. Resp. at 14; *see* Dkt. # 123-1 (Allen Rpt.) at 7. But this doesn't help them, as the court explained in *OFF*: "Plaintiffs presented no evidence . . . that brandishing a firearm with an LCM, as opposed to brandishing a firearm with a magazine holding ten or fewer rounds, facilitates armed self-defense." 2023 WL 4541027, at \*33. "[T]he size of a firearm's magazine—as opposed to the firearm itself—has little deterrent effect in the average civilian self-defense context." *Id.* Here too, whether shots are fired or not, Plaintiffs offer *no* evidence that LCMs facilitate armed self-defense. As Lucy Allen's research conclusively shows, as court after court has found, and as even the NRA has acknowledged, LCMs do not. MSJ at 9, 20-22.[6]

Finally, Plaintiffs argue that if handguns cannot be banned despite their criminal use, LCMs must also be constitutionally protected. Resp. at 8. But *Heller* undermines this argument too, holding that even though handguns are often used in crime, they cannot be banned because they are "overwhelmingly chosen by American society" for self-defense. *Heller*, 554 U.S. at

---

purposes like self-defense," which are the arms covered by the Second Amendment, according to *Heller*. *Id.* at 624 (emphasis added).

[6] As previously explained, Plaintiffs' LCM-ownership estimates are based on unreliable, inadmissible hearsay. MSJ at 24-27. Plaintiffs respond by citing additional sources they claim "find[] similar levels of ownership," Resp. at 18, but they fall far short. *Compare* Dkt. # 101 at 17-18 (asserting Americans have owned 542 million LCMs) *with* Resp. at 18-19 (citing cases with estimates of 115 and 75 million). Moreover, it is not at all clear where these numbers come from, or why this Court should accept them, particularly in light of recent evidence demonstrating how the gun industry inflated estimates. MSJ at 24-25.

Plaintiffs also contend that their proffered estimates are "legislative facts." Resp. at 18. The *OFF* court properly rejected this argument, finding that facts going to common use are "adjudicative," not "legislative." *OFF*, 2023 WL 4541027, at \*3 n.2 (citations omitted).

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

628. By contrast, Plaintiffs provide no competent evidence that LCMs are similarly situated, and the evidence shows they are virtually never used for self-defense.

### 3. LCMs are not covered by the Second Amendment because they are military items not suitable for self-defense

Plaintiffs do not—and cannot—dispute that LCMs are "most useful in military service." *See* Resp. at 20-21; State's MSJ at 19-22. Instead, they again attack the legal premise, but they wander still further astray from *Heller* and *Bruen* by arguing that whether a weapon is "most useful in military service" is irrelevant. Resp. at 20-21. As *Heller* makes clear, specialized combat weapons fall outside the Second Amendment's scope. *Heller* held that because militia weapons were historically not specialized tools of warfare, but "the sorts of lawful weapons that [civilians] possessed at home," the Second Amendment allows "weapons that are most useful in military service—M-16s and the like—[to] be banned" altogether. 554 U.S. at 627. "[S]mall arms" commonly used for self-defense, and not military weapons, are the "arms" protected by the Second Amendment. *Id.* at 627; *see also id.* at 624 ("The traditional militia was formed from a pool of men bringing arms 'in common use at the time' for lawful purposes like self-defense."); *id.* at 627-28 (acknowledging that "modern developments" in military technology "have limited the degree of fit between the prefatory clause and the protected right."). Nothing in *Bruen* changed this analysis: *Bruen* fully embraced and applied *Heller* in its entirety.

It is not surprising, then, that the Ninth Circuit has found "significant merit" to the argument that the Second Amendment does not apply to LCMs because they "have limited lawful, civilian benefits, whereas they provide significant benefits in a military setting." *Duncan v. Bonta*, 19 F.4th 1087, 1102 (9th Cir. 2021) (*en banc*), *vacated and remanded in light of* Bruen, 142 S.Ct. 2895 (2022), *post-remand appeal pending*, Case No. 23-55805 (9th Cir.). This application of *Heller* is equally sound after *Bruen*, defeating Plaintiffs' claim at step one. MSJ at 27-28; *see also, e.g.*, *Hanson v. District of Columbia*, 2023 WL 3019777, at *8-9 (D.D.C. Apr. 20, 2023); *Nat'l Ass'n for Gun Rights*, 2023 WL 4975979, at *24-26.

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

**B.     Defendants Have Met Their Burden at *Bruen* Step Two**

Even if Plaintiffs could meet their step-one burden, which they haven't, their claim would still fail because the State has amply rebutted any "presumpti[on]" of constitutional protection by showing that SB 5078 is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2129-30; *contra* Resp. at 26 (erroneously arguing that historical analogues are irrelevant). Contrary to Plaintiffs' misguided argument, *Bruen* never says all commonly possessed arms are immune from regulation. In fact, *Bruen* did not "decide anything about the kinds of weapons that people may possess." 142 S.Ct. at 2157 (Alito, J., concurring). The State has shown that multiple historical analogues are relevantly similar to SB 5078.

<u>Trap Guns</u>

To start, Plaintiffs' characterization of SB 5078 as a "flat ban," Resp. at 28, is flatly wrong. The law only prohibits LCMs' manufacture, sale, and import—not their possession. SB 5078, § 3. So when Plaintiffs argue that analogous trap-gun regulations only "restrict conduct *with* arms," not "what *types* of arms a person can own," Resp. at 27, they misconstrue Washington's law and attack a strawman.

Plaintiffs' attempt to distinguish between "conduct" with arms and "types" of arms is also flawed because, to the extent historical trap-gun laws can be characterized as regulating either one, the same is true of Washington's LCM law. A trap gun, as Plaintiffs acknowledge, is a gun rigged with a "String, Rope, or other Contrivance" to fire by itself. Resp. at 27. That is, by employing an accessory in conjunction with a firearm, a trap gun functions differently than a gun without the accessory. So too, by combining a firearm with a particular accessory—an LCM—it gains rapid-fire functionality it would not have absent the accessory. Either equipping a gun with an LCM is "conduct" and so is equipping a gun with a string or rope, or a gun with an LCM is a "type" of arm just like a gun set up to fire unattended is a "type" of arm.

Moreover, historical trap gun regulations did not prohibit trap guns only sometimes or in particular circumstances; trap guns were prohibited no matter how or when they were set, further

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

belying Plaintiffs' conduct/type distinction. *See* Dkt. #122-1 (Spitzer Rpt.) at 247-54. And, since trap guns were predominantly used to defend homes and businesses (*id.* at 20), and historical laws prohibited them completely, the burden on self-defense was greater than SB 5078's. Trap-gun restrictions are relevant and appropriate analogues, and Plaintiffs do not contest that such restrictions are well represented in the Nation's historical tradition of weapons regulation.

Clubs/Bludgeons

Plaintiffs similarly fail to distinguish historical regulations concerning clubs often used by criminals. Plaintiffs completely ignore that the sale and manufacture of bludgeons was prohibited in at least 11 states between 1849 and 1923. *See* Dkt. #121-1 (Rivas Rpt.) at 28 (Vermont and Kentucky); Spitzer Rpt. at 163 (California), 171 (Florida), 177 (Illinois), 191-92 (Massachusetts), 194 (Michigan), 195 (Minnesota), 219 (Oklahoma), 211-12 (New York), 221 (Oregon). These laws are very similar to or more restrictive than SB 5078 and provide further historical evidence that SB 5078 is consistent with the Second Amendment. And while it is true that early laws restricting clubs sometimes served odious, racially discriminatory ends, such laws nonetheless show that clubs were widely restricted based on concerns about their use in lawless violence. What matters under *Bruen* is that from 1664 to today, such weapons were consistently singled out by state legislatures which banned their sale, manufacture, carry, and possession in a wide variety of laws, some of which barred sale and manufacture in a way strikingly similar to SB 5078. *See* Spitzer Rpt. at 18-21.

Bowie Knives

Plaintiffs argue that the cited analogues regulating Bowie knives "do not impose 'a comparable burden on the right' to [SB 5078], since the historical regulations did not bar *possession*, as Washington's law does." Resp. at 30. Again, this is completely wrong: Washington's law does not bar possession. And Plaintiffs fail entirely to grapple with the historical laws that, like SB 5078, barred the manufacture, import, or sale of Bowie knives or

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    taxed them prohibitively. Spitzer Rpt. at 156 (Alabama tax on dealers), 170 (Florida tax on

2    dealers and possessors), 172 (Georgia prohibition on sale), 227 (Tennessee prohibition on sale).

3        Plaintiffs' central argument on Bowie knives is a disagreement with Dr. Spitzer's

4    unrebutted opinion that "15 states all but banned the possession of Bowie knives outright (by

5    banning both concealed carry and open carry)." *See* Resp. at 29-30. But Plaintiffs' protestations

6    are (1) not evidence and (2) meritless. They complain that Colorado and Indiana only barred

7    concealed carry and carry with intent to commit a crime (Resp. at 29), but ignore the historical

8    context of nineteenth century America where openly carrying weapons was so unusual, and

9    Bowie knives so associated with criminality, that openly carrying one could be *prima facie*

10   evidence of criminal intent. *See* Rivas Rpt. at 21-23, 32. They say the Louisiana statutes were

11   not extensive (Resp. at 29), but ignore the law's language making it virtually impossible to carry

12   a Bowie knife in a way that would not be prohibited. Rivas Rpt. at 22. They have a similar

13   complaint about Tennessee, but there it was illegal to carry "publicly or privately" "any dirk" as

14   well as a "Bowie-knife" while attending a "public assembly of the people." Spitzer Rpt. at 229.

15   And in Nashville in particular merely "carrying" a "bowie-knife, dirk-knife … or other deadly

16   weapon" was prohibited. *Id.* at 230.

17       Plaintiffs dismiss territorial laws on the basis that *Bruen* gave little weight to certain

18   territorial statutes (Resp. at 29-30), but *Bruen* did not say that all territorial laws are irrelevant to

19   the original public meaning of the Constitution. Rather, *Bruen* held that such laws could not

20   "overcome the overwhelming evidence of an otherwise enduring American tradition" and that

21   "absent any evidence explaining why these unprecedented prohibitions on all public carry were

22   understood to comport with the Second Amendment, they do little to inform the origins and

23   continuing significance of the Amendment." 142 S.Ct. at 2121 (cleaned up). But here, territorial

24   laws were exemplars, not outliers, since Bowie knives and similar weapons were restricted

25   across the country. *See* Spitzer Rpt. at 8-14; Rivas Rpt. at 17-44. And, moreover, the State's

26   expert historians have explained—again, without rebuttal—exactly why these regulations were

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    understood to comport with the Second Amendment. In summary: weapons associated with

2    interpersonal violence and crime were consistently ejected from the public sphere and were not

3    understood to be protected by a pre-existing right to lawful self-defense. Rivas Rpt. at 7-8;

4    Spitzer Rpt. at 4-6. LCM restrictions fit well within that American tradition.

5         Revolvers

6         Plaintiffs repeat their mistakes in discussing revolvers. They make no attempt to

7    distinguish the most analogous regulations to SB 5078 (the Tennessee and Georgia statutes

8    prohibiting revolver sales) or the prohibitory taxes levied on revolver vendors and owners. Resp.

9    at 30; *see* Rivas Rpt. at 23-26. Instead, Plaintiffs attack the relevance of public-carry restrictions,

10   but they ignore that these laws applied to revolvers after the Civil War because, as concealable

11   revolvers spread, they were singled out as particularly deadly weapons. *See* Rivas Rpt. at 12-13.

12   This shows a robust historical tradition of restricting revolvers because they were used in

13   intrapersonal violence (similar to the "why" of SB 5078) and a particular strain of that tradition

14   of restricting the sale of such weapons (similar to its "how").

15        Machineguns

16        After once again ignoring salient analogues from earlier periods, Plaintiffs acknowledge

17   that anti-machinegun laws of early twentieth century America are "remotely similar," but

18   criticize them for coming "much too late" in America's history to be of use. Resp. at 31. But

19   these laws are relevant because they show the application of a longstanding regulatory tradition

20   to a new category of weaponry—and the same is true of LCMs. Machinegun restrictions are

21   fully in line with earlier traditions of restricting trap guns, clubs, fighting knives, and revolvers,

22   so *Bruen*'s instruction to ignore post-enactment history *inconsistent* with the Second

23   Amendment is inapplicable. *See* 142 S.Ct. at 2137.

24        Plaintiffs also try to distinguish machinegun laws for the same flawed reason that they

25   say historical analogues are irrelevant in the first place: supposedly these laws did not regulate

26   arms in "common use." Resp. at 31. But Plaintiffs have no evidence for that proposition, only

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

dicta from *Staples v. United States*, 511 U.S. 600, 612 (1994). There, the Court commented that some weapons are lawful and some "no doubt including the machineguns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation" have a "quasi-suspect character." *Id.* The Court never made the broad automatic vs. semiautomatic distinction that Plaintiffs say renders early twentieth century machinegun laws non-analogous, nor did the Court ever say that machineguns, sawed-off shotguns and artillery pieces were the *only* weapons subject to regulation. *See id.* And while sales of Tommy guns and BARs never met their manufacturers' desires, "practically every sporting goods establishment in Chicago carried the firearms and sold them readily" (Spitzer Rpt. at 39), much like LCMs today. Fundamentally, Plaintiffs cannot explain why prohibiting machineguns in the early twentieth century (or LCMs in the late twentieth) was allowed under the Constitution, but prohibiting LCMs in the early twenty-first is not.

\*     \*     \*

The State has amply satisfied its burden of proving that SB 5078 fits comfortably within the Nation's historical tradition of weapons regulation. MSJ at 24-32.

### III.    CONCLUSION

Summary judgment should be granted for Defendants and denied to Plaintiffs.

DATED 16th day of October 2023.

ROBERT W. FERGUSON
Attorney General

*/s/ Andrew R.W. Hughes*
ANDREW R.W. HUGHES, WSBA #49515
R. JULY SIMPSON, WSBA #45869
WILLIAM MCGINTY, WSBA #41868
BRIAN HUNT ROWE, WSBA #56817
Assistant Attorneys General
KRISTIN BENESKI, WSBA #45478
First Assistant Attorney General
Andrew.Hughes@atg.wa.gov
July.Simpson@atg.wa.gov
William.McGinty@atg.wa.gov

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

Brian.Rowe@atg.wa.gov
Kristin.Beneski@atg.wa.gov
*Attorneys for Defendants Bob Ferguson and*
*John R. Batiste*

I certify that this memorandum contains 4,161
words, in compliance with the Stipulated Motion
and Order Extending Deadlines (Dkt. # 100).

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1

## **<u>DECLARATION OF SERVICE</u>**

2

I hereby declare that on this day I caused the foregoing document to be electronically

3

filed with the Clerk of the Court using the Court's CM/ECF System which will send notification

4

of such filing to all counsel of record.

5

I declare under penalty of perjury under the laws of the State of Washington and the

6

United States of America that the foregoing is true and correct.

7

DATED this 16th day of October 2023, at Seattle, Washington.

8

*/s/ Andrew R.W. Hughes*

9

ANDREW R.W. HUGHES, WSBA #49515
Assistant Attorney General

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF STATE
DEFENDANTS' CROSS-MOTION FOR
SUMMARY JUDGMENT
NO. 3:22-cv-05403-DGE

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470