UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| GABRIELLA SULLIVAN,<br><br>  Plaintiff,<br>  v.<br><br>BOB FERGUSON et al.,<br><br>  Defendant. | CASE NO. 3:22-cv-05403-DGE<br><br>ORDER GRANTING MOTION TO STAY (DKT. NO. 138) |

**I   INTRODUCTION**

This matter comes before the Court on Intervenor Defendant Alliance for Gun Responsibility and Defendants John R. Batiste, Patti Cole Tindall, and Bob Ferguson's Motion to Stay.  (Dkt. No. 138.)  Having considered the motion, Plaintiffs' response in opposition (Dkt. No. 141), movants' reply in support (Dkt. No. 142) and the parties' oral arguments, the Court GRANTS the motion.

## II   BACKGROUND

Plaintiffs are two individuals, a firearms dealer, and two non-profit interest groups who brought a pre-enforcement challenge to Washington's recent ban on large capacity magazines ("LCMs").  Under Washington Revised Code § 9.41.370(1) ("the Act"), the manufacture, import, distribution, and sale (or offering for sale) of an ammunition feeding device with the capacity to accept more than 10 rounds of ammunition constitutes a gross misdemeanor punishable by a prison term of no more than 364 days and by a fine of not more than $5,000. (Dkt. No. 42 at 7.)  All relief requested in the amended complaint is premised on this Court finding the Act unconstitutional under the Second Amendment.

Washington is not the first state in this circuit to regulate LCMs.  California Penal Code § 32310(a) creates criminal liability for "any person . . . who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, buys, or receives" an LCM ("any ammunition feeding device with the capacity to accept more than 10 rounds").  *Duncan v. Bonta*, 83 F.4th 803, 805 (9th Cir. 2023).

Similarly, Ballot Measure 114, which was passed by a majority of Oregon voters in November 2022, makes it a misdemeanor crime to manufacture, import, possess, use, purchase, sell, or otherwise transfer any LCM in Oregon.  *Oregon Firearms Fed'n, Inc. v. Kotek Oregon Alliance for Gun Safety*, Case No. 2:22-cv-01815-IM, 2023 WL 4541027, at *6 (D. Or. July 14, 2023) (citing Measure 114 § 11(2), (6)).  An LCM in Oregon is "a fixed or detachable magazine . . . or similar device . . . that has an overall capacity of, or that can be readily restored, changed, or converted to accept, more than 10 rounds of ammunition and allows a shooter to keep firing without having to pause to reload . . . ." *Oregon Firearms Fed'n,* 2023 WL 4541027 at *6 (citing Measure 114 § 11(d)).

Both courts addressing the LCM issue thoroughly reviewed the Second Amendment's text and the history and tradition of firearm regulation but reached opposing conclusions. The Southern District of California found the ban unconstitutional because LCMs fell within the protection of the Second Amendment as commonly owned by law-abiding citizens for self-defense and reasonably related to service in the militia. *Duncan v. Bonta*, Case No. 17-cv-1017-BEN, 2023 WL 6180472, at *35 (S.D. Cal. Sept. 22, 2023). Meanwhile, the District of Oregon found Ballot Measure 114 constitutional because LCMs were not "bearable arms" within the meaning of the Second Amendment. *Oregon Firearms Fed'n*, 2023 WL 4541027 at *25–26. Both opinions were appealed, and California and Oregon's bans on LCMs are now both before the Ninth Circuit. *Duncan v. Bonta*, Case No. 23-55805 (9th Cir.); *Oregon Firearms Fed'n v. Kotek Oregon Alliance for Gun Safety*, Case No. 23-35540 (9th Cir.).

The Ninth Circuit has elected to accept *Duncan* as a comeback and will hear the case *en banc*. *Duncan*, Case No. 23-55805, Dkt. No. 3 (9th Cir.). The appellees in *Oregon Firearms Fed'n* have moved to stay their proceeding pending the *en banc* decision in *Duncan*. *Oregon Firearms Fed'n,* Case No. 23-35540, Dkt. No. 10 (9th Cir.).

Intervenor Defendant Alliance for Gun Responsibility and Defendants John R. Batiste, Patti Cole Tindall, and Bob Ferguson ask this Court to stay this matter pending the Ninth Circuit's forthcoming *en banc* opinion in *Duncan* which "will almost certainly bear directly on this case." (Dkt. No. 138 at 2.).

### III   DISCUSSION

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This power includes

staying an action "pending resolution of independent proceedings which bear upon the case." *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) (quoting *Levya v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–864 (9th Cir. 1979), *cert denied*, 444 U.S. 827 (1979)). To determine whether a stay is appropriate, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962). Among those competing interests are (1) the possible damage which may result from granting a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id.* "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–434 (2009).

### A.  Possible damage resulting from granting a stay

Defendants argue no prejudice would result from a stay (Dkt. No. 138 at 5), while Plaintiffs argue deprivation of constitutional rights "unquestionably constitutes irreparable injury" (Dkt. No. 141 at 2). At the hearing, Plaintiffs also emphasized their interest in the timely resolution of their claims.

The deprivation of a constitutional right for any period of time certainly constitutes hardship. But Plaintiffs did not seek a preliminary injunction to prevent the enforcement of the ban and therefore, if the LCM ban deprives them of their Second Amendment rights, those rights have been deprived for the entirety of this litigation and would continue to be deprived pending the resolution of the motions for summary judgment, and potentially for any subsequent appeal. Plaintiffs respond: "the State's insinuation that these harms should not be recognized because

Plaintiffs made the strategic decision not to seek a preliminary injunction in this case should be disregarded." (Dkt. No. 141 at 3.)  But Plaintiffs do not explain why that decision should be disregarded or why the ongoing deprivation of their constitutional rights is hardship only during a stay period and not during the entire pendency of this litigation.  Plaintiffs present no explanation as to why the addition of a less than six month stay period would materially change Plaintiffs' current position.[1]

Defendants also point out the individual Plaintiffs already own multiple LCMs, and the ban does not in any way affect their right to possess and use LCMs acquired prior to the law's effective date. (Dkt. No. 138 at 5–6.)  Plaintiffs respond that this argument minimizes the hardship to Plaintiffs, asserting the Supreme Court's "clear instruction" that "it is no answer to say" an individual's Second Amendment rights are not violated when the government leaves what it deems to be sufficient avenues open for exercising them.  (Dkt. No. 141 at 2–3) (citing *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008)).

The full quote from *Heller* reads: "[i]t is no answer to say, as petitioners do, that it is permissible to ban the possession of handguns so long as the possession of other firearms (*i.e.*, long guns) is allowed." *Heller*, 554 U.S. at 570.  A stay does not implicate the situation described in this portion of *Heller*.  Individual Plaintiffs will continue to be deprived of their alleged right to purchase additional LCMs but may keep the same LCMs already within their possession.  In granting a stay, this Court does not rule that it is constitutional to ban the purchase of LCMs so long as the Plaintiffs are permitted to keep their existing LCMs.  Rather,

---

[1] Although the date of the *en banc* opinion in *Duncan* is unknown, oral argument is scheduled on March 18, 2024, four months from now.  *Duncan*, Case No. 23-55805, Dkt. No. 12 (9th Cir.).

1   this Court rules the Plaintiff's purported hardship does not outweigh the judicial economy of
2   staying this case pending *Duncan*.

3         Any lost profits from Plaintiff Rainier Arms's inability to sell LCMs does not amount to
4   prejudice, either.  (Dkt. No. 141 at 3.)  At least in the context of granting a preliminary
5   injunction, lost profits are not "irreparable harm" because they can be adequately compensated
6   by remedies available at law, such as monetary damages.  *See eBay Inc. v. Merc Exchange*,
7   *L.L.C.*, 547 U.S. 388, 391 (2006); *see also E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640,
8   677 (9th Cir. 2021) ("Irreparable harm is 'harm for which there is no adequate legal remedy,
9   such as an award for damages.'").  Although, in the context of a stay, the damage need not be
10  "irreparable," the same logic applies.  Plaintiffs have requested any and all damages to which
11  they are entitled in their amended complaint.  (Dkt. No. 42 at 19.)  If Plaintiffs prevail on their
12  claims, they may seek recovery of lost profits for the period during which their Second
13  Amendment right to sell LCMs was violated; should they not prevail, they are not entitled to
14  those profits anyway.

15        **B.  Hardship or inequity suffered in being required to go forward**

16        Defendants argue hardship will result in going forward because, in the event this Court
17  does not decide the case on summary judgment, trial will require substantial investments of time
18  and money, and the parties will inevitably devote significant time to preparing for issues that will
19  be affected—if not disposed of—by *Duncan*.  (Dkt. No. 138 at 5.)  Plaintiffs maintain there is no
20  harm to the State from resolving the case prior to *Duncan*'s ruling.  (Dkt. No. 141 at 3.)
21  Plaintiffs explain a trial will not occur regardless of a stay because "everyone agrees these issues
22  can be resolved without trial," "this Court has suspended all pretrial deadlines pending resolution
23
24

ORDER GRANTING MOTION TO STAY (DKT. NO. 138) - 6

of the dispositive motions," and Plaintiffs "may be willing to consent to a stay to avoid the expense of a trial while *Duncan* is pending." (*Id.*)

Considering the parties' summary judgment motions are already fully briefed, requiring the parties to move forward would likely not create any significant hardship for them. But, should either party appeal that summary judgment order, that appeal may be stayed pending the resolution of *Duncan* anyway—especially considering appellees in *Oregon Firearms Fed'n* have moved for that exact stay. *See* Case No. 23-35540, Dkt. No. 10 (9th Cir.).

**C. Orderly course of justice, simplifying the issues and questions of law**

Defendants maintain courts in this district "routinely grant stays where a decision from a higher court is anticipated to provide guidance on a pending issue." (Dkt. No. 138 at 3) (citing *Borden v. eFinancial, LLC*, No. C19-1430JLR, 2020 WL 7324815, at *2 (W.D. Wash. Oct. 16, 2020); *Rittmann v. Amazon.com Inc.*, No. C16-1554-JCC, 2017 WL 1079926, at *2 (W.D. Wash. Mar. 22, 2017); *Centeno v. Inslee*, 310 F.R.D. 483, 491 (W.D. Wash. 2015)). While California's LCM ban at issue in *Duncan* is not identical to Washington's ban at issue here, the two bear substantively equivalent language in the bans themselves and nearly identical language in their definition of LCMs. A "large capacity magazine" in California is:

> any ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include any of the following:
>
> (a) A feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds.
> (b) A .22 caliber tube ammunition feeding device.
> (c) A tubular magazine that is contained in a lever-action firearm.

Cal. Penal Code § 16740. In Washington, a "large capacity magazine" is:

> an ammunition feeding device with the capacity to accept more than 10 rounds of ammunition, or any conversion kit, part, or combination of parts, from which such a device can be assembled if those parts are in possession of or under the control of the same person, but shall not be construed to include any of the following:

ORDER GRANTING MOTION TO STAY (DKT. NO. 138) - 7

(a) An ammunition feeding device that has been permanently altered so that it
        cannot accommodate more than 10 rounds of ammunition;
        (b) A 22 caliber tube ammunition feeding device; or
        (c) A tubular magazine that is contained in a lever-action firearm.

Wash. Rev. Code § 9.41.010(25).

In California, any person who "manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, buys, or receives any large-capacity magazine" violates the statute. Cal. Penal Code § 32310(a). In Washington, "[n]o person in this state may manufacture, import, distribute, sell, or offer for sale any large capacity magazine . . . ." Wash. Rev. Code § 9.41.370(1). California's LCM ban goes further to regulate mere possession: "any person in this state who possesses any large-capacity magazine, regardless of the date the magazine was acquired, is guilty of an infraction . . . ." Cal. Penal Code § 32310(c).

Given the clear similarities, the Ninth Circuit's constitutional analysis of California's LCM ban in *Duncan* will control this Court's analysis of Washington's LCM ban.[2] This factor weighs heavily in favor of a stay.

Plaintiffs do not dispute that *Duncan* "is likely to substantially simplify (if not completely resolve) the legal questions at the center of this case." (Dkt. No. 141 at 2.) Instead, they argue "the other factors weigh strongly against a stay and so it should be denied." (*Id.*) However, as

---

[2] Defendants Rick Scott and Norma Tillotson's Motion for Summary Judgment argues they are not liable to Plaintiffs in their official or personal capacities as a matter of law regardless of the constitutionality of the LCM ban. (Dkt. No. 124 at 2.) Scott and Tillotson do not oppose a stay on the merits but do oppose a stay of their motion for summary judgment regarding Plaintiffs' claim for damages under § 1983, which they argue will not be impacted by *Duncan.* (Dkt. No. 138 at 3 n.3.) Because all of Plaintiffs' claims are premised on the LCM ban's unconstitutionality, *Duncan* will still govern that claim for damages. If the Ninth Circuit finds the ban constitutional, the claim for damages against Scott and Tillotson will fail regardless of the issues they raise regarding their personal or official capacity.

ORDER GRANTING MOTION TO STAY (DKT. NO. 138) - 8

explained above, Plaintiffs have not demonstrated hardship outweighing the remaining circumstances.

Defendants have met their burden to show the circumstances justify a stay, as *Duncan* all but controls the outcome of this litigation and any purported prejudice to Plaintiffs does not tip the scales away from the judicial economy of staying the case pending *Duncan*'s outcome. This Court finds a stay is necessary to avoid the issuance of a potentially conflicting opinion in the shadow of the Ninth Circuit's impending *en banc* decision.

## IV    CONCLUSION

Accordingly, and having considered Defendants' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Intervenor Defendant Alliance for Gun Responsibility and Defendants John R. Batiste, Patti Cole Tindall, and Bob Ferguson's Motion to Stay be GRANTED. (Dkt. No. 138.) This matter is STAYED pending the Ninth Circuit's decision in *Duncan v. Bonta*, Case No. 23-55805.

Dated this 21st day of November 2023.

David G. Estudillo
United States District Judge